SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ROBERT J. GUITE, Cal. Bar No. 244590
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
rguite@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
FRED R. PUGLISI, Cal. Bar No. 121822
SASCHA HENRY, Cal. Bar No. 191914
ROBIN A. ACHEN, Cal. Bar No. 287033
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:    213.620.1780
Facsimile:    213.620.1398
fpuglisi@sheppardmullin.com
shenry@sheppardmullin.com
rachen@sheppardmullin.com

Attorneys for Defendant
Starbucks Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| SIERA STRUMLAUF and BENJAMIN ROBLES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant. | Case No. 3:16-cv-1306-TEH<br><br>**DEFENDANT STARBUCKS CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          May 16, 2016<br>Time:          10:00 a.m.<br>Courtroom:  12, 19th Floor<br><br>Action Filed:  March 16, 2016<br>Trial Date:    None Set |

1      TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2      PLEASE TAKE NOTICE THAT on May 16, 2016, in Courtroom 12 of the above-

3  captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant

4  Starbucks Corporation ("Starbucks") will bring on for hearing its Motion to Dismiss the

5  Complaint filed by filed by Plaintiffs Siera Strumlauf and Benjamin Robles (collectively,

6  "Plaintiffs").

7      Starbucks brings this Motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and

8  12(b)(6) because Plaintiffs' lack standing to bring their claims against Starbucks, and because

9  Plaintiffs have failed to state claims upon which relief can be granted.

10      **Count I:  Breach of Express Warranty**.  The Complaint fails to plausibly plead a claim

11  for breach of express warranty.  To state a breach of warranty claim, Plaintiffs must demonstrate

12  that the express warranty was breached, and that the alleged breach of warranty injured them.

13  *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 896-97 (C.D. Cal. 2013).   Plaintiffs fail

14  to allege facts demonstrating that the warranty, in context, was breached, or that they were injured

15  by the purported breach.

16      **Count II:  Breach of the Implied Warranty of Merchantability**.  The Complaint fails to

17  plausibly plead a claim for breach of the implied warranty of merchantability.  To plead this claim,

18  a plaintiff must show that the product does not possess even the "most basic degree of fitness for

19  ordinary use."  *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003); *see also Viggiano*,

20  944 F. Supp. 2d at 896-97 (claim dismissed where plaintiff alleged only that certain

21  representations regarding soda products were misleading, not that the sodas were not drinkable,

22  contaminated, or otherwise unfit for use as a soft drink).  As Plaintiffs here have not alleged that

23  the products they purchased -- lattes -- were unfit for consumption, their claim for breach of the

24  implied warranty of merchantability fails.

25      **Count III:  Unjust Enrichment**.  Plaintiffs' claim for unjust enrichment fails as a matter

26  of law.  There is no independent cause of action for unjust enrichment under California law.  *See*

27  *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117 (2010); *Arevalo v. Bank of Am. Corp.*, 850

28  F. Supp. 2d 1008, 1028 (N.D. Cal. 2011).  Additionally, dismissal of unjust enrichment claims is

appropriate where unjust enrichment is duplicative of other claims.  Plaintiffs' claim for unjust enrichment fails because unjust enrichment is not a standalone cause of action under California law, and because Plaintiffs are already seeking restitution under their California Legal Remedies Act, Unfair Competition Law and False Advertising Law claims, set forth in Counts IV, V and VI.

**Count IV:  Violation of California's Consumers Legal Remedies Act ("CLRA")**.  The Complaint fails to state a claim under the CLRA because the CLRA utilizes a "reasonable consumer standard."  *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).  To state a claim, Plaintiffs must plausibly plead "it is *probable* that a *significant* portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the statement in question.  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003) (emphasis added).  Here, Plaintiffs' CLRA claim fails to plausibly plead that a reasonable consumer would be misled by the statements in question.  Additionally, Plaintiffs' CLRA claim is not pled with specificity and, therefore, fails under Fed. R. Civ. P. 9(b).

**Count V:  Violation of California's Unfair Competition Law ("UCL")**.  The Complaint fails to state a claim under UCL because the UCL utilizes a "reasonable consumer standard."  *Lavie*, 105 Cal. App. 4th at 506-07.  To state a claim, Plaintiffs must plausibly plead "it is *probable* that a *significant* portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the statement in question.  *Id.* (emphasis added).  Here, Plaintiffs' UCL claim fails to plausibly plead that a reasonable consumer would be misled by the statements in question.  Plaintiffs also fail to plead a claim under the "unlawful" prong of the UCL because they have failed to allege a violation of a predicate, underlying law.  Additionally, Plaintiffs' UCL claim is not pled with specificity and, therefore, fails under Fed. R. Civ. P. 9(b).

**Count VI:  Violation of California's False Advertising Law ("FAL")**.  The Complaint fails to state a claim under the FAL because the FAL utilizes a "reasonable consumer standard."  *Consumer Advocates*, 113 Cal. App. 4th at 1360.  To state a claim, Plaintiffs must plausibly plead "it is *probable* that a *significant* portion of the general consuming public or of targeted consumers,

1   acting reasonably in the circumstances, could be misled" by the statement in question. *Lavie*, 105

2   Cal. App. 4th at 506-07 (emphasis added).  Here, Plaintiffs' FAL claim fails to plausibly plead

3   that a reasonable consumer would be misled by the statements in question.  Additionally,

4   Plaintiffs' FAL claim is not pled with specificity and, therefore, fails under Fed. R. Civ. P. 9(b).

5         **Count VII:  Negligent Misrepresentation**. The Complaint fails to state a claim for

6   negligent misrepresentation because Plaintiffs' claims are barred by the economic loss doctrine.

7   The economic loss doctrine restricts the remedy of plaintiffs who have suffered economic loss, but

8   not personal or property injury, to an action in contract. *Shahinian v. Kimberly-Clark Corp.*, 2015

9   WL 4264638, *8 (C.D. Cal. July 10, 2015) ("Generally, under the 'economic loss' rule, a plaintiff

10  who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses

11  in tort. Instead, the claimant is limited to recovery under the law of contract.").  The economic loss

12  doctrine applies to claims for negligent misrepresentation under California law. *Id.*  Plaintiffs

13  have not alleged personal injury or property damage.  As a result their claim for negligent

14  misrepresentation must be dismissed.

15        **Count VIII:  Fraud**.  The Complaint fails to state a claim for fraud.  "[A] party [must]

16  state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  In

17  order to state a claim for fraud, a plaintiff must allege, in detail, the "who, what, when, where, and

18  how" of the alleged fraudulent conduct. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.

19  2009).  Plaintiffs have failed to allege "when during the class period, where, how many, or how

20  many times [they] purchased [the products] or [were] exposed to the alleged misrepresentations,"

21  or the "how" of their alleged fraudulent conduct. *Edmunson v. Procter & Gamble Co.*, 2011 WL

22  1897625, at *4 (S.D. Cal. May 17, 2011).

23        **All Counts:  Standing**.  Plaintiffs lack standing to assert any of their claims for relief

24  because they have not alleged actual injury.  Both Article III standing and statutory standing

25  require a plaintiff to demonstrate "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

26  560-61 (1992); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (2008); *In re Sony*

27  *Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 965 (S.D. Cal.

28  2012).  Neither Plaintiff has alleged facts demonstrating they were actually injured.  As a result,

1   Plaintiffs' claims fail for lack of standing.  *See, e.g., Davidson v. Kimberly-Clark Corp.*, 2014 WL

2   7247398 (N.D. Cal. Dec. 19, 2014) (dismissing claims for lack of standing where plaintiff did not

3   allege that she herself experienced any problems with the product)*; Lee v. Toyota Motor Sales,*

4   *U.S.A., Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014) ("There can be no serious dispute that a

5   purchaser of a product who receives the benefit of his bargain has not suffered Article III injury

6   in-fact traceable to the defendant's conduct.").

