**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          jluster@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

**MILITARY JUSTICE ATTORNEYS, PLLC**
Gerald Healy (*pro hac vice*)
219 Scott Street, PMB 315
Beaufort, SC  29902
Telephone: (844) 334-5459
Facsimile:  (843) 645-6530
E-Mail: gerry@militaryjusticeattorneys.com

**MILITARY JUSTICE ATTORNEYS, PLLC**
John Hafemann (State Bar No. 238758)
21 W. Park Avenue
Savannah, GA  31401
Telephone: (844) 334-5459
Facsimile:  (843) 645-6530
E-Mail: john@militaryjusticeattorneys.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERA STRUMLAUF and BENJAMIN ROBLES, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>     v.<br><br>STARBUCKS CORPORATION,<br><br>                              Defendant. | Case No. 16-CV-01306-TEH<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date: May 16, 2016<br>Time: 10:00 a.m.<br>Courtroom 12<br><br>Hon. Thelton E. Henderson |

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND ......................................................................................2

I.     STARBUCKS LATTES ARE UNDERFILLED ................................................2

II.    PLAINTIFFS PURCHASED UNDERFILLED LATTES...................................4

THE RULE 12(B)(6) LEGAL STANDARD ..............................................................4

ARGUMENT ..........................................................................................................5

I.     PLAINTIFFS STATE CLAIMS FOR VIOLATIONS OF STATE
       CONSUMER PROTECTION LAWS AND COMMON LAW FRAUD ..............5

       A.     Plaintiffs Satisfy The Reasonable Consumer Standard And Therefore
              State Plausible Claims For Violations Of The CLRA, UCL, And
              FAL...................................................................................................5

              1.     *Whether A Reasonable Consumer Would Be Misled Is Beyond
                     The Scope Of A Motion To Dismiss*................................................5

              2.     *The Complaint Adequately Alleges That A Reasonable
                     Consumer Would Be Deceived By Starbucks' Underfilling* .........7

              3.     *The Cases Cited By Starbucks Are Inapposite* .............................9

       B.     Plaintiffs Have Pled Their Claims In Accordance With Rule 9(b) .........11

       C.     Plaintiffs State A Claim Under The Unlawful Prong Of The UCL .........13

II.    PLAINTIFFS STATE CLAIMS FOR BREACHES OF WARRANTY .............14

       A.     Plaintiffs State A Claim For Breach Of Express Warranty ...................14

       B.     Plaintiffs State A Claim For Breach Of The Implied Warranty Of
              Merchantability................................................................................15

III.   THE ECONOMIC LOSS DOCTRINE DOES NOT BAR PLAINTIFFS'
       NEGLIGENT MISREPRESENTATION CLAIM..............................................17

IV.    PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT...................17

V.     PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS...................19

CONCLUSION ......................................................................................................20

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Arevalo v. Bank of Am. Corp.*,
    850 F. Supp. 2d 1008 (N.D. Cal. 2011) ............................................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 4

*Astiana v. Hain Celestial Group, Inc.*,
    783 F.3d 753 (9th Cir. 2015) .................................................................................. 18

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ..................................................................................... 12

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990) ................................................................................... 4

*Bily v. Arthur Young & Co.*,
    834 P.2d 745 (Cal. 1992) ........................................................................................ 17

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
    475 F. App'x 113 (9th Cir. 2012) ........................................................................... 10

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) .................................................................................. 12

*Davidson v. Kimberly-Clark Corp.*,
    76 F. Supp. 3d 964 (N.D. Cal. 2014) ..................................................................... 19

*Day v. AT&T Corp.*,
    63 Cal. App. 4th 325 (1998) .................................................................................... 5

*Ebner v. Fresh, Inc.*,
    2016 WL 1056088 (9th Cir. Mar. 17, 2016) .......................................................... 10

*Gallagher v. Chipotle Mexican Grill, Inc.*,
    2016 WL 454083 (N.D. Cal. Feb. 5, 2016) ........................................................... 11

*Garcia v. Kashi Co.*,
    43 F. Supp. 3d 13595 (S.D. Fla. 2014) ................................................................... 11

*Gustavson v. Wrigley Sales Co.*,
    961 F. Supp. 2d 1100 (N.D. Cal. 2013) ................................................................... 6

*Hendricks v. StarKist Co.*,
    30 F. Supp. 3d 917 (N.D. Cal. 2014) ........................................................ 14, 16, 19

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ................................................................................... 12

*Isip v. Mercedes-Benz USA, LLC*,
    155 Cal. App. 4th 19 (Cal. Ct. App. 2007) ........................................................... 16

*Ivie v. Kraft Foods Global, Inc.*,
    961 F. Supp. 2d 1033 (N.D. Cal. 2013) ................................................................. 8

*Jou v. Kimberly-Clark Corp.*,
    2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ...................................................... 11

*Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*,
    315 F. App'x 603 (9th Cir. 2008) ......................................................................... 17

*Keegan v. Am. Honda Motor Co.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012) .................................................................. 16

*Keniston v. Roberts*,
    717 F.2d 1295 (9th Cir. 1983) .............................................................................. 20

*Khasin v. Hershey Co.*,
    2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) .......................................................... 7

*Lanovaz v. Twinings North America, Inc.*,
    2013 WL 675929 (N.D. Cal. Feb. 25, 2013) ................................................ 6, 8, 19

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
    992 F. Supp. 2d 962 (C.D. Cal. 2014) ............................................................ 19, 20

*Manchouck v. Mondelez Int'l Inc.*,
    2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ...................................................... 11

*McKinniss v. Sunny Delight Beverages Co.*,
    2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ......................................................... 5

*Miller v. Ghirardelli Chocolate Co.*,
    912 F. Supp. 2d 861 (N.D. Cal. 2012) .................................................................... 6

*Minkler v. Apple*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) .................................................................... 17

*Nowrouzi v. Maker's Mark Distillery*,
    2015 WL 4523551 (S.D. Cal. July 27, 2015) ........................................................ 10

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) .................................................................. 11

*Pelletier v. Fed. Home Loan Bank of S.F.*,
    968 F.2d 865 (9th Cir. 1992) ................................................................................ 12

*Perez v. Monster Inc.*,
    2016 WL 234370 (N.D. Cal. Jan. 20, 2016) .......................................................... 18

*Ragland v. U.S. Bank Nat. Ass'n*,
    209 Cal. App. 4th 182 (Cal. Ct. App. 2012) ......................................................... 17

*Rejects Skate Magazine, Inc. v. Acutrack, Inc.*,
    2006 WL 2458759 (N.D. Cal. Aug. 22, 2006) ....................................................... 17

