1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2 |   Including Professional Corporations
ROBERT J. GUITE, Cal. Bar No. 244590
3 | Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
4 | Telephone:   415.434.9100
Facsimile:    415.434.3947
5 | rguite@sheppardmullin.com

6 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
7 |   Including Professional Corporations
FRED R. PUGLISI, Cal. Bar No. 121822
8 | SASCHA HENRY, Cal. Bar No. 191914
ROBIN A. ACHEN, Cal. Bar No. 287033
9 | 333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
10 | Telephone:   213.620.1780
Facsimile:    213.620.1398
11 | fpuglisi@sheppardmullin.com
shenry@sheppardmullin.com
12 | rachen@sheppardmullin.com

13 | Attorneys for Defendant
Starbucks Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| SIERA STRUMLAUF and BENJAMIN ROBLES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant. | Case No. 3:16-cv-1306-TEH<br><br>**DEFENDANT STARBUCKS CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Date:   June 1, 2016<br>Time:   3:00 p.m.<br>Courtroom:   2, 17th Floor<br><br>Action Filed:   March 16, 2016<br>Trial Date:   None Set |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ..................................................................................................................... 2

    A. Counts IV, V, VI, and VIII Should Be Dismissed Because Plaintiffs Fail to State Claims for Violations of State Consumer Protection Laws and Common Law Fraud. ................................................................................................. 2

        1. Plaintiffs Fail to Demonstrate That a Reasonable Consumer Would Be Deceived by the Challenged Statements. ............................... 2

        2. Plaintiffs' Allegations Fail to Satisfy Rule 9(b). .................................... 6

        3. Plaintiffs Also Fail to State a Claim Under the Unlawful Prong of the UCL. ................................................................................................ 7

    B. Count I for Breach of Express Warranty Should Be Dismissed Because Plaintiffs Have Failed to Allege An Injury. ............................................................... 8

    C. Count II for Breach of Implied Warranty Should Be Dismissed Because Plaintiffs Have Failed to Allege the Lattes Breach An Implied Warranty ................ 9

    D. Count III for Unjust Enrichment Should Be Dismissed as it is Not a Valid Cause of Action. ..................................................................................................... 11

    E. Count VII for Negligent Misrepresentation Should Be Dismissed Under the Economic Loss Doctrine. ....................................................................................... 12

    F. Plaintiffs Have Not Established That They Have Standing .................................. 14

        1. Plaintiffs Have Not Shown That They Suffered Injury. ...................... 14

        2. Plaintiffs Concede That They Lack Standing To Pursue Injunctive Relief. ................................................................................... 15

III. CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

Cases

*Astiana v. Hain Celestial Grp., Inc.*
  783 F.3d 753 (9th Cir. 2015)......................................................................................................11

*Astrium S.A.S. v. TRW, Inc.*
  197 F. App'x 575 (9th Cir. 2006)................................................................................................12

*Birdsong v. Apple, Inc.*
  590 F. 3d 955 (9th Cir. 2009).....................................................................................................10

*Brod v. Sioux Honey Ass'n Coop.*
  927 F. Supp. 2d 811 (N.D. Cal. 2013) ...................................................................................6, 10

*Carrea v. Dreyer's Grand Ice Cream, Inc.*
  475 F. App'x 113 (9th Cir. 2012)..................................................................................................3

*Ebner v. Fresh, Inc.*
  __ F.3d __, 2016 WL 1056088 (9th Cir. Mar. 17, 2016).........................................................2, 3

*Edmunson v. Procter & Gamble Co.*
  2011 WL 1897625 (S.D. Cal. May 17, 2011) ..............................................................................7

*Gerlinger v. Amazon.com, Inc.*
  311 F. Supp. 2d 838 (N.D. Cal. 2004) .......................................................................................11

*Gustavson v. Wrigley Sales Co.*
  961 F. Supp. 2d 1100 (N.D. Cal. 2013) .......................................................................................3

*Hendricks v. StarKist Co.*
  30 F. Supp. 3d 917, 932 (N.D. Cal. 2014) .............................................................................9, 10

*Ivie v. Kraft Foods Global, Inc.*
  961 F. Supp. 2d 1033 (N.D. Cal. 2013) .......................................................................................6

*Kalitta Air, L.L.C. v. Central Texas Airborne Systems, Inc.*
  315 Fed. Appx. 603 (9th Cir. 2008) ...........................................................................................14

*Kearns v. Ford Motor Co.*
  567 F.3d 1120 (9th Cir. 2009)......................................................................................................6

*Keegan v. Am. Honda Motor Co*
  838 F. Supp. 2d 929 (C.D. Cal. 2012).....................................................................................9, 10

*Khasin v. The Hershey Company*
  2012 WL 5471153 (N.D. Cal., Nov. 9, 2012).............................................................................3

*Lanovaz v. Twinings*
    2013 WL 675929 (N.D. Cal. Feb. 25, 2013) .................................................................3, 6

*Lavie v. Procter & Gamble Co.*
    105 Cal. App. 4th 496 (2003) ..........................................................................................2, 4

*Lee v. Toyota Motor Sales, U.S.A., Inc.*
    992 F. Supp. 2d 962 (C.D. Cal. 2014) ................................................................................15