7       Plaintiffs also lack standing to assert claims for injunctive relief.  In order to have standing

8   for injunctive relief, Plaintiffs must establish a "real or immediate threat" of repeated injury.

9   *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999).  The prospect of future injury

10  to unnamed class members is not sufficient.  *Castagnola v. Hewlett-Packard Co.*, 2012 WL

11  2159385, at *5 (N.D. Cal. June 13, 2012).  Plaintiffs have not alleged facts showing they are likely

12  to be wronged in a similar way in the future.  Accordingly, they lack standing to assert a claim for

13  injunctive relief.

14      This Motion is based on this Notice, the accompanying Memorandum of Points and

15  Authorities, all pleadings, papers and other documentary materials in the Court's file for this

16  action, those matters of which this Court may or must take judicial notice, and such other matters

17  as this Court may consider.

18

19  Dated:  April 11, 2016

20                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

21

22                  By _____
                                    */s/ Sascha Henry*

23                                 ROBERT J. GUITE
                                   FRED R. PUGLISI
24                                 SASCHA HENRY
                                   ROBIN A. ACHEN
                           Attorneys for Starbucks Corporation

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ........................................................................................ 3

    A.    General Allegations Regarding Starbucks and Lattes. ..................................... 3

    B.    Allegations Regarding Plaintiffs' Counsel's Investigation. ............................ 3

    C.    Plaintiffs' Alleged Purchases from Starbucks ................................................ 5

III.  ARGUMENT ............................................................................................................... 5

    A.    Counts IV, V and VI Should Be Dismissed Because the Lattes Contain Espresso, Steamed Milk and Milk Foam and Satisfy Reasonable Consumer Expectations. ................................................................................................... 5

        1.    Plaintiffs' CLRA, UCL, and FAL Claims Fail to Meet the Plausibility Standard. ............................................................................ 5

            a.    The Plausibility Standard Is Not Met Where a "Reasonable Consumer" Would Not Likely Be Deceived by the Challenged Advertising. ....................................................... 6

            b.    A Reasonable Consumer Would Not Be Deceived By the Challenged Statements. ....................................................... 8

        2.    Plaintiffs' CLRA, UCL, and FAL Claims Should Be Dismissed for Failure to Satisfy Rule 9(b). ................................................................ 11

        3.    Plaintiffs Also Fail to State a Claim Under the Unlawful Prong of the UCL. ............................................................................................. 12

    B.    Count I for Breach of Express Warranty Should Be Dismissed Because the Hand-Crafted Lattes Contain Espresso, Steamed Milk and Milk Foam. ............... 13

    C.    Count II for Breach of Implied Warranty Should Be Dismissed Because the Beverages Were Delivered as Intended, with Espresso, Steamed Milk and Milk Foam. ............................................................................................... 13

    D.    Count III Should Be Dismissed Because Unjust Enrichment Is Not an Independent Cause of Action. ....................................................................... 14

    E.    Count VII Should Be Dismissed Because the Economic Loss Doctrine Bars Any Claim for Negligent Misrepresentation. ......................................... 16

    F.    Count VIII Should Be Dismissed Because Plaintiffs Fail to Allege Fraud With Particularity. ..................................................................................... 16

    G.    Plaintiffs Lack Standing to Pursue Any of Their Claims. ............................ 17

1.      Plaintiffs Lack Standing Because They Failed to Allege Actual Injury. ........................................................................................ 18

2.      Plaintiffs Lack Standing To Pursue Injunctive Relief. ............................... 19

IV.     CONCLUSION ........................................................................................ 20

1

## TABLE OF AUTHORITIES

2

Page(s)

3

<u>Cases</u>

4

*Algarin v. Maybelline, LLC*
    300 F.R.D. 444 (S.D. Cal. 2014)..................................................................................9

5

*Arevalo v. Bank of Am. Corp.*
    850 F. Supp. 2d 1008 (N.D. Cal. 2011) ....................................................................15

6

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)...............................................................................................5, 6

7

8

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) .................................................................................................6

9

10

*Blanks v. Shaw*
    171 Cal. App. 4th 336 (2009)..................................................................................12

11

*Brod v. Sioux Honey Ass'n Coop.*
    927 F. Supp. 2d 811 (N.D. Cal. 2013) ..........................................................6, 8, 9, 14

12

13

*Campion v. Old Rep. Home Protection Co., Inc.*
    861 F. Supp. 2d 1139 (S.D. Cal. 2012) ....................................................................19

14

*Carrea v. Dreyer's Grand Ice Cream, Inc.*
    475 F. App'x 113 (9th Cir. 2012)............................................................................6, 7

15

16

*Castagnola v. Hewlett-Packard Co.*
    2012 WL 2159385 (N.D. Cal. June 13, 2012) ..........................................................19

17

18

*Cattie v. Wal-Mart Stores, Inc.*
    504 F. Supp. 2d 939 (S.D. Cal. 2007) ......................................................................19

19

*Consumer Advocates v. Echostar Satellite Corp.*
    113 Cal. App. 4th 1351 (2003).................................................................................6

20

21

*Davidson v. Kimberly-Clark Corp.*
    2014 WL 7247398 (N.D. Cal. Dec. 19, 2014) .........................................................18

22

23

*Durell v. Sharp Healthcare*
    183 Cal. App. 4th 1350 (2010).................................................................................15

24

*Ebner v. Fresh, Inc.*
    __ F.3d __, 2016 U.S. App. LEXIS 4875 (9th Cir. Mar. 17, 2016)........................6, 7

25

26

*Edmunson v. Procter & Gamble Co.*
    2011 WL 1897625 (S.D. Cal. May 17, 2011) ....................................................11, 12

27

28

*Freeman v. Time, Inc.*
   68 F.3d 285 (9th Cir. 1995)....................................................................................6

*Gallagher v. Chipotle Mexican Grill, Inc.*
   2016 U.S. Dist. LEXIS 14479 (N.D. Cal. Feb. 5, 2016)..........................................8

*Hauter v. Zogarts*
   14 Cal. 3d 104 (1975)..........................................................................................14

*Hill v. Roll Internat. Corp.*
   195 Cal. App. 4th 1295 (2011).............................................................................15

*Hodgers-Durgin v. de la Vina*
   199 F.3d 1037 (9th Cir. 1999)..............................................................................19

*In re iPhone Application Litig.*
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................15

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009)..............................................................................11

*Lavie v. Procter & Gamble Co.*
   105 Cal. App. 4th 496 (2003).............................................................................6, 7

*Lazar v. Hertz Corp.*
   69 Cal. App. 4th 1494 (1999)..............................................................................12

*Lee v. Toyota Motor Sales, U.S.A., Inc.*
   992 F. Supp. 2d 962 (C.D. Cal. 2014)..................................................................18

*Levine v. Blue Shield of California*
   189 Cal. App. 4th 1117 (2010).............................................................................15

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) ............................................................................................17

*Manchouck v. Mondeléz Int'l, Inc.*
   2013 U.S. Dist. LEXIS 138877 (N.D. Cal. Sept. 26, 2013)......................................8

*Manderville v. PCG & S Group, Inc.*
   146 Cal. App. 4th 1486 (2007).............................................................................17

*Mason v. Nature's Innovation, Inc.*
   2013 WL 1969957 (S.D. Cal. May 13, 2013) ........................................................19

*McBride v. Boughton*
   123 Cal. App. 4th 379 (2004)..........................................................................15, 16

*Melchior v. New Line Prods., Inc.*
   106 Cal. App. 4th 779 (2003)..............................................................................15

*Minkler v. Apple, Inc.*
  65 F. Supp. 3d 810 (N.D. Cal. 2014) ...................................................16