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir. 1984) ........................................................................... 4

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
   102 P.3d 268 (Cal. 2004) ................................................................................ 17

*Rutherford Holdings, LLC v. Plaza Del Rey*,
   223 Cal. App. 4th 221 (Cal. Ct. App. 2014) ................................................... 18

*Samet v. Procter & Gamble Co.*,
   2013 WL 6491143 (N.D. Cal. Dec. 10, 2013) ............................................ 5, 15

*Segedie v. Hain Celestial Grp. Inc.*,
   2015 WL 21583741 (S.D.N.Y. May 7, 2015) ................................................. 11

*Seifi v. Mercedes-Benz USA, LLC*,
   2013 WL 2285339 (N.D. Cal. May 23, 2013) ............................................ 13, 20

*Shahinian v. Kimberly-Clark Corp.*,
   2015 WL 4264638 (C.D. Cal. July 10, 2015) ................................................. 17

*Sioux Honey Ass'n Co-op*,
   927 F. Supp. 2d 811 (N.D. Cal. 2013) ........................................................... 10

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 1635931 (N.D. Cal. June 5, 2009) .................................................. 11

*Stuart v. Cadbury Adams USA, LLC*,
   458 F. App'x 689 (9th Cir. 2011) .................................................................. 10

*Surzyn v. Diamond Foods, Inc.*,
   2014 WL 22122164 (N.D. Cal. May 28, 2014) .............................................. 11

*Tsan v. Seventh Generation, Inc.*,
   2015 WL 6694104 (N.D. Cal. Nov. 3, 2015) ............................................... 6, 14

*Bell Atlantic. Corp. v Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 4

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) ............................................................................ 4

*Walling v. Beverly Enters.*,
   476 F.2d 393 (9th Cir. 1973) ............................................................................ 4

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal. App. 4th 1213 (Cal. Ct. App. 2010) ................................................. 14

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ....................................................................... 5, 11

*Williamson v. Apple, Inc.*,
   2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ................................................. 11

*Yordy v. Plimus, Inc.*,
    2012 WL 2196128 (N.D. Cal. June 14, 2012) .......................................................... 18

*Zakaria v. Gerber Products Co.*,
    2015 WL 3827654 (C.D. Cal. June 18, 2015) ......................................................... 17

**STATUTES**

Cal. Com. Code § 2313(2) ............................................................................................... 14

Cal. Com. Code § 2314 ............................................................................................. 15, 16

Cal. Com. Code § 2314(2)(a) ................................................................................... 15, 16

Cal. Com. Code § 2314(2)(b) .......................................................................................... 16

Cal. Com. Code § 2314(2)(c) ........................................................................................... 16

Cal. Com. Code § 2314(2)(d) .......................................................................................... 16

Cal. Com. Code § 2314(2)(e) ........................................................................................... 16

Cal. Com. Code § 2314(2)(f) ........................................................................................... 16

**RULES**

Fed. R. Civ. P. 8(d)(2) ..................................................................................................... 18

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 4, 7

**INTRODUCTION**

At its core, this is a simple case. Consumers paid for specified fluid ounces of Starbucks Lattes, but received Lattes that were uniformly underfilled. *See* Class Action Complaint ("Compl.") ¶ 1. These allegations are corroborated by several categories of evidence, including testing done by Plaintiffs' counsel, reference to the design of Starbucks' standardized pitcher used by its baristas to make Lattes, and even the size of the serving cups themselves. *See id.* ¶¶ 20-25.

Defendant Starbucks Corporation ("Starbucks") does not even dispute that its Lattes are underfilled. *See* Starbucks' Motion To Dismiss Complaint, Doc. No. 16 ("Def.'s Br.") at 14 ("At most, the lattes were underfilled."). Rather, Starbucks attempts to obfuscate these simple facts by arguing that the reasonable consumer would not be deceived or mislead by its conduct. But that inquiry is inappropriate for a motion to dismiss, where the Court is obligated to presume that all factual allegations in the Complaint are true. And even if the Court were to consider Starbucks' argument, Plaintiffs' allegations are plainly reasonable. Plaintiffs allege that Starbucks represents its Lattes contain a specified amount of fluid ounces (*e.g.*, "16 fl. oz.") when they actually contain 25% less than that amount. A reasonable consumer would likely be deceived or misled by that substantial underfilling.

The rest of Starbucks' arguments miss the mark. Starbucks argues that Plaintiffs failed to meet the pleading standard of Rule 9(b), even though their Complaint clearly does so. *See* Compl. ¶¶ 1, 5, 6, 42, 52, 56, 63, 72, 79, 87, 92. Starbucks then argues that Plaintiffs fail to state claims for breaches of warranty. But Plaintiffs plainly allege that Starbucks warranted that its "Lattes contained '12 fl. oz.' for a Tall, '16 fl. oz.' for a Grande, and '20 fl. oz.' for a Venti," when in fact "Starbucks Lattes are underfilled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, and a Venti does not contain 20 fluid ounces." *Id.* ¶¶ 40-41. And Plaintiffs further allege that as a direct and proximate result of Starbucks' breaches of warranty, Plaintiffs and Class members have been injured and harmed. *Id.* ¶ 42. Starbucks then contends that Plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine, even though California courts, including the Ninth Circuit, have held that doctrine does not apply to claims for negligent misrepresentation. And Starbucks contends that Plaintiffs' unjust enrichment

claim fails because it is not cognizable under California law, even though the Ninth Circuit recently held that district courts may construe such counts as claims for restitution under a quasi-contract theory of liability.

Finally, Starbucks contends that Plaintiffs lack Article III standing to pursue their claims because they do not allege economic injury. But Plaintiffs clearly alleged that they purchased underfilled Lattes and would not have done so on the same terms if they had known that Starbucks underfills its Lattes. *Id.* ¶¶ 5, 6, 42, 52, 56, 63, 72, 79, 87, 92. Courts have consistently held that those allegations are sufficient to confer standing.

Plaintiffs allege facts that are simple, clear, and powerful. Starbucks sells Lattes that are underfilled. When this basic fact is understood, Starbucks' arguments for dismissal must be rejected.

## FACTUAL BACKGROUND

### I. STARBUCKS LATTES ARE UNIFORMLY UNDERFILLED

Plaintiffs allege that Starbucks Lattes are uniformly underfilled pursuant to a standardized recipe. Compl. ¶ 1. That is, Starbucks cheats purchasers by providing less fluid ounces in their Lattes than represented. *Id.* In fact, Starbucks Lattes are approximately 25% underfilled. *Id.* Several categories of evidence support these allegations.