*Leonhart v. Nature's Path Foods, Inc.*
    2014 WL 6657809 (N.D. Cal. Nov. 21, 2014) .....................................................................8

*Miller v. Ghirardelli Chocolate Co.*
    912 F. Supp. 2d 861 (N.D. Cal. 2012) .................................................................................3

*Minkler v. Apple, Inc.*
    65 F. Supp. 3d 810, 820 (N.D. Cal. 2014) ...................................................................12, 14

*Mocek v. Alfa Leisure, Inc.*
    114 Cal. App. 4th 402 (2003) ..............................................................................................9

*Oracle USA, Inc. v. XL Global Servs.*
    2009 WL 2084154 (N.D. Cal. July 13, 2009) ....................................................................12

*Phillips v. P.F. Chang's China Bistro, Inc.*
    2015 WL 4694049 (N.D. Cal. Aug. 6, 2015) .....................................................................11

*Rejects Skate Magazine, Inc. v. Acutrack, Inc.*
    2006 WL 2458759 (N.D. Cal. Aug. 22, 2006) ...................................................................14

*Robinson Helicopter Co., Inc. v. Dana Corp.*
    34 Cal. 4th 979 (2004) ..........................................................................................12, 13, 14

*Shahinian v. Kimberly-Clark Corp.*
    2015 WL 4264638 (C.D. Cal. July 10, 2015) ..............................................................12, 14

*Smith v. Allmax Nutrition, Inc.*
    2015 WL 9434768 (E.D. Cal. Dec. 23, 2015) ....................................................................11

*Stuart v. Cadbury Adams USA, LLC*
    458 F. App'x 689 (9th Cir. 2011) .........................................................................................3

*Tsan v. Seventh Generation, Inc.*
    2015 WL 6694104 (N.D. Cal. 2015) ................................................................................3, 8

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*
    660 F. Supp. 2d 1163 (C.D. Cal. 2009) ........................................................................12, 13

*Vavak v. Abbott Labs., Inc.*
    2011 WL 10550065 (C.D. Cal. June 17, 2011) ..................................................................12

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003)......................................................................................................6

*Viggiano v. Hansen Natural Corp.*
    944 F. Supp. 2d 877 (C.D. Cal. 2013).....................................................................................8, 11

*Vigil v. General Nutrition Corp.*
    2015 WL 2338982 (S.D. Cal. May 13, 2015) .............................................................................8

*Williams v. Beechnut Nutrition Corp.*
    185 Cal. App. 3d 135 (1986) .......................................................................................................8

*Zakaria v. Gerber Prods. Co.*
    2015 WL 3827654 (C.D. Cal. June 18, 2015)...........................................................................14

<u>Statutes</u>

California Commercial Code § 2314..................................................................................................9

California Commercial Code § 2314(2)...........................................................................................10

California Commercial Code § 2314(2)(e) ......................................................................................10

California Commercial Code § 2314(2)(f).......................................................................................10

California Commercial Code § 2607..................................................................................................7

<u>Other Authorities</u>

21 C.F.R. § 130.14 ...........................................................................................................................10

21 C.F.R. § 161.190(c)(4) ................................................................................................................10

Federal Rules of Civil Procedure Rule 9(b) ..................................................................................2, 6

# I. INTRODUCTION

Starbucks sells a wide variety of hand-crafted, made-to-order, beverages, including the hot lattes at issue in Plaintiffs' Complaint (the "Lattes"). Starbucks Lattes, like all lattes, are made of at least three components: (1) espresso; (2) steamed, aerated milk; and (3) milk foam. Plaintiffs concede those components are what make the beverage a Latte. Starbucks Lattes may further be customized in numerous ways at a customer's request, by, for example, adding flavored syrups, sauces, sweeteners, or by varying the type, amount or temperature of the milk.[1] Once the barista finishes making a Latte to the customer's specifications, the beverage is handed to the customer and is intended to be immediately consumed.

In an attempt to create a dispute, Plaintiffs ask this Court to ignore the reasonable consumer standard that applies to their statutory claims and, in so doing, present a number of convoluted and contradictory theories. For example, on the one hand, Plaintiffs acknowledge that steamed milk and milk foam are integral parts of a Latte, yet, on the other hand, they argue that one of the fundamental components of a Latte – the milk foam – should not count towards the size of the beverage.

Similarly, Plaintiffs present statistics that are not only flawed, but are internally inconsistent. By way of example, they allege a Starbucks Grande Latte contains only 14 fluid ounces of liquid instead of 16 fluid ounces as advertised, but then proceed to argue that Grande Lattes are under filled by 25%, which is more than double the 12% variance between the 14 and 16 ounces they figured. Their allegations simply do not add up. Moreover, Plaintiffs' reliance on the weights and measures community's standards in suggesting this Court ignore the foam component of a Latte and instead measure the beverage after it has settled and cooled just proves Starbucks' point: Plaintiffs fail to allege facts showing it is probable that a significant portion of reasonable consumers have been misled when Starbucks serves a made-to-order hot Latte with *aerated* milk and milk *foam*. Plaintiffs thus fail to state a claim against Starbucks for violation of the CLRA, UCL, or FAL.