*Mocek v. Alfa Leisure, Inc.*
  114 Cal. App. 4th 402 (2003)...............................................................14

*Moss v. U.S. Secret Serv.*
  572 F.3d 962 (9th Cir. 2009).................................................................6

*Munoz v. MacMillan*
  195 Cal. App. 4th 648 (2011)...............................................................15

*Nowrouzi v. Maker's Mark Distillery, Inc.*
  2015 U.S. Dist. LEXIS 97752 (S.D. Cal. July 27, 2015).......................7

*Pelayo v. Nestle USA, Inc.*
  989 F. Supp. 2d 973 (C.D. Cal. 2013)...................................................8

*Peterson v. Cellco P'ship*
  164 Cal. App. 4th 1583 (2008).............................................................18

*Pratt v. Whole Foods Mkt. Cal., Inc.*
  2014 U.S. Dist. LEXIS 46409 (N.D. Cal. Mar. 31, 2014) ................15, 16

*Shahinian v. Kimberly-Clark Corp.*
  2015 WL 4264638 (C.D. Cal. July 10, 2015) ......................................16

*Simon v. E. Ky. Welfare Rights Org.*
  426 U.S. 26 (1976) ...............................................................................17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ..................................................18

*Stearns v. Select Comfort Retail Corp.*
  2009 WL 1635931 (N.D. Cal. June 5, 2009) .........................................8

*Stuart v. Cadbury Adams USA, LLC*
  458 F. App'x 689 (9th Cir. 2011)...................................................6, 7, 17

*Swearingen v. Amazon Preservation Partners, Inc.*
  2014 U.S. Dist. LEXIS 111704 (N.D. Cal. 2014)................................14

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003)..............................................................11

*Viggiano v. Hansen Natural Corp.*
  944 F. Supp. 2d 877 (C.D. Cal. 2013)............................................13, 14

*Whitmore v. Ark.*
  495 U.S. 149 (1990) .............................................................................17

*Williamson v. Apple, Inc.*
    2012 WL 3835104 (N.D. Cal. Sept. 4, 2012)...................................................................7

*Yordy v. Plimus, Inc.*
    2012 U.S. Dist. LEXIS 82719 (N.D. Cal. June 14, 2012) ...........................................15

*Yumul v. Smart Balance, Inc.*
    733 F. Supp. 2d 1117 (C.D. Cal. 2010)......................................................................11

Statutes

Cal. Bus. & Prof. Code
    § 17200..........................................................................................................................6
    § 17204.....................................................................................................................6, 18
    § 17535........................................................................................................................17
    § 17500..........................................................................................................................6

Cal. Civ. Code
    § 1770(a) .......................................................................................................................6

Cal. Commercial Code
    § 2607..........................................................................................................................12

Rules

Fed. R. Civ. P.
    8(a)(2)............................................................................................................................5
    9(b) ..................................................................................................................2, 11, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SMRH:476328499.10
STARBUCKS' MOTION TO DISMISS COMPLAINT

## I.  <u>INTRODUCTION</u>

In their putative class action Complaint, Plaintiffs allege that lattes sold by Starbucks are underfilled and allege the following eight claims for relief: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) unjust enrichment; (4) violation of California's Consumers Legal Remedies Act ("CLRA"); (5)  violation of California's Unfair Competition Law ("UCL"); (6) violation of California's False Advertising Law ("FAL"); (7) negligent misrepresentation; and (8) fraud.

None of these causes of action state claims upon which relief can be granted because Starbucks hand-crafted lattes meet the expectations of reasonable consumers.  Starbucks lattes, each individually made to order in Starbucks cafés, are comprised of at least three components: (1) espresso; (2) steamed milk; and (3) milk foam.[1]  Plaintiffs acknowledge that a barista making a latte steams and aerates the milk.  Plaintiffs also admit that a latte is created by combining the steamed milk with espresso, and topping the mixture with a layer of milk foam.  Starbucks sells numerous varieties of lattes, and consumers know they can "make it yours" by, among other things, specifying the flavors, milk, and how it is prepared.

Plaintiffs contend that the milk foam portion of a latte does not count toward its volume because, according to the Complaint, the "weights and measures" and "food scientist" communities wait until any foam or aeration has dissipated before measuring the volume.  This ignores the reasonable expectations of the average consumer who purchases Starbucks lattes to enjoy the espresso, steamed milk and milk foam that comprise the beverage.  This "reasonable consumer" standard must be applied to the allegations in the Complaint.  A reasonable consumer does not wait for a latte to get cold and allow the steamed milk and milk foam to dissipate any more than a reasonable consumer would allow a scoop of hand dipped ice cream to melt before consuming it.

Plaintiffs' counsel, not Plaintiffs, allege that they measured Starbucks lattes and concluded that the lattes were underfilled.  Of the ninety-two paragraphs in the Complaint, only two are

---

[1] The hand-crafted lattes often also contain flavored syrups, sauces and toppings added to the milk and espresso.

1   based on Plaintiffs' personal knowledge.  Notably, those two paragraphs are devoid of allegations

2   that the lattes Plaintiffs purchased were actually underfilled.

3          Plaintiffs fail to allege that a reasonable consumer would expect Starbucks' representation

4   regarding the volume of a made-to-order latte to exclude two necessary components of the

5   beverage – the aerated, steamed milk and the foam.  Plaintiffs' other theories supporting their

6   underfill allegation similarly fail to comport with what a reasonable consumer would expect.

7   Having failed to allege facts showing that it is probable that a significant portion of the public has

8   been misled, Plaintiffs cannot to state a claim against Starbucks.  Counts IV, V, and VI for

9   violation of the CLRA, UCL, and FAL thus fail.  Plaintiffs' claim under the "unlawful" prong of

10  the UCL (Count V) also fails for the additional reason that Plaintiffs have not properly pled

11  violation of a predicate law.

12         The Complaint also suffers from additional pleading defects.  Counts IV, V, VI, and VIII

13  fail because those claims, which are based in fraud, are not pled with the requisite specificity

14  under Rule 9(b).  Second, Count I for breach of express warranty fails because Plaintiffs have not

15  alleged facts demonstrating that they suffered any injury.  Third, Count II for breach of the implied

16  warranty of merchantability fails because Plaintiffs have not alleged the lattes are not fit for their

17  ordinary purpose.  Fourth, Count III for unjust enrichment should be dismissed because unjust

18  enrichment is not an independent cause of action under California law.  Fifth, Count VII for

19  negligent misrepresentation is barred by the economic loss doctrine.

20         Finally, Plaintiffs lack standing to pursue any of their claims because Plaintiffs have not

21  alleged that any lattes they actually purchased were underfilled.  They also lack standing to bring a

22  claim for injunctive relief because neither Plaintiff has alleged any intention to continue

23  purchasing Starbucks' lattes.

24         For these reasons, Plaintiffs' claims fail and the Complaint should be dismissed in its

25  entirety.

26

27

28

## II.     FACTUAL BACKGROUND

### A.     General Allegations Regarding Starbucks and Lattes.

Starbucks operates cafés throughout the United States that offer for sale a variety of beverages, including the lattes at issue in Plaintiffs' Complaint.  (Compl., ¶ 7.)  The beverages sold at Starbucks cafés are made-to-order.  (*See* Compl., ¶ 2.)

Plaintiffs admit that a latte is a beverage made with "espresso and steamed milk." (Compl., ¶ 11.)  Plaintiffs acknowledge that a barista making a latte steams and aerates the milk. (Compl., ¶ 19.)  Plaintiffs also allege that a latte is created by combining aerated, steamed milk with espresso, and topping the mixture with a layer of milk foam.  (Compl., ¶¶ 12, 15.)