<u>First</u>, Plaintiffs' counsel purchased and measured Starbucks Lattes at different stores, in different states, in different sizes, and in different flavors. *Id.* ¶ 21. The results were the same – each Latte was underfilled by approximately 25%. *Id.*

<u>Second</u>, Plaintiffs' counsel acquired several standardized pitchers designed by Starbucks and currently in use by Starbucks baristas to make Lattes. *Id.* ¶ 22. The etched "fill to" lines used to measure the steamed milk are plainly set too low. *Id.* By way of example, for a Grande beverage, the "fill to" line comprises less than 12 fluid ounces of milk. *Id.* After adding 2 shots of espresso (2 fluid ounces), the resulting beverage measures less than 14 fluid ounces at most. *Id.* That falls well short of Starbucks' "16 fl. oz." representation. *Id.*

Third, the serving cups used by Starbucks simply do not accommodate the promised beverage sizes in fluid ounces, per the standardized recipe for Lattes. *Id.* ¶ 23. When filled to the brink, the serving cup used for Grande beverages holds *exactly* 16 fluid ounces (the same is true for the Tall cup, which holds *exactly* 12 fluid ounces, and the Venti cup, which holds *exactly* 20 fluid ounces). *Id.* However, Starbucks' recipe for its Grande Latte calls to fill the serving cup up to "1/4 inch below cup rim." *Id.* Thus, ¼" of empty cup space exists above ¼" of milk foam, which sits atop the fluid Latte. Accordingly, per the recipe, the Grande serving cup is just too small to hold a 16 fluid ounce latte. *Id.*

Moreover, the milk foam added to the top of Starbucks Lattes does not count toward the volume of its beverages. *Id.* ¶ 25. In the food science community, as well as in the weights and measures community, foam is not measured on a volumetric basis. *Id.* Rather, it is measured by mass. *Id.* When food scientists – and weights and measures inspectors – measure a liquid with foam, the industry-standard procedure is to let the foam dissipate or eliminate the foam, then measure the resulting liquid. *Id.* Under this analysis, milk foam cannot compensate for an otherwise underfilled Latte. *Id.*

This uniform underfilling is not an accident. In January 2008, Howard Schultz resumed his position as CEO of Starbucks after the company faced financial turmoil. *Id.* ¶ 26. Mr. Schultz led an effort to increase profitability by reducing costs. *Id.* A key component of this cost-cutting effort was to reduce the amount of milk used by baristas in Starbucks beverages. *Id.* ¶ 27. Accordingly, Starbucks implemented a system of placing standardized, etched lines into the pitchers. *Id.* In doing so, Starbucks eliminated barista discretion, and standardized the amount of milk in each latte. *Id.* Unfortunately for consumers, Starbucks cut too much milk. *Id.* ¶ 30. Stated otherwise, when a standard recipe is used to create a drink that is purportedly 16 fluid ounces, the resulting beverage should in fact be 16 fluid ounces. *Id.* In connection with these cost-saving measures, Starbucks knew that the etched "fill to" lines in its steaming pitchers resulted in underfilled beverages. *Id.* Yet Starbucks continued to advertise its Tall beverages as "12 fl. oz.," its Grande beverages as "16 fl. oz.," and its Venti beverages as "20 fl. oz." *Id.*

## II.  PLAINTIFFS PURCHASED UNDERFILLED LATTES

Plaintiffs Siera Strumlauf and Benjamin Robles each purchased underfilled Grande (16 fluid ounce) Starbucks Lattes at retail locations in San Francisco and Carlsbad, California.  *Id.* ¶¶ 5, 6, 42, 52, 56, 63, 72, 79, 87, 92.[1]  Each Plaintiff saw the representation on Starbucks' menu that their Grande-sized Latte would be "16 fl. oz." prior to and at the time of purchase, and understood this to be a representation and warranty that their Lattes would, in fact, contain 16 fluid ounces.  *Id.* ¶¶ 5, 6.  Each Plaintiff relied on this representation and warranty in deciding to purchase their Starbucks Lattes as part of the basis of the bargain, in that they would not have purchased Grande-sized Starbucks Lattes on the same terms if they had known that they were not, in fact, 16 fluid ounces.  *Id.* ¶¶ 5, 6, 42, 52, 56, 63, 72, 79, 87, 92.

## THE RULE 12(b)(6) LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted.  Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).  For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved in favor of the pleading.  *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973).  The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face."  *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Moreover, because Starbucks Lattes are made pursuant to a standardized recipe, every Latte is uniformly underfilled.  *Id.* ¶¶ 1, 21-30.  Thus every Starbucks Latte Plaintiffs purchased was underfilled.

## I. PLAINTIFFS STATE CLAIMS FOR VIOLATIONS OF STATE CONSUMER PROTECTION LAWS AND COMMON LAW FRAUD

### A. Plaintiffs Satisfy The Reasonable Consumer Standard And Therefore State Plausible Claims For Violations Of The CLRA, UCL, And FAL

To state a claim under the UCL, FAL, or CLRA, Plaintiffs must allege that Starbucks' representations are likely to deceive a reasonable consumer. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "The term 'likely' indicates that deception must be probable, not just possible." *McKinniss v. Sunny Delight Beverages Co.*, 2007 WL 4766525, at *3 (C.D. Cal. Sept. 4, 2007) (citations omitted).

In *Gerber*, the Ninth Circuit declared: "California courts … have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." 552 F.3d at 938. The court made clear that granting a motion to dismiss a UCL, FAL, or CLRA claim is only appropriate in "rare situation[s]," for example when "the advertisement itself made it *impossible* for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id.* at 939 (emphasis added); *see also Samet v. Procter & Gamble Co.*, 2013 WL 6491143, at *7 (N.D. Cal. Dec. 10, 2013) ("[T]he Ninth Circuit has made it clear that such questions are issues of fact and inappropriate for resolution on a motion to dismiss."). Even a true advertisement can be deceptive and thus actionable under the UCL if "couched in such a manner that is likely to mislead or deceive the consumer." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998).