---

[1] For purposes of this Motion, any reference to the term "milk" includes non-dairy options such as soy and coconut milk available at Starbucks.

Plaintiffs concede that they lack standing to pursue claims for injunctive relief and fail to substantively address their failure to adequately allege standing for their other claims. Although Plaintiffs have put forth a variety of theories regarding how Starbucks' Lattes are purportedly underfilled, they *never* allege that their own Lattes were actually underfilled. Instead, Plaintiffs rely on generalizations, claiming that, based on their convoluted and contradictory theories, "every" Latte is "necessarily" underfilled. But this is not sufficient to allege that Plaintiffs were actually injured by their alleged purchases of Lattes. As Plaintiffs are unwilling (or unable) to allege that their Lattes were, in fact, underfilled, they do not have standing to bring these claims.

Finally, Plaintiffs' Opposition failed to address the additional pleading defects identified in the Motion. Plaintiffs have failed to satisfy Rule 9(b), failed to specifically allege fraud, and failed to state claims for breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, and negligent misrepresentation. For all of these reasons, Plaintiffs' claims fail and the Complaint should be dismissed in its entirety.

## II. ARGUMENT

### A. Counts IV, V, VI, and VIII Should Be Dismissed Because Plaintiffs Fail to State Claims for Violations of State Consumer Protection Laws and Common Law Fraud.

#### 1. Plaintiffs Fail to Demonstrate That a Reasonable Consumer Would Be Deceived by the Challenged Statements.

Plaintiffs acknowledge that "[t]o state a claim under the UCL, FAL, or CLRA, Plaintiffs must allege that Starbucks' representations are likely to deceive a reasonable consumer." (Opp. 5:5-10). Plaintiffs also admit that "[t]he term 'likely' indicates that deception must be probable, not just possible.'" (Opp. 5:7-9.) Plaintiffs do not contest that they must plausibly plead facts that show "it is *probable* that a *significant* portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the statement in question. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003) (emphasis added).

Additionally, it is well settled that courts in this Circuit may dismiss a false advertising claim where no reasonable consumer, using common sense, would be misled by the statement at issue. *See, e.g.*, *Ebner v. Fresh, Inc.*, __ F.3d __, 2016 WL 1056088 (9th Cir. Mar. 17, 2016);

*Carrea v. Dreyer's Grand Ice Cream, Inc.,* 475 F. App'x 113, 115 (9th Cir. 2012); *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011).

Plaintiffs attempt to distinguish the cases cited by Starbucks on the ground that the factual circumstances in those cases are not identical to the facts here, but Plaintiffs miss the point. The cases cited by Starbucks are instructive because they articulate controlling principles applicable to this situation regardless of any factual variances in those particular cases. *Ebner*, for example, provides that a court may "draw on its judicial experience and common sense" when deciding a motion to dismiss. *Ebner*, 2016 WL 1056088 at *2. Plaintiffs ignore that the Ninth Circuit has recognized that determining whether a complaint states a plausible claim for relief is "a *context-specific* task that requires the reviewing court to draw on its *judicial experience* and *common sense*." *Id*. at *6 (emphasis added).

Thus, just as the "reasonable consumer understands the general mechanics of [the lip product] dispenser tubes and further understands that some product may be left in the tube," in *Ebner,* so, too, does the reasonable consumer here understand that a hot Latte from Starbucks will include steamed, aerated milk and milk foam that will take up some of the space in the cup.

Unable to dispute that district courts may draw on their judicial experience and common sense at the motion to dismiss stage, (Opp. 10:16-11:16), Plaintiffs attempt to apply a "patently unreasonable" standard, not found in the cases upon which they rely and inconsistent with controlling authorities.[2] Rather, it is Plaintiffs' burden to plausibly plead "it is *probable* that a *significant* portion of the general consuming public or of targeted consumers, acting reasonably in

---

[2] Plaintiffs cite a few other cases in which the district courts denied a motion to dismiss on plausibility grounds. Those cases do not do not apply a "patently unreasonable" standard. *See e.g., Tsan v. Seventh Generation,Inc.,* 2015 WL 6694104 (N.D. Cal. 2015) (finding that plaintiffs had plausibly alleged product was falsely advertised as "natural" where it contained ingredients such as benzisothiazolinone); *Lanovaz v. Twinings*, 2013 WL 675929, at *6 (N.D. Cal. Feb. 25, 2013) (finding plaintiff had plausibly alleged product was falsely advertised as being a "natural source of antioxidants" where it "did not meet the minimum requirements for listing a product as containing antioxidants"); *Khasin v. The Hershey Company*, 2012 WL 5471153 (N.D. Cal., Nov. 9, 2012) (finding that plaintiff had plausibly alleged that nutrient content claims on products were misleading where they allegedly did not comply with pertinent federal regulations); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1130 (N.D. Cal. 2013) (same); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 874 (N.D. Cal. 2012) (finding that plaintiff had plausibly alleged product was falsely advertised where the label of the "white baking chips" package contained the word "chocolate" but the product did not contain chocolate).

the circumstances, could be misled" by the statement in question. *Lavie*, 105 Cal. App. 4th at 506-07 (emphasis added). Plaintiffs have not done so here, where they ask the Court to ignore the fundamental property of a Latte – that it contains steamed, aerated milk and milk foam.