Starbucks customers can customize their orders.  (*See* Compl., ¶¶ 15, 18.)  For example, at the bottom of the menu board depicted in Plaintiffs' Complaint is a statement encouraging customers to "MAKE IT YOURS," along with a sampling of the ways an espresso beverage, like a latte, may be customized.  (*See* Compl., ¶ 1.)  The menu board suggests that customers can "TRY IT SKINNY" by asking for nonfat milk, sugar-free syrup, or no whip.  (*Id.*)  Customers can add "FLAVOR[s]" to their drinks, like Vanilla, Hazelnut, Caramel, or Peppermint.  (*Id.*) Customers can also add additional espresso shots, or request that their beverage be made with soymilk.  (*Id.*)

Plaintiffs allege that the Starbucks café menu boards state that beverages contain "'12 fl. oz.' for a Tall, '16 fl. oz.' for a Grande, and '20 fl. oz.' for a Venti."  (Compl., ¶ 1.)  The Complaint includes an image of a menu board showing that various drinks may be purchased in "Tall," "Grande," and "Venti" sizes.  (*Id.*)

Plaintiffs allege, on information and belief, that Starbucks underfills its lattes and brings this putative class action on behalf of all purchasers of Tall, Grande, and Venti Caffe Lattes, Flavored Lattes, Pumpkin Spice Lattes, Egg Nog Lattes, Skinny Lattes, Skinny Flavored Lattes, Vanilla Lattes, and Skinny Vanilla Lattes (collectively, "Lattes").  (Compl., ¶¶ 1-4, 31-32.)

### B.     Allegations Regarding Plaintiffs' Counsel's Investigation.

Plaintiffs' Complaint is alleged almost wholly on information and belief and on "the investigation of their counsel."  (Compl., at 1:1-5.)  Plaintiffs allege that their *counsel* purchased

Lattes "at different stores, in different states, in different sizes, and in different flavors." (Compl., ¶ 21.) Plaintiffs further allege that their *counsel* "measured" the Lattes, and that "each Latte was underfilled by approximately 25%." (*Id.*) Plaintiffs do not allege how many Lattes their counsel actually purchased, where they were purchased, which Lattes they purchased, how they purportedly measured them, or how long they waited after purchase to measure the contents.

Curiously, despite alleging that foam is a necessary component of a Latte, Plaintiffs contend that milk foam "does not count" when assessing the volume of a Latte. (Compl., ¶ 25.) Plaintiffs allege that in the "food science" and "weights and measures" communities, foam is measured by mass, not volume. (*Id.*)

Plaintiffs also allege that "Plaintiffs' *counsel* acquired several copies of the standardized pitcher currently in use by Starbucks baristas to make Lattes." (Compl., ¶ 22 (emphasis added).) Plaintiffs allege that the pitchers have "fill-to" lines that are "set too low." (Compl., ¶ 22.) Specifically, Plaintiffs allege that the "fill to" lines indicate that less than 12 fluid ounces of milk should be used for a 16 ounce Latte. (*Id.*) They also allege that, after adding 2 shots of espresso, the "resulting beverage measures less than 14 fluid ounces." (*Id.*)

Plaintiffs allege that Starbucks Lattes are created according to a standardized recipe. (Compl., ¶ 15.) Plaintiffs include an image of a purported Starbucks recipe card showing espresso, aerated, steamed milk, milk foam, and leaving a quarter of an inch of space below the rim of the cup.[2] (Compl., ¶ 15.) Plaintiffs allege that the cups in which Starbucks serves its Lattes hold exactly the amount of fluid ounces listed on Starbucks' menu. (Compl., ¶ 3.) For example, Plaintiffs allege that the Grande cup holds "exactly 16 fluid ounces when completely full," and, thus, by leaving a quarter of an inch of space, Starbucks underfills its Lattes. (Compl., ¶¶ 3, 15, 19.)

Plaintiffs allege that Starbucks underfills its lattes in order to "reduce the amount of milk used by baristas" and thus reduce costs. (Compl., ¶¶ 27, 29-30.)

---

[2] The Complaint does not state where or how Plaintiffs' counsel obtained the recipe card included in the Complaint. Starbucks makes this motion without waiving its right to contend that its recipe cards, alone or collectively, are trade secret, confidential, and/or proprietary information or property.

C.      **Plaintiffs' Alleged Purchases from Starbucks.**

In contrast to counsel's allegations, Plaintiffs do not allege that the Lattes they purchased were underfilled, nor do they allege that they looked at, measured, or tested their own Lattes.  The only allegations Plaintiffs make from personal knowledge are those "specifically pertaining to themselves."  (Compl., at 1:3-5.)  Those allegations are sparse.

Plaintiff Strumlauf was a repeat Starbucks customer who alleges that "[p]rior to the filing of this complaint, [she] visited her local Starbucks … one to two times per week" and purchased Grande-sized "plain and vanilla-flavored Starbucks Lattes."  (Compl., ¶ 5.)  Plaintiff Robles alleges that he purchased a Grande-sized plain Latte in January 2015.  (Compl., ¶ 6.)  Both plaintiffs allege that they "saw the representation on Starbucks' menu that [their] Grande-sized Starbucks Lattes would be '16 fl. oz.'" and relied on it "in deciding to purchase [their] Starbucks Lattes…."  (Compl., ¶¶ 5-6.)

Neither Plaintiff alleges that he or she saw the specific menu board that is depicted in the Complaint.  (Compare Compl., ¶ 1 with ¶¶ 5-6.)  It appears from the Complaint that neither one did as they do not allege the same prices.  (*See id.*)  Both Plaintiffs further allege that they "would not have purchased Grande-sized Starbucks Lattes on the same terms if [they] had known that they were not, in fact, 16 fluid ounces."  (Compl., ¶¶ 5-6.)

Nowhere does either Plaintiff allege, based on their own personal knowledge, that any Lattes they purchased from Starbucks were actually underfilled.

### III.      ARGUMENT

A.      **Counts IV, V and VI Should Be Dismissed Because the Lattes Contain Espresso, Steamed Milk and Milk Foam and Satisfy Reasonable Consumer Expectations.**

1.      Plaintiffs' CLRA, UCL, and FAL Claims Fail to Meet the Plausibility Standard.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The statement must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (internal quotes omitted).  These factual allegations must "raise a

right to relief above the speculative level" and "some threshold of plausibility must be crossed at the outset" before a case can proceed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558 (2007). While "[t]he plausibility standard is not akin to a probability requirement…it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotes omitted). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

The plausibility standard applies to Plaintiffs' causes of action for violation of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA"). California's consumer protection laws prohibit any "unfair, deceptive, untrue, or misleading advertising," and provide a remedy for a consumer "who has suffered injury in fact and has lost money or property as a result of such" activities. Cal. Bus. & Prof. Code §§ 17200, 17204 (UCL); *see also* Cal. Bus. & Prof. Code §§ 17500, *et seq.* (FAL); Cal. Civ. Code §§ 1770(a) (CLRA). Courts have repeatedly dismissed claims where a plaintiff's allegations have not stated a plausible false advertising claim. *See, e.g.*, *Ebner v. Fresh, Inc.*, __ F.3d __, 2016 U.S. App. LEXIS 4875 (9th Cir. Mar. 17, 2016); *Carrea v. Dreyer's Grand Ice Cream, Inc.,* 475 F. App'x 113, 115 (9th Cir. 2012); *Stuart v. Cadbury Adams USA, LLC,* 458 F. App'x 689, 690 (9th Cir. 2011).

          a.     *The Plausibility Standard Is Not Met Where a "Reasonable Consumer" Would Not Likely Be Deceived by the Challenged Advertising.*

The CLRA, UCL, and FAL utilize a "reasonable" consumer standard. *Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir. 1995); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-12 (2003) (reasonable consumer standard applies to UCL and FAL claims); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003) (same with respect to CLRA claims). To state a claim under those statutes, Plaintiffs must plausibly plead that "members of the public are likely to be deceived" by the allegedly misleading statement. *Brod v. Sioux Honey Ass'n Coop.*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (citing *Freeman,* 68 F.3d at 289). "Likely to be deceived" implies more than a mere possibility of misunderstanding—

1   "likelihood" is measured in terms of whether "it is *probable* that a *significant* portion of the

2   general consuming public or of targeted consumers, acting reasonably in the circumstances, could

3   be misled." *Lavie*, 105 Cal. App. 4th at 508 (emphasis added).