#### 1. *Whether A Reasonable Consumer Would Be Misled Is Beyond The Scope Of A Motion To Dismiss*

Starbucks contends that "Plaintiffs fail to establish that a reasonable consumer would be misled by the representation of the size of the" Lattes. Def.'s Br. at 9. That argument ignores the allegations of the Complaint, which states that Starbucks' actions "were false and misleading such that the general public is and was likely to be deceived." Compl. ¶ 78. But despite those allegations, Starbucks asks the Court to go beyond the four corners of the Complaint and find as a

matter of law that the conduct described therein would not mislead a reasonable consumer. Courts in this District have consistently declined to do so on a motion to dismiss. For example, in *Lanovaz v. Twinings North America, Inc.*, 2013 WL 675929 (N.D. Cal. Feb. 25, 2013), the defendant argued that it was "implausible that plaintiff would find the statement 'natural source of antioxidants' misleading" because "a reasonable consumer would not know that the FDA has not defined 'source' and 'natural source.'" *Id.* at *6. Judge Whyte rejected that argument and sustained the plaintiff's claims because she alleged that "the label meant that the tea met a minimum nutritional requirement and that she would not have bought it, or paid a premium for it, had she known that it did not meet the minimum requirements for listing a product as containing antioxidants." *Id.* Judge Whyte further explained that "[t]o the extent the injury alleged is reliance on a misleading, as opposed to an unlawful, label, whether plaintiff was actually misled is a factual question that is an inappropriate basis for dismissal at this stage." *Id.*

As another example, in *Tsan v. Seventh Generation, Inc.*, 2015 WL 6694104 (N.D. Cal. Nov. 3, 2015), the defendant argued that the plaintiff's definition of "natural" was implausible, and therefore did not meet the reasonable consumer standard. *Id.* at *4-5. Judge Tigar rejected that argument and held that "[a] factfinder may ultimately find that a reasonable consumer would not define 'natural' as Plaintiff does, but that is not for the Court to resolve on the pleadings alone." *Id.* at *5.

Numerous other courts in this District have similarly rejected defendants' requests to go beyond the four corners of the Complaint and find as a matter of law that the conduct described therein would not mislead a reasonable consumer. *See, e.g., Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1130 (N.D. Cal. 2013) (Koh, J.) ("While Defendants' [sic] dispute the plausibility of these statements, arguing that no reasonable consumer would attach any significance to these alleged labeling violations, the Court recognizes that whether a practice is deceptive, fraudulent, or unfair is generally a question of fact that is not appropriate for resolution on the pleadings."); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 874 (N.D. Cal. 2012) (Beeler, J.) ("These are fact questions that should not be decided on a motion to dismiss. …

Reading this label as a whole and in context with the allegations about the marketing, the court cannot say, as a matter of law, that no reasonable consumer would be deceived by the baking chips label."); *Khasin v. Hershey Co.*, 2012 WL 5471153, at *7 (N.D. Cal. Nov. 9, 2012) (Davila, J.) ("The Court rejects this argument simply because the issues Defendant raise ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of this Rule 12(b)(6) motion.").

> 2.     *The Complaint Adequately Alleges That A Reasonable Consumer Would Be Deceived By Starbucks' Underfilling*

Even if the Court were to go beyond the four corners of the Complaint and determine whether a reasonable consumer would be deceived by Starbucks' conduct, this case does not present the "rare situation" where a court may find that a reasonable consumer would not be deceived as a matter of law on a motion to dismiss. Here, Plaintiffs allege that "Starbucks Lattes are created pursuant to the company's standardized recipe," and that "the resulting beverages are underfilled." Compl. ¶ 20. Plaintiffs explain that the Lattes are underfilled because: (a) the "fill to" line on the standardized pitcher for a "16 fl. oz." Latte comprises less than 12 fluid ounces of milk, resulting in no more than 14 fl. oz. of Latte, after adding two shots of expresso; (b) the serving cups used by Starbucks are only capable of holding exactly 16 fluid ounces of beverage, but the recipe calls for the barista to leave ¼" of empty space above the milk foam; and (c) the milk foam added to the top of the Lattes does not count towards the volume of its beverages, because foam is not measured on a volumetric basis. *Id.* ¶¶ 21-25. And Plaintiffs further explain that Starbucks made a conscious decision to implement standardized pitchers to cut milk costs. *Id.* ¶¶ 26-30. Moreover, the Complaint includes a picture of Starbucks' menu which represents that Lattes contain "12 fl. oz" for a Tall, "16 fl. oz." for a Grande, and "20 fl. oz." for a Venti. *Id.* ¶ 1. Taken together, these allegations plausibly allege that consumers would expect to receive the stated fluid ounces when they purchase a Starbucks Latte, but instead receive less than the stated amount. In other words, these allegations plausibly allege that a reasonable consumer would be deceived.

Starbucks' arguments to the contrary do not compel a different conclusion. <u>First</u>, Starbucks argues that a reasonable consumer would not "expect a description as to the volume of a Latte to

exclude two necessary components of the beverage – steamed milk and milk foam. Both of those components must fit within the serving cup." Def.'s Br. at 9. But this argument fails to address Plaintiffs' allegations that the "serving cup is just too small to hold a 16 fluid ounce latte." Compl. ¶ 23. Put otherwise, Plaintiffs are *not* alleging that they were deceived by the inclusion of steamed milk and milk foam in a latte. They *are* alleging, in part, that Starbucks' serving cups are too small to hold the represented 16 fluid ounces of latte.

Second, Starbucks argues that "[t]he methods assertedly used by an unspecified 'food science' and 'weights and measures' communities are irrelevant. It is the *reasonable consumer's* expectation that matters." Def.'s Br. at 9. That is misleading. The fact that these expert communities exclude foam when measuring volume of consumer products simply reinforces that a reasonable consumer would also exclude foam from the volume of a beverage. And to require a consumer to have such detailed knowledge would not only be inconsistent with the reasonable consumer standard, it would defy common sense. For example, most consumers do not understand the precise composition of 18-karat gold, but a reasonable consumer has a general understanding that 18-karat gold is more pure than 10-karat gold, and a reasonable consumer would likely have been deceived if he purchased 10-karat gold labeled "18-karat." *See Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1046 (N.D. Cal. 2013) ("The court disagrees with defendants that a plaintiff would be required to *know* of the particular FDA or state law regulations in order for violations thereof to cause an *economic* injury."); *Lanovaz*, 2013 WL 675929, at *6 (holding that the plaintiff's claims were plausible where she alleged that she thought "the tea met a minimum nutritional requirement and that she would not have bought it, or paid a premium for it, had she known that it did not meet the minimum requirements for listing a product as containing antioxidants"). Here, similarly, Plaintiffs were misled by the fact that Starbucks Lattes did not contain the represented amount of beverage. Other consumers would reasonably be deceived by this misrepresentation as well.