It is undisputed that a Latte is "created by mixing steamed milk and espresso, which is then topped with a thin layer of milk foam." (Compl., ¶ 12.) Foam is thus an integral component of a Latte. It is also undisputed that Starbucks' Lattes are customizable, and made-to-order by individual baristas. (*See* Compl., ¶¶ 15, 18-19.) Starbucks Lattes are not mass-produced, manufactured, distributed in bulk, or made for storage. Rather, they are highly-individualized, hand-crafted beverages intended for consumption immediately after purchase. Plaintiffs do not contest their own definition of a "latte" in the Opposition. A reasonable consumer ordering a handcrafted, made-to-order Latte would thus expect it to contain all three core ingredients that necessarily make it a Latte.

In their Opposition, Plaintiffs merely reiterate and restate the confused and contradictory allegations in their Complaint. They fail to clarify their positions and fail to demonstrate that a reasonable consumer would be misled by the representations at issue. For example, Plaintiffs argue that they are "*not* alleging that they were deceived by the inclusion of steamed milk and milk foam in a latte." (Opp. 8:4-5.) But Plaintiffs continue to reiterate their claim that foam does not count toward the volume of a beverage. (*See* Opp. 8:9-11). Since, as Plaintiffs admit, steamed, aerated milk and milk foam are necessary components of a Latte, how could a reasonable consumer not reasonably expect the foam portion of the beverage? Plaintiffs do not address this discrepancy.

Additionally, Plaintiffs repeat their sensationalized claim that Starbucks Lattes are underfilled by 25%, but that claim is illogical. Plaintiffs acknowledge that in order for a 16 fluid ounce Latte to be underfilled by 25%, it would need to contain only 12 fluid ounces. (Opp. 9:6-8.) Plaintiffs claim in their Opposition that "that is exactly what Plaintiffs have alleged," and cite to the Merriam Webster definition of "beverage" in support. (Opp. 9:8.) Plaintiffs ignore their own internally inconsistent allegations. Plaintiffs have alleged that a Grande Latte is made of approximately 12 fluid ounces of (cold) milk, *and* 2 fluid ounces of espresso. (Compl., ¶ 22.)

Without accounting for any added flavoring, foam, steam, or customizations, those add up to 14 fluid ounces. If a Grande Latte was, in fact, only 14 fluid ounces, and there were, in fact, 2 fluid ounces of empty space in a 16 ounce Latte, it would be 12.5% underfilled, not 25% underfilled. While Starbucks disagrees with these "calculations" and entertains them only for argument's sake, Plaintiffs' math is flawed. Nor does Plaintiffs' citation to a dictionary definition providing that a "beverage" is a "drinkable liquid" correct Plaintiffs' confusing arguments. Given that their claims focus on allegedly underfilled beverages, Plaintiffs should be able to clearly quantify the beverage volumes at issue. They are unable to do so however and, instead, when challenged, obfuscate the conversation towards another topic like Webster's definition of a "drinkable liquid." The lack of clarity in their conclusions just highlights the flawed logic of Plaintiff's claims.

Plaintiffs also argue that the "fill to" line on pitchers used to measure the milk during the preparation of Starbucks' Lattes is "set too low" and that the existence of a standardized recipe necessarily means that all Lattes are underfilled. Plaintiffs leap to the conclusion that these lines must relate to milk, must be for Lattes and must correspond to Starbucks' hot cup beverage sizes. Even taking those conclusions as true for purposes of this Motion, Plaintiffs ignore that, to prepare a Latte, _cold_ milk is poured into the pitchers before it is steamed and aerated. Plaintiffs' counsel "measured" cold milk to the "fill to" lines to conclude that Starbucks is underfilling Lattes, but this approach ignores that milk expands once it is steamed. To get around that omission, they simply refer to the volume of settled, cooled Lattes. Meanwhile they admit that a Latte – by definition – includes steamed, aerated milk and milk foam. No reasonable consumer would expect milk to be measured in a state other than the one in which it is served.

Plaintiffs also ignore the common sense reality that there will inevitably be variations with handcrafted, made-to-order Lattes. Though each individual barista is guided by a recipe, each individual barista has autonomy to create each individual beverage specific to a customer's preference. A reasonable consumer understands that variations are inevitable. Plaintiffs' repetition of the allegations in their Complaint does not negate these common-sense truths.

Plaintiffs also doggedly rely on their assertion that the opinion of the weights and measures community regarding the measurement of volume is pertinent to a *reasonable consumer's*

expectations, claiming that expert opinion "simply reinforces" their contention that a reasonable consumer would share that opinion. (Opp. 8:9-11.) Yet Plaintiffs never articulate a plausible explanation of why a consumer, who Plaintiffs admit would expect foam and steamed milk to be part of a Latte, would not consider foam part of the beverage. Plaintiffs also argue that it would "defy common sense" to expect a reasonable consumer to have "detailed knowledge," presumably of the weights and measures community's opinion. (Opp. 8:11-13.)