4   District courts may use their "common sense" when applying this standard at the pleading

5   stage. *See Ebner*, 2016 U.S. App. LEXIS 4875 at *6 (citing *Iqbal*, 556 U.S. at 679); *Stuart*, 458 F.

6   App'x at 690 (affirming dismissal of a UCL claim that "def[ied] common sense," noting that

7   "[o]nly an unreasonable consumer would be confused or deceived by Cadbury's failure to clarify

8   that Trident White gum works only if consumers continue to brush and floss regularly."); *Carrea*,

9   475 F. App'x at 115 (affirming dismissal of UCL claim because "it strains credulity" to argue that

10   a reasonable consumer would be misled to think that ice cream with "chocolate coating topped

11   with nuts" is healthier than competing brands).

12   *Ebner* is instructive here.  In *Ebner*, the Ninth Circuit recently affirmed the dismissal of a

13   class action complaint alleging that the labeling and packaging of defendant's lip balm products

14   was misleading because the tube screw mechanism only allows 75% percent of the product to

15   advance past the opening of the tube.  *Ebner*, 2016 U.S. App. LEXIS 4875 at *3.  The Ninth

16   Circuit noted that "[d]etermining whether a complaint states a plausible claim for relief is 'a

17   context-specific task that requires the reviewing court to draw on its judicial experience and

18   common sense.'"  *Id.* at *6.  Applying that standard, the court held that a reasonable consumer

19   could not plausibly be deceived as to the amount of lip balm in the tube.  *Id.* at *13.  The court

20   noted that the reasonable consumer "understands the general mechanics of these [lip balm

21   dispenser] tubes and further understands that some product may be left in the tube...."  *Id.*

22   District courts within the Ninth Circuit have also dismissed consumer class actions where

23   no reasonable consumer, using common sense, would be misled by the statement at issue.  *See,*

24   *e.g., Nowrouzi v. Maker's Mark Distillery, Inc.*, 2015 U.S. Dist. LEXIS 97752, *17 (S.D. Cal. July

25   27, 2015) (dismissing UCL and FAL claims alleging that "handmade" statement on whisky label

26   was misleading because, in context, "'handmade' cannot reasonably be interpreted as meaning

27   literally by hand" and a reasonable consumer would not understand the term to mean "no

28   equipment or automated process was used to manufacture the whisky"); *Williamson v. Apple, Inc.*,

1    2012 WL 3835104, at *1, 6 (N.D. Cal. Sept. 4, 2012) (dismissing UCL claim of plaintiff with a

2    shattered iPhone who challenged Apple's statement that the glass it uses for the phones is

3    "comparable in strength to sapphire crystal" because "it is a well-known fact of life that glass can

4    break under impact" and it would require "a suspension of logic" to think otherwise); *Stearns v.*

5    *Select Comfort Retail Corp.*, 2009 WL 1635931, at *11 (N.D. Cal. June 5, 2009) (intentional

6    misrepresentation claim dismissed based on statement that beds would be "maintenance free" and

7    that a purchaser would receive "constant and wear free support night after night" because "no

8    product is ever maintenance-free" and "no consumer reasonably could have that expectation.");

9    *Brod*, 927 F. Supp. 2d at 828-830 (dismissing UCL and CLRA claims of consumer who purchased

10   pollen-free honey because plaintiff failed to plead sufficient facts to establish that a reasonable

11   consumer would expect honey to contain pollen); *Manchouck v. Mondeléz Int'l, Inc.*, 2013 U.S.

12   Dist. LEXIS 138877, 8-10 (N.D. Cal. Sept. 26, 2013) (dismissing UCL, FAL, and CLRA claims

13   because allegation that a reasonable consumer would believe "made with real fruit" claim

14   excluded fruit puree "strain[ed] credibility"); *Gallagher v. Chipotle Mexican Grill, Inc.*, 2016 U.S.

15   Dist. LEXIS 14479, 9-12 (N.D. Cal. Feb. 5, 2016) (dismissing complaint because reasonable

16   consumer would not have been deceived by representation that defendant sold "non-GMO" food

17   where plaintiff failed to allege that defendant used any GMO ingredients, and where defendant's

18   advertisements defined its use of the phrase "non-GMO").

19        Although "[t]he question of whether a business practice is deceptive in most cases presents

20   a question of fact not amenable to resolution on a motion to dismiss, … dismissal is appropriate …

21   where a Court can conclude as a matter of law that members of the public are not likely to be

22   deceived." *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978-80 (C.D. Cal. 2013) (dismissing

23   complaint without leave to amend where plaintiff failed to allege how labeling "could be deceptive

24   to a consumer acting reasonably under the circumstances").

25        b.      *A Reasonable Consumer Would Not Be Deceived By the Challenged*

26   *Statements.*

27        Plaintiffs allege three statements are false and/or deceptive:  (1) that a "Tall" Latte is 12

28   fluid ounces; (2) that a "Grande" Latte is 16 fluid ounces; and (3) that a "Venti" Latte is 20 fluid

1  ounces.  (Compl., ¶ 1.)  Plaintiffs fail to establish that a reasonable consumer would be misled by

2  the representation of the size of the hand-crafted beverages.

3       No reasonable consumer would be misled by these descriptions given the composition of a

4  Latte as including steamed milk, espresso and milk foam and because the beverages are made to

5  order.  Plaintiffs admit that Lattes are "created by mixing steamed milk and espresso, which is

6  then topped with a thin layer of milk foam."  (Compl., ¶ 12.)  No reasonable consumer would

7  expect a description as to the volume of a Latte to exclude two necessary components of the

8  beverage – steamed milk and milk foam.  Both of those components must fit within the serving

9  cup.  Thus, the reasonable consumer is not deceived by receiving a Latte presented in its freshly-

10  assembled form.

11       Plaintiffs allege that milk foam does not count towards the volume of a Latte.  (Compl., ¶¶

12  24 (alleging that Starbucks' Grande serving cups are too small to hold 16 ounce of "fluid"); 25

13  ("The milk foam added to the top of Starbucks Lattes does not count toward the volume of its

14  beverages").)  Plaintiffs base this allegation on the methods that the "food science community"

15  and the "weights and measures community" use to measure foam.  (Compl., ¶ 25.)  Plaintiffs make

16  no allegation regarding the only relevant expectation here -- that of a *reasonable consumer*.  The

17  methods assertedly used by unspecified "food science" and "weights and measures" communities

18  are irrelevant.  It is the *reasonable consumer's* expectation that matters.  The "reasonable

19  consumer" is an "average" consumer, not one who bases his or her expectation on methods

20  employed by specific, scientific sub-communities.  *See, e.g.*, *Brod*, 927 F. Supp. 2d at 830

21  (discussing "the reasonable or average" consumer); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444,

22  451 (S.D. Cal. 2014) (discussing the "reasonable average consumer").

23       Plaintiffs also allege that adding up the respective volumes of the ingredients of a Latte

24  demonstrates that "the resulting beverage measures less than" the stated fluid ounces.  (Compl., ¶

25  22.)  This purported "reverse engineering" is not supported by the Complaint's allegations.