Third, Starbucks argues that Plaintiffs' allegation that "the etched 'fill to' lines used to measure the steamed milk are plainly set too low" is wrong because it "ignore[s] the common sense

reality and plain view knowledge that those pitchers are used to measure cold milk, which is then steamed prior to being mixed with espresso." Def.'s Br. at 9-10 (quoting Compl. ¶ 22). That argument is a non-sequitur. Even accepting it as true, the Complaint still alleges that "the serving cup used for Grande beverages holds *exactly* 16 fluid ounces …. However, Starbucks recipe for its Grande Late calls to fill the serving cup up to '1/4 inch below cup rim.'" Compl. ¶ 23.[2]

Fourth, Starbucks argues that Plaintiffs' "math does not compute," because "[i]n order for a Grande Latte to be 25% underfilled, it would have to contain only 12 fluid ounces of beverage." Def.'s Br. at 10. But that is exactly what Plaintiffs have alleged. The word "beverage" is defined as "a drinkable liquid." http://www.merriam-webster.com/dictionary/beverage. Milk foam, therefore, is not a "beverage."

Finally, Starbucks argues that Plaintiffs' allegations "that Starbucks' standardized recipe strips its baristas of all autonomy … is simply not plausible," because "Plaintiffs do not allege that milk is dispensed by a calibrated mechanism." Def.'s Br. at 10-11. But Plaintiffs allege that "pursuant to the standardized recipe, the barista fills a standardized pitcher with steamed milk up to an etched 'fill to' line." Compl. ¶ 16. Plaintiffs also allege that a calibrated machine dispenses espresso. *Id.* ¶ 17. And Plaintiffs further allege that calibrated pumps dispense flavoring syrup in measured amounts. *Id.* ¶ 18. Starbucks' only response is that "common sense provides that this is implausible," since baristas use reference lines on the pitchers for a variety of other beverages. Def.'s Br. at 11.

### 3. *The Cases Cited By Starbucks Are Inapposite*

Starbucks cites a string of cases in which other courts dismissed CLRA, FAL, and UCL claims for failing to meet the reasonable consumer standard. Each of these cases are inapposite and are readily distinguishable.

---

[2] Starbucks also changes course on its reasonable consumer arguments here. While Starbucks insists that a reasonable consumer does not expect 16 fluid ounces of latte when ordering a 16 fluid ounce latte, it contends that "[a] reasonable consumer … understands that, just as milk expands when heated, the aerated, steamed milk and foam contract when they cool." Def.'s Br. at 10.

Starbucks relies heavily on *Ebner v. Fresh, Inc.*, 2016 WL 1056088 (9th Cir. Mar. 17, 2016). Contrary to Starbuck's claim, *Ebner* is not "instructive here." Def.'s Br. at 7. In *Ebner*, the plaintiff alleged that a lip balm product's label, tube design, and packaging were deceptive and misleading because the dispenser device only allowed for 75% of the product to advance up the tube. *Ebner*, 2016 WL 1056088, at *1. Notably, the complaint did "not allege that the Sugar tube contains less than the stated quantity of the product." *Id.* The Ninth Circuit found that the plaintiff's claims failed to meet the reasonable consumer standard because it was "undisputed that the Sugar label disclose[d] the correct weight of included lip product." *Id.* at *5. Here, by contrast, Plaintiffs allege that Starbucks Lattes are underfilled, in violation of Starbucks' representations to the contrary (*e.g.*, "16 fl. oz."). *See, e.g.*, Compl. ¶ 1. In other words, Plaintiffs allege that Starbucks misrepresents the amount of fluid ounces in its Lattes. And unlike in *Ebner*, consumers of Starbucks Lattes reasonably expect to be able to consume the entirety of their Lattes – while in *Ebner*, "the reasonable consumer understands the general mechanics of these dispenser tubes and further understands that some product may be left in the tube to anchor the bullet in place." *Ebner*, 2016 WL 1056088, at *5.

The remainder of Starbucks' cited cases are inapposite because, in each, the consumers' beliefs were patently unreasonable. *Cf. Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 691 (9th Cir. 2011) (dismissing claims where plaintiff alleged that "whitens teeth" and "removes stains" were not synonymous, and where plaintiff alleged that the "failure to tell consumers that Trident White only removes stains in conjunction with an oral hygiene program is deceptive"); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (dismissing claims where plaintiff alleged "that a reasonable consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to imply that Drumstick is more wholesome or nutritious than competing products"); *Nowrouzi v. Maker's Mark Distillery*, 2015 WL 4523551, at *7 (S.D. Cal. July 27, 2015) (dismissing claims where plaintiff alleged that "handmade" could reasonably be interpreted "as meaning literally by hand," or that no "equipment or automated process was used to manufacture the whisky"); *Ross v. Sioux Honey Ass'n Co-op*, 927 F. Supp. 2d 811, 830 (N.D.

Cal. 2013) (dismissing claims where "Plaintiff has failed to allege any facts to support his contention that the lack of a disclaimer on Sue Bee Honey regarding its non-pollinated state would deceive the reasonable consumer"); *Gallagher v. Chipotle Mexican Grill, Inc.*, 2016 WL 454083, at *4 (N.D. Cal. Feb. 5, 2016) (dismissing claims where the plaintiff alleged that "the reasonable consumer would interpret 'non-GMO ingredients' to mean meat and dairy ingredients produced from animals that never consumed any genetically modified substances"); *Manchouck v. Mondelez Int'l Inc.*, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013) (dismissing claims where plaintiff alleged "that a reasonable consumer would think that Newtons [cookies] 'made with fruit,' exclude fruit purée"); *Williamson v. Apple, Inc.*, 2012 WL 3835104, at *6 (N.D. Cal. Sept. 4, 2012) (dismissing claims where plaintiff alleged that a reasonable consumer would "believe that the glass housing on the iPhone 4 was indestructible or drop-proof"); *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *11 (N.D. Cal. June 5, 2009) (dismissing claims where "[n]o reasonable consumer would believe that a Sleep Number® bed miraculously would deliver the elusive 'perfect night's sleep'").[3] Here, by contrast, Plaintiffs' allegations are reasonable, and the facts of this case do not amount to the "rare situation" in which granting a motion to dismiss in appropriate. *Gerber*, 552 F.3d at 939.