Starbucks has never contended that the reasonable consumer needs to know what the weights and measures community thinks. To the contrary, the weights and measures community's standards are irrelevant here because the standards do not reflect a reasonable consumer's expectation of what a Latte contains. It is uncontested that the "reasonable consumer" is an "average" consumer, not one who bases his or her expectation on methods employed by specific, scientific sub-communities. *See, e.g.*, *Brod v. Sioux Honey Ass'n Coop.*, 927 F. Supp. 2d 811, 830 (N.D. Cal. 2013). Plaintiffs' citations to *Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1046 (N.D. Cal. 2013) and *Lanovaz v. Twinings*, 2013 WL 675929, for the proposition that a plaintiff need not know of particular laws or regulations in order to allege a false advertising claim are thus inapposite.

Because Plaintiffs fail to plausibly explain how any reasonable consumer would be deceived by representations regarding Lattes, Plaintiffs' claims fail.

2. <u>Plaintiffs' Allegations Fail to Satisfy Rule 9(b).</u>

Plaintiffs concede that, in order to comply with Rule 9(b), they must allege, in detail, "the who, what, when, where, and how" of the alleged fraudulent conduct," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-26 (9th Cir. 2009), and "set forth what is false or misleading about a statement, and why it is false," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Though Plaintiffs recite allegations from their Complaint at length in an attempt to demonstrate that they satisfy Rule 9(b), Plaintiffs fail to address the defects identified by Starbucks' Motion.

Neither Plaintiff Strumlauf nor Plaintiff Robles alleges that she or he opened the lid of any Latte purchased at Starbucks and observed that it was underfilled. Though Plaintiffs argue their

1 Lattes were underfilled, they do not specify *how* they were underfilled. Are Plaintiffs alleging that their Lattes were underfilled because there was a quarter inch of room at the top? Or, are they alleging their Lattes were underfilled because they were (unreasonably) not considering foam part of the Latte? Or, do they contend that their Grande Lattes were 12 ounces (i.e., 25% underfilled)? Plaintiffs never specify. Their repeated allegations regarding the investigation conducted by their counsel do not suffice to allege how *Plaintiffs* were misled by the alleged representations.

Plaintiffs also fail to address their failure to allege that they actually viewed any menu board or other representation stating that a Grande Latte was 16 fluid ounces. While Plaintiffs generally allege that the representation is made on Starbucks' menu boards, there is no allegation demonstrating that either Plaintiff ever viewed such a representation. (*See* Compl., ¶¶ 5-6.) Plaintiffs' Opposition neither addresses nor cures this defect.

Additionally, Plaintiffs fail to address when Plaintiff Strumlauf purchased allegedly underfilled Lattes. Plaintiff Strumlauf purports to be a repeat customer of Starbucks, but fails to allege when she started purchasing Starbucks Lattes, how long she has been purchasing them, or how many Lattes she purchased. (Compl., ¶ 5.) Plaintiffs' Opposition asserts that Plaintiffs' representation that she purchased Lattes during "the relevant class period" is sufficient. (Opp. 12:7-8.) Plaintiff Strumlauf's failure to allege her claims with the requisite particularity warrants dismissal. *See Edmunson v. Procter & Gamble Co.*, 2011 WL 1897625, at *5 (S.D. Cal. May 17, 2011) (dismissing claims where plaintiff failed to allege "when during the class period, where, how many, or how many times he purchased [the product] or was exposed to the alleged misrepresentations").

### 3. Plaintiffs Also Fail to State a Claim Under the Unlawful Prong of the UCL.

As articulated in more detail in the Motion, Plaintiffs' unlawful claim is predicated on alleged violations of the CLRA, FAL, and California Commercial Code section 2607. (Compl., ¶ 69.) As demonstrated above, Plaintiffs failed to establish a violation of the CLRA, FAL, or any other UCL claims. The Complaint does not articulate how Commercial Code section 2607 applies here, or how Starbucks purportedly violated that section, and Plaintiffs' Opposition does not even address this point. Accordingly, Plaintiffs' unlawful claim fails as Plaintiffs have not alleged a

violation of an underlying law.

## B. Count I for Breach of Express Warranty Should Be Dismissed Because Plaintiffs Have Failed to Allege An Injury.

"To prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) *the breach caused injury to the plaintiff.*" *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893-95 (C.D. Cal. 2013) (emphasis added) (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)). Plaintiffs' Complaint fails to state a claim for breach of express warranty because Plaintiffs fail to allege that the Lattes they actually purchased were underfilled.

Rather than directly address this failure, Plaintiffs' Opposition first seems to argue that Plaintiffs are not required to allege injury in order to plead a claim for breach of express warranty. This is absurd. Ninth Circuit and California case law are clear that a required element of breach of express warranty is that the breach of warranty caused plaintiff an injury. *See Williams*, 185 Cal. App. 3d at 142; *Viggiano*, 944 F. Supp. 2d at 893; *Leonhart v. Nature's Path Foods, Inc.*, 2014 WL 6657809, \*8 (N.D. Cal. Nov. 21, 2014); *Vigil v. General Nutrition Corp.*, 2015 WL 2338982, \*16 (S.D. Cal. May 13, 2015). Plaintiffs do not cite any case law holding that a plaintiff is excused from pleading an injury in order to state a claim for breach of warranty. Instead, Plaintiffs merely cite a case that did not include the injury requirement in its recitation of the elements. (*See* Opp. 14:5-10.) *Tsan*, 2015 WL 6694104, neither considered an argument that the plaintiff failed to state a claim for breach of express warranty due to failure to allege an injury nor held that injury is not a requirement.