26  Plaintiffs support this contention by alleging that the reference lines "on the pitchers Starbucks'

27  baristas use to make Lattes are "fill lines" set "too low."  (Compl., ¶ 22.)  Plaintiffs ignore the

28  common sense reality and plain view knowledge that those pitchers are used to measure cold milk,

1   which is then steamed prior to being mixed with espresso.  Plaintiffs similarly ignore the fact that

2   milk, when steamed and aerated, expands and forms a layer of foam even though they concede

3   those components comprise a latte.  (Compl., ¶ 12.)  A reasonable consumer similarly understands

4   that, just as milk expands when heated, the aerated, steamed milk and foam contract when they

5   cool.  Indeed, the reasonable consumer purchases a hot Latte in order to consume it at or very near

6   the time of purchase, while still hot, not after the beverage has cooled.  No reasonable consumer

7   would expect the sum of a Latte's separate, steamed parts to remain the same when cooled.  It is

8   the finished, hot Latte, comprised of steamed milk, espresso, and milk foam, that matters to the

9   reasonable consumer.

10          In addition, Plaintiffs' allegation that the Lattes are 25% underfilled simply does not make

11   sense given Plaintiffs' other allegations.  First, Plaintiffs allege that Starbucks' recipe suggests

12   baristas leave a quarter of an inch of space under the brim of the cup.  (Compl., ¶ 19.)  However, a

13   quarter of an inch of space does not amount to 25% of a 16 ounce Latte, or 4 ounces.  Second, as

14   mentioned above, Plaintiffs allege that the ingredients that make up a Latte do not combine to

15   contain the quantities identified on the menu board.  (Compl., ¶ 22.)  Specifically, Plaintiffs allege

16   that the reference lines are "fill to" lines on the "standardized pitcher[s]" used by Starbucks

17   baristas indicate that less than 12 ounces of cold milk should be used for a 16 ounce Latte that will

18   be served hot.  (*Id.*)  They also allege that, after adding 2 shots of espresso, the "resulting beverage

19   measures less than 14 fluid ounces."  (*Id.*)  Even assuming, for the sake of argument, that

20   Plaintiffs' measurements are correct, their math does not compute.  In order for a Grande Latte to

21   be 25% underfilled, it would have to contain only 12 fluid ounces of beverage. As Plaintiffs allege

22   that a "Grande" Latte is made with almost 12 fluid ounces of cold milk, a Latte could only be 25%

23   underfilled if it contained nothing but that cold milk.  Adding espresso or flavoring would result in

24   more than 12 fluid ounces.

25          Plaintiffs' allegations also ignore the fact that a reasonable consumer understands that there

26   will inevitably be variation in handcrafted, made-to-order Lattes.  Though the Complaint takes

27   great pains to allege that Starbucks' standardized recipe strips its baristas of all autonomy (*see,*

28   *e.g.*, ¶¶ 16-19), this is simply not plausible.  While Plaintiffs allege that espresso is dispensed by a

1   "calibrated machine," and flavoring syrup is dispensed in "measured amounts" by "[c]alibrated

2   pumps," Plaintiffs do not allege that milk is dispensed by a calibrated mechanism.  (*See* Compl.,

3   ¶¶ 16-18.)  Though Plaintiffs summarily allege that because baristas are instructed to use pitchers

4   with "fill to" lines, a "barista has no discretion," (Compl., ¶ 16), common sense provides that this

5   is implausible.  Baristas use reference lines on the pitchers for a variety of beverages containing

6   dairy, including hot cocoa, flavored steamed milk, and the Caffe Americano, among others.  A

7   reasonable consumer understands that the fact that Starbucks' Lattes are made-to-order by

8   individual baristas means that there will inevitably be some variation in the hand-crafted

9   beverages.

10        Plaintiffs have failed to state a claim here because it is not plausible that a "significant

11   portion" of the general public "acting reasonably" would be misled by the representations at issue.

12             2.      Plaintiffs' CLRA, UCL, and FAL Claims Should Be Dismissed for Failure

13   to Satisfy Rule 9(b).

14        Claims sounding in fraud should be dismissed if they do not meet the special pleading

15   requirements of Rule 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-06 (9th Cir.

16   2003).  To satisfy this standard, the complaint must allege, in detail, "the who, what, when, where,

17   and how" of the alleged fraudulent conduct," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-26

18   (9th Cir. 2009), and "set forth what is false or misleading about a statement, and why it is false."

19   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see also Edmunson v.*

20   *Procter & Gamble Co.*, 2011 WL 1897625, at *4 (S.D. Cal. May 17, 2011).  Rule 9(b) applies to

21   claims based on the UCL, FAL, and CLRA.  *Kearns*, 567 F.3d at 1125; *Yumul v. Smart Balance,*

22   *Inc.*, 733 F. Supp. 2d 1117, 1122-23 (C.D. Cal. 2010).  Even if fraud is not a necessary element of

23   a claim, the claim must be pled with particularity if its basis is defendant's alleged fraudulent

24   conduct.  *See Vess*, 317 F.3d at 1103–04.  Because Plaintiffs' statutory claims are based on alleged

25   misrepresentations, those claims must be pled with particularity.  (*See,. e.g.,* Compl., ¶¶ 58-79.)

26   Plaintiffs fail to plead their CLRA, UCL, and FAL claims with the particularity required by Rule

27   9(b) and, as a result, Counts IV, V, and VI must be dismissed.  Plaintiff Strumlauf does not allege

28   "when during the class period, where, how many, or how many times [s]he purchased [the

products] or was exposed to the alleged misrepresentations." *Edmunson*, 2011 WL 1897625, at *5 (dismissing misrepresentation claims regarding product labeling for failure to satisfy Rule 9(b)).

Plaintiff Strumlauf, an allegedly repeat customer at Starbucks, does not allege when she started purchasing Starbucks Lattes, how long she has been purchasing them, or how many purchases occurred.[3]  (Compl., ¶ 5.)  Though both Plaintiffs allege they relied on the 16-ounce representation as to Grande Lattes, they do not allege that they saw either the menu pictured in the Complaint or a similar version.  Neither Plaintiff alleges that any Latte they purchased was underfilled.  Accordingly, neither Plaintiff sufficiently alleges the "how" of the purportedly fraudulent conduct as required by Rule 9(b).

>3.      Plaintiffs Also Fail to State a Claim Under the Unlawful Prong of the UCL.

To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. *See Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999); *Blanks v. Shaw*, 171 Cal. App. 4th 336 (2009) (failure to show violation of predicate law bars UCL action for unlawful conduct).  Plaintiffs have failed to allege facts sufficient to demonstrate such a violation here.

Plaintiffs' "unlawful" claim is predicated on violation of the CLRA, FAL, and California Commercial Code section 2607.  (Compl., ¶ 69.)  As demonstrated above, Plaintiffs have failed to establish a violation of the CLRA or FAL (or any other UCL claim).  Plaintiffs' citation to Commercial Code section 2607 is similarly unavailing.  Section 2607 addresses the effect of acceptance of goods, the requirement that a buyer alleging breach notify the seller, and a buyer's burden of establishing breach.  It is unclear how Starbucks could have violated Commercial Code section 2607.  To the extent such a violation was even possible, Plaintiffs have failed to allege facts demonstrating a violation.  Plaintiffs do not allege violation of any other laws, and notably do not allege violation of any statute or regulation applying to made-to-order food or beverage labeling.

---

[3] That Plaintiff Strumlauf was a regular Starbucks customer only underscores her failure to allege how she was allegedly injured, damaged, or defrauded by Starbucks.  As a repeat buyer, her previous purchasing experience informed her of what she would be receiving by ordering a Grande Latte.

1      Plaintiffs' UCL claims thus fail both because Plaintiffs have not plausibly alleged that a

2  reasonable consumer would be deceived by the alleged statements, and because Plaintiffs have

3  failed to allege a violation of an underlying law.