**B.    Plaintiffs Have Pled Their Claims In Accordance With Rule 9(b)**

Starbucks argues that Plaintiffs' CLRA, UCL, and FAL claims should be dismissed for failure to satisfy Rule 9(b). Def.'s Br. at 11-12. That is wrong. Rule 9(b) requires that the

---

[3] Starbucks also cites *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013) in support of this argument. But *Pelayo*, which suggested that reasonable consumers could not take "natural" claims at face value, has been repeatedly rejected by other courts. *See Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) (Corley, J.) (finding that the *Pelayo* holding "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit"); *Segedie v. Hain Celestial Grp. Inc.*, 2015 WL 2158374, at *11 n.4 (S.D.N.Y. May 7, 2015) ("The weight of authority has shifted away from *Pelayo*."); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1384-85 (S.D. Fla. 2014) ("[N]o subsequent case has adopted *Pelayo*'s position, and two cases have affirmatively rejected it. … For the same reasons, this Court rejects *Pelayo*."); *Surzyn v. Diamond Foods, Inc.*, 2014 WL 2212216, at * 4 (N.D. Cal. May 28, 2014) (Armstrong, J.) ("The Court concludes the *Pelayo* is not persuasive, and declines Defendant's invitation to follow it.").

complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). In other words, allegations of fraud must be accompanied by "who, what, when, where, and how." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). On a motion to dismiss, the court must read the complaint generously, accepting all allegations as true, and draw all reasonable inferences in favor of the nonmoving party. *See Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 872 (9th Cir. 1992).

Here, Plaintiffs' allegations satisfy the heightened pleading standard because they are sufficiently precise to allow Starbucks to understand the nature of the allegations and to frame a responsive pleading. These allegations identify Starbucks' fraudulent misrepresentations, where and when the misrepresentations were made, and explain why they are false. Plaintiffs allege that they relied on both express and implied warranties "that Grande-sized Starbucks Lattes would be '16 fl. oz.' prior to and at the time of purchase, and understood this to be a representation and warranty that [their] Lattes would, in fact, contain 16 fluid ounces." Compl. ¶¶ 5-6. Plaintiffs further allege that they relied on these representations and warranties in deciding to purchase Starbucks Lattes. *See id.* ¶¶ 5, 6, 42, 52, 56, 63, 72, 79, 87, 92. Moreover, Plaintiffs allege that these statements were part of the basis of the bargain in that they would not have purchased Starbucks Lattes on the same terms if they had known that these statements were false. *See id.* But these representations are literally false because Starbucks Lattes are uniformly underfilled. *Id.* ¶¶ 1, 20-25, 41.

In sum, the allegations in the Complaint provide "all of the essential factual background that would accompany the first paragraph of any newspaper story – that is the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (citations omitted).

| | |
|---|---|
| **Who:** | The Complaint specifically identifies Starbucks as the entity that misrepresented that its "Lattes contained '12 fl. oz.' for a Tall, '16 fl. oz' for a Grande, and '20 fl. oz.' for a Venti." Compl. ¶ 40. |
| **What:** | The Complaint identifies and describes Starbucks Lattes. *Id.* ¶ 1. Plaintiffs allege that Starbucks falsely represented that its "Lattes contained '12 fl. oz.' for a Tall, '16 fl. oz' for a Grande, and '20 fl. oz.' for a Venti." *Id.* ¶ 40. |
| **When:** | Plaintiffs allege they purchased underfilled Grande-sized Starbucks Lattes within the relevant class period. *Id.* ¶¶ 5, 6, 42, 52, 56, 63, 72, 79, 87, 92; *see also* Strumlauf Aff. ¶ 3. They further allege that they relied on Starbucks' false representations in purchasing the product. Compl. ¶¶ 5, 6, 42, 52, 56, 63, 72, 79, 87, 92. |
| **Where:** | Plaintiffs allege that they are California citizens and purchased Grande-sized Starbucks Lattes at retail locations in San Francisco and Carlsbad, California. *Id.* ¶¶ 5, 6; Strumlauf Aff. ¶ 3. |
| **How:** | The Complaint alleges that Starbuck's conduct was false and misleading because "Starbucks Lattes are underfilled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, and a Venti does not contain 20 fluid ounces." Compl. ¶ 41. The Complaint also alleges that Plaintiffs were induced to pay substantially more for Starbucks Lattes based on these false representations. *Id.* ¶¶ 5, 6, 42, 52, 56, 63, 72, 79, 87, 92. |

Thus, Defendant is wrong that Plaintiffs' allegations do not meet their Rule 9(b) burden.

## C.    Plaintiffs State A Claim Under The Unlawful Prong Of The UCL

Starbucks argues that Plaintiffs fail to state a claim under the unlawful prong of the UCL, because "Plaintiffs have failed to establish a violation of the CLRA or FAL." Def.'s Br. at 12. But as explained in Sections I.A-B, *supra*, Plaintiffs have stated claims under the CLRA and FAL. *See supra* Sections I.A-B. They therefore state a claim under the unlawful prong of the UCL as well. *See Seifi v. Mercedes-Benz USA, LLC*, 2013 WL 2285339, at *8 (N.D. Cal. May 23, 2013)

("Because Plaintiffs have stated a claim under the CLRA, MBUSA's motion to dismiss their UCL claim is DENIED.")

## II.  PLAINTIFFS STATE CLAIMS FOR BREACHES OF WARRANTY

### A.  <u>Plaintiffs State A Claim For Breach Of Express Warranty</u>

Starbucks argues that Plaintiffs' express warranty claim should be dismissed because they "fail to allege facts demonstrating that Starbucks' representations have caused them injury." Def's Br. at 13. That is wrong. Under California law, "to prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Tsan*, 2015 WL 6694104, at *7 (quoting *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (Cal. Ct. App. 2010)). Further, it is not necessary that a seller use formal words, such as "warrant" or "guarantee." Cal. Com. Code § 2313(2). The seller's intent is immaterial – it is unnecessary for a seller to "have a specific intention to make a warranty." *Id.*

Here, Plaintiffs allege that Starbucks expressly warranted that its Lattes "contained ´12 fl. oz.' for a Tall, ´16 fl. oz.' for a Grand, and ´20 fl. oz.' for a Venti," but that "these express warranties are false [because] Starbucks Lattes are underfilled." Compl. ¶¶ 40-41. They further allege that "[a]s a direct and proximate cause of Defendant's breach of express warranty, **Plaintiffs** and Class members **have been injured and harmed because**:  (a) they would not have purchased Starbucks Lattes on the same terms if the true facts were known concerning the Lattes' quantity; (b) they paid a price premium for Starbucks Lattes due to Defendant's promises that its Lattes contained "12 fl. oz.," "16 fl. oz.," and "20 fl. oz.," respectively; and (c) Starbucks Lattes did not have the characteristics, ingredients, uses, benefits, or quantities as promised." *Id.* ¶ 42 (emphasis added). These allegations state a claim for breach of express warranty under California Law.