Plaintiffs resort to repeating their allegations that they have suffered an injury because (1) they would not have purchased the Lattes if they had known of the purported "true facts" regarding their quality, (2) they paid a price premium for the Lattes, and (3) the Lattes did not have the "characteristics, ingredients, uses, benefits or quantities as promised." (Opp. 14:14-23.) Plaintiffs also reiterate their other arguments regarding the fill of Starbucks Lattes. (Opp. p. 15:5-18.) However, repeating these allegations does not address Plaintiffs' failure to allege that *they*

were injured by *their purchase* of Starbucks' Lattes. The various theories put forth based on Plaintiffs' counsel's investigation does not cure this fundamental defect.

Finally, Plaintiffs' reliance on *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 932 (N.D. Cal. 2014) is unavailing. Plaintiffs quote *Hendricks* for a statement that the "Plaintiff's claims all allege that StarKist failed to comply with standards designed to prevent the level of fill in a tuna can from being misleading, and injury as a result." *Id.* As an initial matter, this quotation merely recites the court's observations regarding the allegations made in the *Hendricks* case, where federal regulations established a standard of fill and labeling. Those allegations have no bearing on this case. Additionally, the plaintiff in *Hendricks*, unlike Plaintiffs here, actually alleged that the tuna cans *he* purchased were "underfilled and substantially underweight" as confirmed by an independent laboratory. *See Hendricks*, 30 F. Supp. 3d at 922. Plaintiffs have failed (and apparently refuse) to make such an allegation here.

Absent an allegation that the Lattes purchased by Plaintiffs were underfilled, Plaintiffs have failed to allege that they were actually injured by the purported breach of warranty.

### C. Count II for Breach of Implied Warranty Should Be Dismissed Because Plaintiffs Have Failed to Allege the Lattes Breach An Implied Warranty.

Plaintiffs argue that they adequately alleged breach of the implied warranty of merchantability because Starbucks applies too narrow a definition of the implied warranty of merchantability. (Opp., 15:21-16:27). However, the definition of an implied warranty of merchantability is narrow as a matter of law as Commercial Code section 2314 warrants only the "most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).

Though Plaintiffs cite *Keegan v. Am. Honda Motor Co*, 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012) to argue that the implied warranty is broader, *Keegan* utilizes the same narrow reading applied in *Mocek*. The court in *Keegan*, like the court in *Mocek*, acknowledged the various prongs of the implied warranty statute.[3] *Keegan* then held that the implied warranty of merchantability

---

[3] Though *Keegan* actually interpreted the Song-Beverly Warranty Statute, its definition of the implied warranty is the same as the definition provided by the Commercial Code.

"provides for a minimum level of quality," and concluded that "a plaintiff claiming breach of an implied warranty of merchantability must show that the product 'did not possess even the most basic degree of fitness for ordinary use.'" *Id.*

Plaintiffs ignore that the Ninth Circuit and district courts within it have applied this same narrow definition. *Birdsong v. Apple, Inc.*, 590 F. 3d 955, 958 (9th Cir. 2009); *Brod*, 927 F. Supp. 2d at 831-32 (dismissing claim as to honey where plaintiff did not allege honey was defective or "noncomestible").

Plaintiffs' reliance on *Hendricks,* 30 F. Supp. 3d 917, is flawed for two reasons. First, the district court in *Hendricks* did not address the authority presented by Starbucks. *Hendricks*, 30 F. Supp. 3d at 933; *cf* Motion, p. 13:28-14:15 (*citing, e.g., Mocek*, 114 Cal. App. 4th at 406, *Brod*, 927 F. Supp. 2d at 831-32, and *Viggiano*, 944 F. Supp. 2d at 896-97). Second, in *Hendricks*, the product and the legal contentions about it were different than what Plaintiffs contend here. In *Hendricks,* the plaintiff contended that the defendant failed to comply with federal standards for the fill and labeling of canned tuna, a mass-produced, mass-packaged product. *Hendricks*, 30 F. Supp. 3d at 933 (citing 21 U.S.C. § 343(d); 58 FR 64123-01; 21 C.F.R. §§ 161.190(c)(4), 130.14.) The district court concluded that a breach of the implied warranty of merchantability had been alleged because the plaintiffs had alleged violations of subsections (e) and (f) of Section 2314(2) of the California Commercial Code.[4] The district court stated: "The implied warranty of merchantability actually requires goods to be 'adequately contained, packaged, and labeled as the agreement may require; and … [to] conform to the promises or affirmations of fact made on the container or label." *Hendricks*, 30 F. Supp. at 933. Here, Plaintiffs' Complaint does not allege that Lattes are a "contained, packaged, and labeled" good or violations of subsections (e) and (f).