4      **B.**      **Count I for Breach of Express Warranty Should Be Dismissed Because the**

5  **Hand-Crafted Lattes Contain Espresso, Steamed Milk and Milk Foam.**

6      "To prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1)

7  made an affirmation of fact or promise or provided a description of its goods; (2) the promise or

8  description formed part of the basis of the bargain; (3) the express warranty was breached; and (4)

9  the breach caused injury to the plaintiff." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d

10  877, 893-95 (C.D. Cal. 2013) (dismissing breach of express warranty claims to the extent based on

11  alleged warranty that products contained "all natural flavors" because the representation was

12  accurate, and to the extent it was based on use of the term "premium" because the latter was mere

13  puffery).  A description of the goods creates an express warranty when "it was part of the basis of

14  the bargain between the parties." *Id.* at 893.

15      Plaintiffs' breach of express warranty claim fails because Plaintiffs have failed to allege

16  facts demonstrating that Starbucks' representations have caused them injury.  Nowhere in the

17  Complaint do Plaintiffs allege that the Lattes that they purchased were underfilled.  Instead,

18  Plaintiffs generally allege a number of implausible theories to justify their allegation that

19  Starbucks' Lattes are underfilled.  This does not suffice.  Additionally, to the extent Plaintiffs

20  argue that the Lattes breach some express warranty that a Grande Latte is sixteen ounces, because

21  the contents should only be measured in their cooled, non-aerated state, Plaintiffs ignore the

22  "latte" portion of the so-called warranty.  They purchased and received the aerated, steamed milk

23  and milk foam that are integral to a hand-crafted Latte.  Where, as here, a plaintiff fails to allege

24  that she suffered any injury from the purported breach, a claim for breach of express warranty

25  cannot be maintained.  Count I of the Complaint should be dismissed.

26      **C.**      **Count II for Breach of Implied Warranty Should Be Dismissed Because the**

27  **Beverages Were Delivered as Intended, with Espresso, Steamed Milk and Milk Foam.**

28      A plaintiff who claims a breach of the implied warranty of merchantability must show that

1  the product "did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa*

2  *Leisure, Inc*., 114 Cal. App. 4th 402, 406 (2003). "[L]iability for an implied warranty does not

3  depend upon any specific conduct or promise on [the defendant's] part, but instead turns upon

4  whether the[ ] product is merchantable under the code." *Hauter v. Zogarts*, 14 Cal. 3d 104, 117

5  (1975). Courts have dismissed claims for breach of the implied warranty of merchantability in

6  consumer class actions where plaintiffs have alleged that the products are falsely advertised or

7  otherwise misleading, but fail to allege that the products at issue were not usable -- or consumable

8  -- for their ordinary purpose. *See, e.g.*, *Swearingen v. Amazon Preservation Partners, Inc.*, 2014

9  U.S. Dist. LEXIS 111704, 2-4 (N.D. Cal. 2014) (claim dismissed where plaintiff did not "allege[]

10 that the products lack even the most basic degree of fitness for ordinary use"); *Brod*, 927 F. Supp.

11 2d at 831-32 (dismissing claim where plaintiff did not allege that honey without pollen was unfit

12 for the purposes to which an ordinary user would subject the product); *Viggiano*, 944 F. Supp. 2d

13 at 896-97 (claim dismissed where plaintiff alleged only that certain representations regarding soda

14 products were misleading, not that the sodas were not drinkable, contaminated, or otherwise unfit

15 for use as a soft drink).

16       Plaintiffs have not alleged facts demonstrating that the Lattes lack "even the most basic

17 degree of fitness for ordinary use." At most, the Lattes were underfilled. This "defect," if it

18 existed, did not render the Lattes unfit for their intended purpose—immediate consumption while

19 hot. Plaintiffs' vague assertion that the Lattes were "unfit for their …ordinary purpose because

20 Starbucks Lattes are underfilled," they do not allege any facts demonstrating that the Lattes are

21 actually unfit for their ordinary purpose does not save their implied warranty claim from dismissal

22 because Plaintiffs do not allege, let alone plausibly establish, that the Lattes were undrinkable, or

23 otherwise unfit for use as an espresso-based beverage. Plaintiffs have thus failed to state a claim

24 for breach of the implied warranty of merchantability, and Count VII of the Complaint should be

25 dismissed.

26       **D.     <u>Count III Should Be Dismissed Because Unjust Enrichment Is Not an</u>**

27 **<u>Independent Cause of Action</u>.**

28       California courts have held that there is no separate cause of action for unjust enrichment.

*See Levine v. Blue Shield of California*, 189 Cal. App. 4th 1117, 1138 (2010).  Count III of the Complaint should be dismissed solely on this basis.  Unjust enrichment "is not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies."  *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (citations omitted); *see also Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so"); *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) (no freestanding cause of action); *Hill v. Roll Internat. Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) (same).  Nor is there a free-standing cause of action for restitution.  *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("Unjust enrichment is synonymous with restitution.")

This Court, along with others in this district, has recognized that unjust enrichment is not a standalone cause of action under California law.  *See, e.g.*, *Yordy v. Plimus, Inc.*, 2012 U.S. Dist. LEXIS 82719, *20 (N.D. Cal. June 14, 2012); *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1028 (N.D. Cal. 2011); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075-76 (N.D. Cal. 2012) ("there is no cause of action for unjust enrichment under California law").

In addition, even if unjust enrichment were a cognizable cause of action, it is not allowed where, as here, it is duplicative of other statutory and common law claims.  *See, e.g.*, *Pratt v. Whole Foods Mkt. Cal., Inc.*, 2014 U.S. Dist. LEXIS 46409, *29-30 (N.D. Cal. Mar. 31, 2014) (dismissing claim for unjust enrichment/ quasi-contract because it "is duplicative of Plaintiffs statutory claims under the UCL and CLRA"); *Arevalo*, 850 F. Supp. 2d at 1028 (dismissing claim for unjust enrichment where Plaintiffs' claims under the CLRA, UCL, and FAL sought restitution as a remedy); *Yordy*, 2012 U.S. Dist. LEXIS 82719 at *20 (noting that allowing an unjust enrichment claims where a plaintiffs' CLRA, UCL, and FAL claims seek restitution "would be duplicative" and dismissing the unjust enrichment cause of action).  Here, Plaintiffs allege CLRA, UCL and FAL claims (Counts IV, V and VI) subjecting the duplicative unjust enrichment claim to dismissal.

1     The Court should dismiss Count III because unjust enrichment is not a separate cause of

2    action under California law. *McBride*, 123 Cal. App. 4th at 387. Alternatively, the claim is

3    subject to dismissal as impermissibly duplicative of their CLRA, UCL, and FAL claims. *Pratt*,

4    2014 U.S. Dist. LEXIS 46409, at *29.

5        **E.**    **Count VII Should Be Dismissed Because the Economic Loss Doctrine Bars**

6    **Any Claim for Negligent Misrepresentation.**

7     Negligent misrepresentation claims based solely on economic injury fail under the economic

8    loss doctrine, which restricts the remedy of plaintiffs who have suffered economic loss, but not

9    personal or property injury, to an action in contract. *Shahinian v. Kimberly-Clark Corp.*, 2015 WL

10    4264638, *8 (C.D. Cal. July 10, 2015) ("Generally, under the 'economic loss' rule, a plaintiff who

11    suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in

12    tort. Instead, the claimant is limited to recovery under the law of contract."). The economic loss

13    doctrine applies to claims for negligent misrepresentation under California law, and courts have

14    repeatedly held that the doctrine bars such claims based on economic injury in consumer class

15    actions. *See, e.g.*, *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014) (dismissing

16    negligent misrepresentation claim under economic loss doctrine); *Shahinian*, 2015 WL 4264638 at

17    *8 (same).