Moreover, Starbucks' argument is particularly implausible when read in context with the allegations of the Complaint. Plaintiffs allege that "[w]hen Starbucks Lattes are created pursuant to the company's standardized recipe, the resulting beverages are underfilled." *Id.* ¶ 20. In other words, Starbucks Lattes are "uniformly underfilled." *See id.* ¶¶ 1, 21-30. Thus, every Starbucks

Latte that Plaintiffs purchased was necessarily underfilled. *See, e.g.*, *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 932 (N.D. Cal. 2014) ("Plaintiff's claims all allege that StarKist failed to comply with standards designed to prevent the level of fill in a tuna can from being misleading, and injury as a result.").

Starbucks also argues that "to the extent Plaintiffs argue that the Lattes breach some express warranty that a Grande Latte is sixteen ounces, because the contents should only be measured in their cooled, non-aerated state, Plaintiffs ignore the 'latte' portion of the so-called warranty." Def.'s Br. at 13. This argument also misses the mark. First, Plaintiffs allege that Starbucks warranted that its Grande Lattes contain sixteen **_fluid_** ounces, not sixteen ounces. *See, e.g.*, Compl. ¶ 41. Second, whether the milk foam added to the top of Starbucks Lattes counts towards the total fluid ounce count is an issue of fact that is inappropriate to determine on a motion to dismiss. *See, e.g.*, *Samet*, 2013 WL 6491143, at *7 ("[T]he Ninth Circuit has made it clear that such questions are issues of fact and inappropriate for resolution on a motion to dismiss."); *see also supra* Section I.A. Third, even assuming that the milk foam does count towards the fluid ounce count, Plaintiffs still allege that Starbucks Lattes are underfilled because "Starbucks' recipe for its Grande Latte calls to fill the serving cup up to '1/4 inch below cup rim.' Thus, ¼ inch of empty cup space exists above ¼ inch of milk foam, which sits atop the fluid Latte. Accordingly, per the recipe, the Grande service cup is just too small to hold a 16 fluid ounce latte." Compl. ¶ 23.

### B. Plaintiffs State A Claim For Breach Of The Implied Warranty Of Merchantability

Starbucks contends that Plaintiffs' breach of the implied warranty of merchantability claim fails because Plaintiffs fail to "allege facts demonstrating that the Lattes lack 'even the most basic degree of fitness for ordinary use.'" Def.'s Br. at 14. However, Starbucks' definition of the implied warranty of merchantability is overly narrow. In fact, Starbucks fails to address *any* of the additional criteria of merchantability set forth in Cal. Com. Code § 2314. The implied warranty of merchantability actually requires goods to "pass without objection in the trade under the contract description." Cal. Com. Code § 2314(2)(a). It also requires: "(b) in the case of fungible goods,

are of fair average quality within the description; … (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any." *Id.* § 2314. In applying this rule, California courts "reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 946 (C.D. Cal. 2012) (quoting *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (Cal. Ct. App. 2007)).

Here, Plaintiffs allege that Starbucks Lattes failed to meet the requirements of Cal. Com. Code § 2314(2)(a)-(f). They allege that "the goods were unfit for their intended and ordinary purpose because Starbucks Lattes are underfilled, in that a Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, and a Venti does not contain 20 fluid ounces." Compl. ¶ 46. Indeed, Plaintiffs allege that they "would not have purchased Starbucks Lattes on the same terms if the true facts were known concerning the Lattes' quantity." *Id.* ¶ 52. Thus, the fact that Starbucks Lattes are underfilled is a material difference. *Id.* Accordingly, Starbucks Lattes do not "pass without objection" in the trade under the contract description, are not "of fair average quality within the description," are not "adequately contained, packaged, and labeled," and do not "conform to the promises or affirmations of fact made on the container or label." Cal. Com. Code § 2314(2)(a)-(b), (e)-(f).

*Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917 (N.D. Cal. 2014) is instructive. There, the plaintiff alleged that "four of StarKist's canned tuna products [we]re underfilled," and brought a claim for breach of the implied warranty of merchantability, among other claims. *Id.* at 922. On a motion to dismiss, the Court held that "[t]he Complaint sufficiently sets forth a claim that the Products here were not adequately packaged, consistent with an implied promise that they were adequately filled with tuna. Thus a plausible claim for breach of implied warranty of merchantability is stated." *Id.* at 933 (citing Cal. Com. Code. § 2314(2)(a)).

Accordingly, Plaintiffs state a claim for breach of implied warranty of merchantability.

### III. THE ECONOMIC LOSS DOCTRINE DOES NOT BAR PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM

Starbucks argues that Plaintiffs' negligent misrepresentation claim should be dismissed because "[n]egligent misrepresentation claims based solely on economic injury fall under the economic loss doctrine." Def.'s Br. at 16. That is wrong. In fact, the economic loss "rule does not apply to Plaintiff's negligent misrepresentation claim [because] 'California law classifies negligent misrepresentation as a species of fraud … for which economic loss is recoverable.'" *Zakaria v. Gerber Products Co.*, 2015 WL 3827654, at *11 (C.D. Cal. June 18, 2015) (quoting *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th Cir. 2008)) (citing *Bily v. Arthur Young & Co.*, 834 P.2d 745, 768 (Cal. 1992); *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 275 & n.7 (Cal. 2004)); *see also Rejects Skate Magazine, Inc. v. Acutrack, Inc.*, 2006 WL 2458759, at *5 (N.D. Cal. Aug. 22, 2006) (holding that the economic loss doctrine does not apply to negligent misrepresentation claims).[4]

Plaintiffs plead all the required elements of a negligent misrepresentation claim under California law. In California, the elements of negligent misrepresentation are "(1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Ragland v. U.S. Bank Nat. Ass'n*, 209 Cal. App. 4th 182, 196 (Cal. Ct. App. 2012). Here, as detailed *supra*, Plaintiffs have plead all of these elements in accordance with Rule 9(b). *See supra* Argument § I.B. Plaintiffs therefore state a claim for negligent misrepresentation.

### IV. PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT

Starbucks argues that Plaintiffs fail to state a claim for unjust enrichment because "California courts have held that there is no separate cause of action for unjust enrichment." Def.'s

---

[4] The two cases cited by Starbucks holding that the economic loss doctrine is applicable to negligent misrepresentation should be disregarded by the Court because neither case is binding, and both cases interpret binding California Supreme Court precedent differently than the Ninth Circuit did in *Kalitta Air*. *See Minkler v. Apple*, 65 F. Supp. 3d 810 (N.D. Cal. 2014); *Shahinian v. Kimberly-Clark Corp.*, 2015 WL 4264638 (C.D. Cal. July 10, 2015).