---

[4] Subsection (2) of Section 2314 of the California Commercial Code provides:

"Goods to be merchantable must be at least such as
(a) Pass without objection in the trade under the contract description; and
(b) In the case of fungible goods, are of fair average quality within the description; and
(c) Are fit for the ordinary purposes for which such goods are used; and
(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e) Are adequately contained, packaged, and labeled as the agreement may require; and
(f) Conform to the promises or affirmations of fact made on the container or label if any."

1  Rather, Plaintiffs allege violations of only subsections (a), (b) and (c). (Complaint, ¶ 46 ("they
2  could not pass without objection in the trade under the contract description, the goods were not of
3  fair average quality within the description, and the goods were unfit for their intended and
4  ordinary purpose…").)

Just as the district court in *Viggiano*, 944 F. Supp. 2d at 896-97, dismissed the plaintiff's implied warranty of merchantability claim because the plaintiff did not allege that the beverage was "not drinkable, that it was contaminated or contained foreign objects, etc.," so, too, should this Court dismiss Plaintiffs' implied warranty claim.

### D. Count III for Unjust Enrichment Should Be Dismissed as it is Not a Valid Cause of Action.

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Unable to dispute the authority that holds that there is no standalone cause of action for unjust enrichment, Plaintiffs now argue that the Court should construe their claim as a quasi-contract claim under *Astiana*. (Opp. 18:20-21.) In *Astiana*, the Ninth Circuit held that a court *may* construe an unjust enrichment claim as a quasi-contract claim. *Id.*

However, Plaintiffs cannot assert a claim for quasi-contract here. California law provides that "there cannot be a claim based on quasi contract where there exists between the parties a valid express contract covering the same subject matter." *Smith v. Allmax Nutrition, Inc.*, 2015 WL 9434768, *9 (E.D. Cal. Dec. 23, 2015) (dismissing cause of action for unjust enrichment post-*Astiana* where plaintiff brought claims for both unjust enrichment and breach of express warranty): *see also Phillips v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4694049, *9 (N.D. Cal. Aug. 6, 2015) ("it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter."); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (same). A separate claim for quasi-contract is thus inappropriate under California law and must be dismissed.

E. **Count VII for Negligent Misrepresentation Should Be Dismissed Under the Economic Loss Doctrine.**

Courts in this Circuit have held that the economic loss rule applies to negligent misrepresentation claims, and, accordingly, dismissed claims for negligent misrepresentation on that basis. *See Astrium S.A.S. v. TRW, Inc.*, 197 F. App'x 575, 577 (9th Cir. 2006) (affirming dismissal of negligent misrepresentation claim as barred by economic loss rule); *Shahinian v. Kimberly-Clark Corp.*, 2015 WL 4264638, *8 (C.D. Cal. July 10, 2015); *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014); *see also Vavak v. Abbott Labs., Inc.*, 2011 WL 10550065, at *5 (C.D. Cal. June 17, 2011) (dismissing negligent misrepresentation claim because "[w]here damages are purely economic, recovery may only be in contract"); *Oracle USA, Inc. v. XL Global Servs.*, 2009 WL 2084154, *7 (N.D. Cal. July 13, 2009) (dismissing negligent misrepresentation claim where "no physical harm or exposure to liability for personal damages" was alleged); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009) (same). Plaintiffs concede that they have not alleged any physical harm.

Plaintiffs argue broadly that economic loss is recoverable for negligent misrepresentation claims. (Opp. 17:2-12.) The exceptions to the economic loss rule are not so sweeping. "[T]he fundamental rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *Oracle*, 2009 WL 2084154 at * 4. The rule is thus particularly strong when a party alleges "commercial activities that negligently or inadvertently [went] awry." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 991 n. 7 (2004). There are two categories of exceptions to California's economic loss rule: (1) products liability cases; and (2) breaches of a noncontractual duty. *United Guar. Mortg. Indem*, 660 F. Supp. 2d at 1181. This second category requires "the breach of a tort duty apart from the general duty not to act negligently." *Id.* "If every negligent breach of a contract gives rise to tort damages, the [rule] would be meaningless, as would the statutory distinction between tort and contract remedies." *Robinson*, 34 Cal. 4th. at 990. "California courts have found exceptions to the economic loss rule in the noncontractual duty category where the conduct also (1) breaches a duty imposed by some types of 'special' or

1 'confidential' relationships; (2) breaches a 'duty' not to commit certain intentional torts; or (3) was committed 'intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.'" *United Guar. Mortg. Indem.,* 660 F. Supp. 2d at 1181.