18     Plaintiffs do not allege personal injury or property damage. They merely allege that they

19    would not have purchased the Lattes "on the same terms" if they had known they were not 16 fluid

20    ounces. (*See, e.g.*, Compl., ¶¶ 5-6.) As Plaintiffs have not and cannot establish the required injury

21    to avoid the economic loss doctrine, their negligent misrepresentation claim should be dismissed as

22    a matter of law.

23        **F.**    **Count VIII Should Be Dismissed Because Plaintiffs Fail to Allege Fraud With**

24    **Particularity.**

25     Plaintiffs' failure to plausibly plead that a reasonable consumer would be misled by the

26    statements at issue, and their failure to allege their claims with particularity, also dooms their fraud

27    cause of action. (*See* discussion at III(A)(1-2), *supra*.) To state a claim for fraud under California

28    law, a plaintiff must plead seven elements with particularity: (1) the defendant represented to the

1  plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew

2  that the representation was false when the defendant made it, or the defendant made the

3  representation recklessly and without regard for the truth; (4) the defendant intended that the

4  plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the

5  plaintiff was harmed; and (7) the plaintiff's reliance on the representation was a substantial factor

6  in causing that harm to the plaintiff. *Manderville v. PCG & S Group, Inc.,* 146 Cal. App. 4th

7  1486, 1498 (2007).  As Plaintiffs have not and cannot plead that the challenged statements would

8  mislead a reasonable consumer such that they could have reasonably relied on it, and have not

9  pled that the Lattes they actually purchased were underfilled, those statements cannot form the

10  basis of a fraud claim.  *See Stuart*, 458 F. App'x at 691-92 (affirming dismissal of fraud claim

11  where the challenged statement could not, as a matter of law, have misled a reasonable person).

12      **G.      Plaintiffs Lack Standing to Pursue Any of Their Claims.**

13      "No principle is more fundamental to the judiciary's proper role in our system of

14  government than the constitutional limitation of federal-court jurisdiction to actual cases or

15  controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976).  "The concept of

16  standing is part of this limitation." *Id.*

17      To establish standing under Article III, the plaintiff must show:  (1) injury in fact;

18  (2) causation; and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

19  A plaintiff must "clearly and specifically set forth facts sufficient to satisfy the Article III standing

20  requirements" in the Complaint, insofar as a "federal court is powerless to create its own

21  jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Ark.*, 495

22  U.S. 149, 155-56 (1990).  To establish an injury in fact, a plaintiff must demonstrate the "invasion

23  of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent,

24  not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations

25  omitted).  "By particularized," it is meant "that the injury must affect the plaintiff in a personal

26  and individual way." *Id.* at 560 n.1.

27      Plaintiffs must also satisfy statutory standing requirements in order to bring claims under

28  the UCL, FAL, or CLRA.  A plaintiff lacks statutory standing to assert a claim under the UCL or

FAL unless he or she "has suffered injury in fact and has lost money or property as a result of" the defendants' acts.  Cal. Bus. & Prof. Code §§ 17204, 17535.  A plaintiff must allege a "distinct and palpable injury," one that is "concrete and particularized" and "not conjectural or hypothetical." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (2008).  The CLRA imposes similar standing requirements.  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 965 (S.D. Cal. 2012) ("Generally, the standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA.").

### 1.   Plaintiffs Lack Standing Because They Failed to Allege Actual Injury.

Plaintiffs lack standing because they fail to allege that the Lattes they purchased were underfilled.  Plaintiffs cannot sue Starbucks based on purportedly underfilled Lattes they did not purchase.  Rather, to recover on their claims they must allege facts demonstrating that the alleged representations were misleading as to the Lattes they purchased.  Both Plaintiffs allege they purchased Starbucks Lattes, and both Plaintiffs allege that they relied on the representation the Lattes would contain sixteen fluid ounces.  (Compl., ¶¶ 5-6.)  However, neither Plaintiff alleges that the Lattes they actually purchased were underfilled.[4]  (*See* Compl., ¶ 5-6.)  Notably, though Plaintiff Strumlauf alleges that she was a repeat customer at Starbucks and would visit her "local Starbucks" once or twice a week, she never alleges that any of those Lattes were underfilled.  (*See* Compl., ¶ 5.)  This is insufficient.  *See, e.g., Davidson v. Kimberly-Clark Corp.*, 2014 WL 7247398 (N.D. Cal. Dec. 19, 2014) (dismissing claims for lack of standing where plaintiff did not allege that she herself experienced any problems with the product)*; Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014) ("There can be no serious dispute that a purchaser of a product who receives the benefit of his bargain has not suffered Article III injury in-fact traceable to the defendant's conduct.").  Plaintiffs have failed to allege actual injury, and thus lack standing to bring these claims.

---

[4] Indeed, the only purchased Lattes allegedly underfilled were those purchased by counsel. (Complaint, ¶ 21.)

2.      Plaintiffs Lack Standing To Pursue Injunctive Relief.

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Castagnola v. Hewlett-Packard Co*., 2012 WL 2159385, at *5 (N.D. Cal. June 13, 2012).  To establish standing for prospective injunctive relief, a plaintiff must demonstrate that he or she has suffered or is threatened with a "concrete and particularized" legal harm coupled with a sufficient likelihood that she will again be wronged in a similar way.  *Id.*  A plaintiff must establish a "real or immediate threat" of repeated injury.  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999).  He or she "cannot rely on the prospect of future injury to unnamed class members if [she] cannot establish [she has] standing to seek injunctive relief."  *Castagnola*, 2012 WL 2159385, at *5.

Pursuant to Article III, "a plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in false or misleading advertising unless there is a likelihood that the plaintiff would suffer future harm from the defendant's conduct."  *Mason v. Nature's Innovation, Inc.*, 2013 WL 1969957, at *4 (S.D. Cal. May 13, 2013).  In false and misleading advertising cases, there is no likelihood of injury to the plaintiff in the future where he or she will not purchase the product at issue from defendant again.  *Castagnola*, 2012 WL 2159385, at *6 (dismissing injunctive relief claim where plaintiffs did not allege that they intended to purchase from defendant again); *Campion v. Old Rep. Home Protection Co., Inc*., 861 F. Supp. 2d 1139, 1150 (S.D. Cal. 2012) ("Plaintiff no longer has a warranty plan with Defendant and testified that he does not ever intend to purchase another one.… Thus, Plaintiff cannot show he is realistically threatened by a repetition of the alleged violation."); *Cattie v. Wal-Mart Stores, Inc*., 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) ("[T]he SAC contains no allegations suggesting she intends to buy linens from Wal-Mart.com in the future.  One of Article III's jurisdictional requirements is that it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'").

Here, Plaintiffs' do not allege facts showing that they are likely to be wronged in a similar way in the future.  Plaintiffs allege that they relied on the representation that Grande-sized Lattes are 16 fluid ounces in deciding to purchase the Lattes.  (Compl., ¶¶ 5-6.)  Plaintiffs also allege that

1   they "would not have purchased Grande-sized Starbucks Lattes on the same terms if [they] had

2   known that they were not, in fact, 16 fluid ounces."  (Compl., ¶¶ 5-6.)  Nowhere do Plaintiffs

3   allege that they will continue to purchase Starbucks Lattes in the future.  Because Plaintiffs have

4   not alleged that they will purchase Starbucks' Lattes again, the Court should dismiss Plaintiffs'

5   request for prospective injunctive relief.

6                               **IV.    <u>CONCLUSION</u>**

7         For the foregoing reasons, Starbucks respectfully requests that Plaintiffs' Complaint be

8   dismissed.

9

10  Dated:  April 11, 2016

11                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

12

13                              By    _____
                                                    */s/ Sascha Henry*

14                                            ROBERT J. GUITE
                                              FRED R. PUGLISI
15                                            SASCHA HENRY
                                              ROBIN A. ACHEN
                                        Attorneys for Starbucks Corporation
16

17

18

19

20

21

22

23

24

25

26

27

28