Br. at 14-15.  But Starbucks ignores binding Ninth Circuit precedent to the contrary.  In *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015), the Ninth Circuit recently explained that "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'"  *Id.* at 762 (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (Cal. Ct. App. 2014)).  There, the Ninth Circuit overturned the district court's grant of a motion to dismiss an unjust enrichment claim where the plaintiff alleged "that she was entitled to relief under a 'quasi-contract' cause of action because Hain had 'enticed' plaintiffs to purchase their products through 'false and misleading' labeling, and that Hain was 'unjustly enriched' as a result."  *Astiana*, 783 F.3d at 762.[5]  Here, likewise, Plaintiffs allege that Starbucks was unjustly enriched because it retained "non-gratuitous benefits conferred on it by Plaintiffs and Class members" as a result of it having "misrepresented that Starbucks Lattes contained '12 fl. oz.' for a Tall, '16 fl. oz.' for a Grande, and '20 fl. oz.' for a Venti."  Compl. ¶¶ 56-57.

Starbucks also argues that "even if unjust enrichment were a cognizable cause of action, it is not allowed where, as here, it is duplicative of other statutory and common law claims."  Def.'s Br. at 15.  But *Astiana* rejected this argument as well.  Instead, *Astiana* cited to Federal Rule of Civil Procedure 8(d)(2), which allows for alternate pleading, and held that "[t]o the extent the district court concluded that the cause of action was nonsensical because it was duplicative of or superfluous to Astiana's other claims, this is not grounds for dismissal."  *Astiana*, 783 F.3d at 762.

Thus, under *Astiana*, Plaintiffs' unjust enrichment claim should be construed as a claim for quasi-contract seeking restitution, and should be permitted to proceed.  *See, e.g.*, *Perez v. Monster Inc.*, 2016 WL 234370, at *8 (N.D. Cal. Jan. 20, 2016) ("The Ninth Circuit, in *Astiana*, allowed a court to construe an unjust enrichment cause of action as a quasi-contract cause of action, even if the plaintiff did not so identify.  Mr. Perez's quasi-contract theory of liability is basically

_____

[5] This Court's decisions in *Yordy v. Plimus, Inc.*, 2012 WL 2196128 (N.D. Cal. June 14, 2012) and *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008 (N.D. Cal. 2011) predate *Astiana*.  Thus, Plaintiffs respectfully submit that these decisions have been abrogated by *Astiana*.

predicated on the alleged warranty. Accordingly, Mr. Perez's quasi-contract claim survives just as the express and implied warranty claims survive.").

## V.    PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS

Starbucks argues that "Plaintiffs lack standing because they fail to allege that the Lattes they purchased were underfilled." Def.'s Br. at 18. That is wrong. First, Plaintiffs allege throughout the Complaint that the Lattes they purchased were underfilled. *See* Compl. ¶ 42 ("As a direct and proximate cause of Defendant's breach of express warranty, **Plaintiffs** and Class members **have been injured and harmed because**: (a) they would not have purchased Starbucks Lattes on the same terms if the true facts were known concerning the Lattes' quantity; (b) they paid a price premium for Starbucks Lattes due to Defendant's promises that its Lattes contained '12 fl. oz.,' '16 fl. oz.,' and '20 fl. oz.,' respectively; and (c) Starbucks Lattes did not have the characteristics, ingredients, uses, benefits, or quantities as promised.") (emphasis added); *see also id.* ¶¶ 52, 56, 63, 72, 79, 87, 92. These allegations are sufficient to confer standing. *See, e.g.*, *Lanovaz*, 2013 WL 675929, at *6 ("The alleged purchase of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact …"). Second, Plaintiffs allege that "[w]hen Starbucks Lattes are created pursuant to the company's standardized recipe, the resulting beverages are underfilled." *Id.* ¶ 20. In other words, Starbucks Lattes are "uniformly underfilled." *See id.* ¶¶ 1, 21-30. Thus, every Starbucks Latte that Plaintiffs purchased was necessarily underfilled. *See, e.g.*, *Hendricks*, 30 F. Supp. 3d at 932 ("Plaintiff's claims all allege that StarKist failed to comply with standards designed to prevent the level of fill in a tuna can from behind misleading, and injury as a result.").

The cases cited by Starbucks in support are inapposite. In *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964 (N.D. Cal. 2014), the court held that the plaintiff "lack[ed] standing to seek prospective *injunctive relief* as to the products at issue." *Id.* at 970 (emphasis added). The court did not hold that the plaintiff lacked standing to bring her claims for damages, however. And in *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962 (C.D. Cal. 2014), the court held that the plaintiffs lacked standing where they did "not allege[] an actual economic injury because

they [had] not had any negative experience with the PCA and ha[d] not identified any false representations about the automatic pre-collision braking feature made by Toyota." *Id.* at 972. Here, by contrast, Plaintiffs allege economic injury, *see* Compl. ¶¶ 42, 52, 56, 63, 72, 79, 87, 92, and allege that Starbucks falsely represented "that its Lattes contain '12 fl. oz.' for a Tall, '16 fl. oz.' for a Grande, and '20 fl. oz.' for a Venti." *Id.* ¶ 1.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss should be denied. Alternatively, if the motion is granted in any respect, Plaintiffs should be given leave to amend. *See, e.g., Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) ("Ordinarily, leave to amend should be freely given in the absence of prejudice to the opposing party…. In the absence of such a reason, denial of leave to amend is an abuse of discretion and reversible."); *Seifi*, 2013 WL 2285339, at *3 ("Unless amendment would be futile, leave to amend should be freely granted.").

Dated: April 25, 2016

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: ___/s/ *L. Timothy Fisher*___
                 L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
           jluster@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

**MILITARY JUSTICE ATTORNEYS, PLLC**
Gerald Healy (*pro hac vice*)
219 Scott Street, PMB 315
Beaufort, SC 29902
Telephone: (844) 334-5459
Facsimile: (843) 645-6530
E-Mail: gerry@militaryjusticeattorneys.com

**MILITARY JUSTICE ATTORNEYS, PLLC**
John Hafemann (State Bar No. 238758)
21 W. Park Avenue
Savannah, GA 31401
Telephone: (844) 334-5459
Facsimile: (843) 645-6530
E-Mail: john@militaryjusticeattorneys.com

*Attorneys for Plaintiffs*