Though Plaintiffs' Opposition cites *Robinson*, 34 Cal. 4th 979, for the proposition that the economic loss doctrine does not apply to claims for negligent misrepresentation, *Robinson's* holding is not so broad. In *Robinson*, the defendant, a helicopter maker, contracted with the plaintiff to supply a safety component. *Id.* at 985. During the performance of the supply contract, the helicopter maker changed the specifications, and provided the plaintiff with intentionally false certificates stating that the parts conformed to the specifications in the agreement. *Id.* at 985-87. The *Robinson* court distinguished between the defendant's two actions: providing nonconforming components breached the supply agreement, but proving knowingly false certificates was "independent" fraudulent conduct. *Id.* at 991. While *Robinson* held that the economic loss doctrine did not preclude claims for this independent fraud, the court summarized its holding as "narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Id.* at 993. Further, that "[c]ourts should be careful to apply tort remedies only when the conduct in question is so clear in its deviation from socially useful business practices that the effect of enforcing such tort duties will be . . . to aid rather than discourage commerce." *Id.* at 992. At least one court interpreting *Robinson* has expressly limited its holding to situations in which there is a threat of personal liability beyond the contract, and the alleged misrepresentations are conceptually distinct from the contract. *See United Guar. Mortg. Indem. Co.*, 660 F. Supp. 2d at 1184. Representations made prior to, or at the moment of contract formation, are not "conceptually distinct." *Id.* at 1184-85. Plaintiffs here do not allege personal injury or property damage. They merely allege that they would not have purchased the Lattes "on the same terms" if they had known they were not 16 fluid ounces. (*See, e.g.*, Compl., ¶¶ 5-6.) Additionally, the only alleged representation at issue here, related to the size of the Lattes, were made in connection with the

formation of the contract of sale, and are thus not "conceptually distinct" from the contract between Starbucks and Plaintiffs.

Plaintiffs' other citations to case law do not warrant a different conclusion. Plaintiffs argue, in a footnote, that this Court should disregard the holdings in *Shahinian*, 2015 WL 4264638, and *Minkler*, 65 F. Supp. 3d 810, because "neither case is binding" and both cases interpreted California law "differently than the Ninth Circuit did in *Kalitta Air*." As an initial matter, *Kalitta Air, L.L.C. v. Central Texas Airborne Systems, Inc.*, 315 Fed. Appx. 603 (9th Cir. 2008), as an unpublished Ninth Circuit opinion, is not binding on this Court either. Additionally, this Court should decline to follow *Kalitta Air* because it, without explanation or justification, reads *Robinson* too broadly. *See Kalitta Air*, 315 Fed. Appx. at 607. *Kalitta Air* summarily concludes that economic loss is recoverable for negligent misrepresentation. *Id.* As noted above, *Robinson* does not support such a sweeping proposition. Plaintiffs' reliance on *Zakaria v. Gerber Prods. Co.*, 2015 WL 3827654 (C.D. Cal. June 18, 2015), and *Rejects Skate Magazine, Inc. v. Acutrack, Inc.*, 2006 WL 2458759 (N.D. Cal. Aug. 22, 2006), are similarly unavailing as they, too, fail to acknowledge the limited scope of *Robinson's* holding.

This Court should follow the many other courts of this district that have applied the economic loss rule to negligent misrepresentation, and dismiss this claim.

### F. Plaintiffs Have Not Established That They Have Standing

#### 1. Plaintiffs Have Not Shown That They Suffered Injury.

Plaintiffs assert that they have properly alleged injury because they allege that (1) they would not have purchased the Lattes if they knew of the purported "true facts" regarding their quality, (2) the paid a price premium for the Lattes, and (3) the Lattes did not have the "characteristics, ingredients, uses, benefits or quantities as promised." (Opp. 19:5-13.) But, again, Plaintiffs do not allege that the Lattes they actually received and purchased were underfilled.

Instead, Plaintiffs argue that every Starbucks Latte is "uniformly underfilled" because the Lattes are made pursuant to a "standardized recipe." (Opp. 4:26-28, n.1.) But Plaintiffs do not allege that the Lattes they purchased were underfilled. Though Plaintiffs argue three general theories in support of their underfill allegations, they fail to allege that a given theory actually

-14-
SMRH:476859304.8
Case No. 3:16-cv-1306
STARBUCKS REPLY ISO MOTION TO DISMISS COMPLAINT

applied to their Lattes.  Plaintiffs do not allege that the Lattes they bought had foam that should not be counted towards the stated size.  Plaintiffs do not allege that their Lattes were filled only to one quarter of an inch below the cup rim.  Nor do Plaintiffs allege that they noticed that the Lattes they purchased were actually underfilled by 25%.  Plaintiffs must allege that their own Lattes were underfilled to have standing.  They fail to do so.

Additionally, Plaintiffs' attempts to distinguish *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014) misses the point.  The court in *Lee* held that the plaintiffs lacked standing where they had not alleged that they "had any negative experience with the [product]."  *Lee*, 992 F. Supp. 2d at 972.  As Plaintiffs here have failed to allege that the Lattes they actually purchased and received were underfilled, they have failed to allege they had a "negative experience" with the Lattes.  Absent this fundamental allegation, Plaintiffs lack standing to bring these claims.

### 2. Plaintiffs Concede That They Lack Standing To Pursue Injunctive Relief.

Plaintiffs do not oppose dismissal of their claim for injunctive relief for lack of standing.  Accordingly, this Court should dismiss Plaintiffs' requests for prospective injunctive relief.

### III. CONCLUSION

For the foregoing reasons, Starbucks respectfully requests that Plaintiffs' Complaint be dismissed.

Dated: May 2, 2016

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Sascha Henry*
ROBERT J. GUITE
FRED R. PUGLISI
SASCHA HENRY
ROBIN A. ACHEN
Attorneys for Starbucks Corporation