UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIERA STRUMLAUF, et al.,

    Plaintiffs,

v.

STARBUCKS CORPORATION,

    Defendant.

Case No. 16-cv-01306-TEH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS**

This matter came before the Court on June 1, 2016, on Defendant Starbucks Corporation's motions to dismiss Plaintiffs Siera Strumlauf and Benjamin Robles' Class Action Complaint. Having carefully considered the parties written and oral arguments, and for the reasons set forth below, the Court now GRANTS IN PART and DENIES IN PART Defendant's motions.

**BACKGROUND**

Plaintiffs Siera Strumlauf and Benjamin Robles (collectively "Plaintiffs") filed their Class Action Complaint ("Compl.") on March 16, 2016, alleging that Starbucks lattes are underfilled. Docket No. 1. Plaintiffs allege that "Starbucks represents on its menu that its Lattes contain '12 fl. oz.' for a Tall, '16 fl. oz.' for a Grande, and '20 fl. oz.' for a Venti." Compl. ¶ 1. Plaintiffs allege, however, that "Starbucks Lattes are uniformly underfilled pursuant to a standardized recipe. Tall Lattes are not 12 fluid ounces, Grande Lattes are not 16 fluid ounces, and Venti Lattes are not 20 fluid ounces. Starbucks cheats purchasers by providing less fluid ounces in their Lattes than represented. In fact, Starbucks Lattes are approximately 25% underfilled." *Id.* Both Plaintiffs allege that they purchased "Grande" sized lattes from Starbucks, and that they would not have purchased the lattes "on the same terms" if they "had known that they were not, in fact, 16 fluid ounces." *Id*. ¶¶ 5, 6.

In the Complaint, Plaintiffs allege the following eight claims for relief: (1) Breach of Express Warranty; (2) Breach of the Implied Warranty of Merchantability; (3) Unjust Enrichment; (4) Violation of California's Consumers Legal Remedies Act ("CLRA"); (5) Violation of California's Unfair Competition Law ("UCL"); (6) Violation of California's False Advertising Law ("FAL"); (7) Negligent Misrepresentation; and (8) Fraud.

On April 11, 2016, Defendant Starbucks Corporation ("Defendant") moved to dismiss all eight counts, on the bases of (1) lack of standing under Fed. R. Civ. P. 12(b)(1); and (2) failure to state a claim under Fed. R. Civ. P. 12(b)(6). Docket No. 16. Plaintiffs filed a timely opposition (Docket No. 21), and Defendant timely replied (Docket No. 22).

**LEGAL STANDARD**

**I.   Federal Rule of Civil Procedure 12(b)(1)**

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A party may raise this defense by filing a motion under Rule 12(b)(1). "A party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution [and] standing is a 'core component' of that requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). "To satisfy Article III's case or controversy requirement, [a plaintiff] needs to show that he has suffered an injury in fact, that the injury is traceable to the challenged action of [the defendant], and that the injury can be redressed by a favorable decision." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004).

In ruling on a motion to dismiss for want of standing, the court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. *Lema v. Courtyard Marriott Merced*, 873 F. Supp. 2d 1264, 1267 (E.D. Cal. 2012) (citing *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975)).

///

## II. Federal Rule of Civil Procedure 12(b)(6)

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In ruling on a motion to dismiss, courts must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

## I. Standing

A. Plaintiffs sufficiently allege Article III standing for damages relief.

Under Article III of the United States Constitution, a plaintiff must show "injury in fact" to have standing in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In *Lujan*, the United States Supreme Court held that to establish an injury in fact, a plaintiff must demonstrate the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotations and citations omitted). "Particularized" means "that the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1. Injury in fact is similarly required to allege statutory standing under the UCL, FAL and CLRA.

3

Defendant's standing challenge is based on the contention that Plaintiffs fail to sufficiently plead injury in fact, because Plaintiffs fail to allege that the particular lattes they purchased were underfilled. Mot. at 18. However, contrary to Defendant's assertions in briefing and at oral argument, even without Plaintiffs measuring their own lattes and finding them lacking, Plaintiffs have sufficiently alleged Article III standing.

Plaintiffs allege that Starbucks lattes are uniformly underfilled using three different theories. First, Plaintiffs assert that the milk foam, which makes up the top layer of the latte, should not be counted toward the total volume of the latte, because according to the "food science community" and the "weights and measures community," the industry standard is to let the foam dissipate, or to measure the drink without the foam. *See* Compl. ¶ 23. Second, Plaintiffs allege that lattes at all Starbucks locations are created using pitchers that have "fill to" lines that are too low to for the finished product to conform to Defendant's fluid ounce representations. *See id.* ¶ 22. Finally, in the Complaint, Plaintiffs reproduce a recipe card which is allegedly used by all Starbucks baristas to make their lattes. *Id.* ¶ 15. Plaintiffs allege that the last step of the recipe instructs the barista to "leav[e] at least 1/4 [inch] of space below the rim of the serving cup," and because the serving cup's capacity is exactly the amount which Defendant represents on the menu, the lattes are all underfilled. Compl. ¶ 23.

Plaintiffs' three theories of underfilling are sufficient for Plaintiffs to establish standing because the allegations allow the Court to make the following reasonable inference: If all Starbucks lattes are made pursuant to a standardized recipe which results in the lattes being uniformly underfilled, and Plaintiffs allege that they purchased lattes, it is reasonable to conclude that – even without measuring – Plaintiffs' lattes were underfilled. Having established their own individual standing, Plaintiffs in this putative class action may also allege claims of other class members "based on transactions in which the named plaintiffs played no part." *Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-cv-5222-VC, 2014 WL 2451290 at *5 (N.D. Cal. June 2, 2014). Accordingly, Defendant's motion to dismiss Plaintiffs' claim for damages is DENIED.

4

B. <u>Plaintiffs do not sufficiently allege Article III standing for injunctive relief.</u>

Plaintiffs seek "injunctive relief as pleaded or as the Court may deem proper" for all claims in the Complaint. Compl. at 18. A plaintiff seeking injunctive relief from a federal court must allege not only that s/he has "suffered or is threatened with a concrete and particularized legal harm," but also that there is "a sufficient likelihood that [s/he] will again be wronged in a similar way." *Bates v. United Parcel Serv.*, Inc., 511 F.3d 974, 985 (9th Cir. 2007) (citation and internal quotation marks omitted). In a putative class action such as this, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

Plaintiffs allege that they were "induced" to purchase Starbucks lattes by Defendant's misrepresentations and omissions, Compl. ¶¶ 85, 91, and had they known that the lattes were underfilled, they would not have purchased them on the same terms. Compl. ¶¶ 42, 52, 63, 72, 79. Now they know. There is no danger that they will be misled in the future. *See Garrison*, 2014 WL 2451290 at *5 ("It may very well be that the legislative intent behind California's consumer protections statutes would be best served by enjoining deceptive labeling. . . . But the power of federal courts is limited, and that power does not expand to accommodate the policy objectives underlying state law."). Because Plaintiffs cannot allege a threat of repeated injury, they may not proceed on injunctive relief. *Bates*, 511 F.3d at 985. Therefore, the only relief available to Plaintiffs is damages, and Plaintiffs' claim for injunctive relief is DISMISSED with prejudice.

**II.    Failure to State a Claim**

A. <u>Plaintiffs sufficiently allege a Breach of Express Warranty claim.</u>

Count 1 of the Complaint alleges a claim for Breach of Express Warranty. Compl. ¶¶ 38-42. "To prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express

5

1   warranty was breached; and (4) the breach caused injury to the plaintiff." *Viggiano v.*
2   *Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893-95 (C.D. Cal. 2013).  In its motion,
3   Defendant focuses mainly on the fourth prong – injury – and reiterates its arguments
4   regarding standing, discussed above.  *See, supra*, Section I.  Defendant states that
5   Plaintiffs' allegation that the food science community does not count foam when
6   measuring volume is "implausible."  Mot. at 13.  Defendant further argues that part of the
7   warranty that formed the basis of the bargain between Defendant and Plaintiffs is the word
8   "latte," which necessarily includes the foam.  Therefore, according to Defendant, the milk
9   foam should be considered as part of the latte – in foam form, not after dissipation.  *Id.*

10   However, for purposes of a motion to dismiss, the Court must accept as true
11   Plaintiffs' factual allegation that the food science community would not measure the milk
12   foam in its foam state.  Whether the milk foam added to the top of the latte counts toward
13   the total fluid ounce measurement is an issue of *fact*, and the Court must view the
14   Complaint in the light most favorable to Plaintiffs.  *Vasquez*, 487 F.3d at 1249.
15   Furthermore, Plaintiffs' two other theories of "uniform underfilling" – that the sum of the
16   ingredients in the standardized pitcher do not equal enough fluid ounces, and that the
17   recipe calls for a quarter inch of space below the rim of the cup – were not addressed by
18   Defendant in the motion to dismiss Count 1.

19   The Court finds that at the pleadings stage, Plaintiffs have sufficiently alleged a
20   breach of express warranty claim by alleging (1) that Defendant made an affirmation of
21   fact on its menu that a "Grande" latte would contain 16 fluid ounces of latte, (2) the fluid
22   ounce amount formed the basis of the price Plaintiffs paid for their lattes; (3) the lattes did
23   not, in fact, contain 16 fluid ounces, and (4) therefore, Plaintiffs spent money they would
24   not have otherwise spent.  Accordingly, Defendant's motion to dismiss Count 1 is
25   DENIED.

27   ///
28   ///

1       **B.**     <u>Plaintiffs do not sufficiently allege a Breach of the Implied Warranty of Merchantability</u>

Count 2 of the Complaint alleges a claim for Breach of the Implied Warranty of Merchantability. Compl. ¶¶ 43-52. The Implied Warranty of Merchantability is found in California Commercial Code Section 2314. A plaintiff alleging a breach of the implied warranty of merchantability must show that the product "did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003). "[L]iability for an implied warranty does not depend upon any specific conduct or promise on [the defendant's] part, but instead turns upon whether the[ ] product is merchantable under the code." *Hauter v. Zogarts*, 14 Cal. 3d 104, 117 (1975).

Defendant contends that Plaintiffs fail to allege a breach of the implied warranty of merchantability because they fail to assert that the lattes are unfit for consumption. Mot. at 1; *see Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896-97 (claim dismissed where plaintiff alleged only that certain representations regarding soda products were misleading, not that the sodas were not drinkable, contaminated, or otherwise unfit for use as a soft drink). Plaintiffs argue in opposition that a different standard should apply, pointing to subsections (e) and (f) of the California Commercial Code. Opp'n at 15-16. Subsection (e) requires that goods "are adequately contained, packaged, and labeled as the agreement may require," and subsection (f) requires that the goods "conform to the promises or affirmations of fact made on the container or label, if any." Cal. Com. Code § 2314(2). Plaintiffs cite *Hendricks v. StarKist Co.*, where, considering underfilled tuna cans, the court stated: "The Complaint sufficiently sets forth a claim that the Products here were not adequately packaged, consistent with an implied promise that they were adequately filled with tuna. Thus a plausible claim for breach of implied warranty of merchantability is stated." 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014).

The Court is not convinced, however, that this case is analogous to *Hendricks* in that it would be farfetched to call a made-to-order latte a "contained, packaged, and labeled" good, or to claim that the description on the Starbucks menu of the fluid ounces

1    associated with each size amounts to "promises or affirmations of fact made on the
2    container or label." Even if a latte is made pursuant to a standardized recipe, as Plaintiffs
3    allege, such standardization does not transform the latte into a packaged good. Thus,
4    subsections (e) and (f) of Section 2314 are not applicable to the case at bar.

5    The Court agrees with Defendant's reading of case law regarding the implied
6    warranty of merchantability, in that a well-pled claim must assert that the product was
7    unfit for its ordinary use. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009).
8    Here, Plaintiffs do not allege that the lattes were unfit for consumption; rather, Plaintiffs'
9    allegations are that they wanted *more* latte – latte totaling the amount promised.
10   Therefore, the Court finds that Plaintiffs have failed to allege a breach of the implied
11   warranty of merchantability. Defendant's motion to dismiss Count 2 is GRANTED.
12   Because Plaintiffs cannot allege with these facts that the lattes failed to meet the "most
13   basic degree of fitness," the dismissal is with prejudice. *Mocek*, 114 Cal. App. 4th at 406.

C.   Plaintiffs' claim for Unjust Enrichment is unavailable under California law.

Count 3 of the Complaint alleges a claim of Unjust Enrichment. Compl. ¶¶ 53-57. This Court has held on multiple occasions that, under California law, unjust enrichment does not exist as a separate cause of action. *See, e.g., Yordy v. Plimus, Inc.*, No. 12-CV-0229-TEH, 2012 WL 2196128, at *7 (N.D. Cal. June 14, 2012); *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1028 (N.D. Cal. 2011). While some courts will construe a claim for unjust enrichment as a claim for restitution, where, as here, the plaintiff's other claims already seek restitution as a remedy, to construe the claim as such would add nothing to the Complaint.

Plaintiffs argue that the Court may construe the unjust enrichment cause of action as a quasi-contract claim seeking restitution. Opp'n at 18-19. However, "there cannot be a claim based on quasi contract where there exists between the parties a valid express contract covering the same subject matter." *Smith v. Allmax Nutrition, Inc.*, No. 15-CV-0744-SAB, 2015 WL 9434768, at *9 (E.D. Cal. Dec. 23, 2015) (dismissing cause of action

8

1  for unjust enrichment where plaintiff also claimed breach of express warranty); *see also*
2  *Phillips v. P.F. Chang's China Bistro, Inc.*, No. 15-CV-0344-RMW, 2015 WL 4694049, at
3  *9 (N.D. Cal. Aug. 6, 2015) ("It is well settled that an action based on an implied-in-fact or
4  quasi-contract cannot lie where there exists between the parties a valid express contract
5  covering the same subject matter."); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838,
6  856 (N.D. Cal. 2004). Even though there was no *written* contract at issue in this case,
7  Plaintiffs still allege an express contract by alleging Count 1. Thus, no quasi-contract
8  claim may stand.

Accordingly, Defendant's motion to dismiss Count 3 is GRANTED. Because Plaintiffs' other remedies are adequate, and unjust enrichment is unavailable as a matter of law, the dismissal of Count 3 is with prejudice. *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (2011) ("equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate").

### D. Plaintiffs sufficiently allege violations of the CLRA, UCL, and FAL.

Counts 4, 5, and 6 of the Complaint allege statutory violations of the CLRA, UCL and FAL, respectively. Compl. ¶¶ 58-79. Defendant moves to dismiss Counts 4, 5, and 6 for two reasons. First, according to Defendant, a reasonable consumer would not be deceived by Defendant's representations as to the size of Starbucks lattes. Second, Defendant argues that Plaintiffs have not met the special pleading requirements of Fed. R. Civ. P. 9(b).

> *i.  Reasonable consumers may plausibly be deceived by Defendant's representation.*

Claims of false or misleading advertising and unfair business practice are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under this test, a plaintiff must show that "members of the public are likely to be deceived" by the defendant's conduct. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). "Likely to be deceived" means that "it is probable that a significant portion of

the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

Defendant contends that Plaintiffs' claims fail the reasonable consumer test. According to Defendant, "[n]o reasonable consumer would expect a description as to the volume of a latte to exclude two necessary components of the beverage – steamed milk and milk foam. Both of those components must fit within the serving cup." Mot. at 9. Furthermore, Defendant contends that "[n]o reasonable consumer would expect the sum of a Latte's separate, steamed parts to remain the same when cooled. It is the finished, hot Latte, comprised of steamed milk, espresso, and milk foam, that matters to the reasonable consumer." *Id.* Finally, Defendant argues that "a reasonable consumer understands that there will inevitably be variation in handcrafted, made-to-order Lattes." *Id.* at 10-11.

California courts have recognized that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 938 (internal quotation marks and citations omitted); *see also Asis Internet Servs. v. Subscriberbase, Inc.*, No. 09-CV-3503-SC, 2010 WL 1267763, at *2 (N.D. Cal. Apr. 1, 2010) (whether a reasonable consumer is likely to be deceived "is clearly a question of fact, which is best left for a jury, unless no reasonable trier of fact could conclude otherwise.") (internal quotation marks and citation omitted).

In some "rare situation[s]," courts will grant a motion to dismiss on the basis of the reasonable consumer test. *E.g., Williams*, 552 F.3d at 939 (sweepstakes mailer stated plaintiff would only win if he had the winning number; no reasonable consumer would be deceived into thinking s/he had automatically won upon receipt of mailer); *Ebner v. Fresh, Inc.*, 818 F.3d 799, 807 (9th Cir. 2016) (lip balm's mechanism that only allowed 75% of product to come out of tube was not deceiving because reasonable consumer "understands the general mechanics of [lip balm dispensers] and further understands that some product may be left in the tube"); *Stearns v. Select Comfort Retail Corp.*, No. 08-CV-2746-JF, 2009 WL 1635931, at *11 (N.D. Cal. June 5, 2009) (reasonable consumer would not

10

believe statement that bed would be "maintenance free" actually meant that purchaser would receive "constant and wear free support night after night"). However, this is not one of those rare cases.

While it is certainly possible that consumers would understand that Defendant's representation intended that the milk foam be part of the fluid ounce measurement, or understand that steamed milk takes up more space than cold milk, it is also possible that consumers would expect the serving cups to be slightly larger, such that the consumers would receive 16 ounces of the fluid portion of the latte when ordering a "Grande." This is not a case where the alleged deception is simply implausible as a matter of law. Therefore, at this stage, the Court finds it probable that a significant portion of the latte-consuming public could believe that a "Grande" contains 16 ounces of fluid, measured without milk foam or in its cooled state. If nothing else, it is probable enough that the issue should be decided by a trier of fact, not on a motion to dismiss.

>  ii.  *Plaintiffs have met the heightened pleading standard of Rule 9(b).*

Federal Rule of Civil Procedure 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting" the fraud. "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged," such that defendants are given sufficient "notice of the particular misconduct" to enable them to "defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). Plaintiffs' Complaint satisfies these requirements, as exemplified by Plaintiffs' opposition:

> **Who:** The Complaint specifically identifies Starbucks as the entity that misrepresented that its "Lattes contained '12 fl. oz.' for a Tall, '16 fl. oz' for a Grande, and '20 fl. oz.' for a Venti." Compl. ¶ 40.
>
> **What:** The Complaint identifies and describes Starbucks Lattes. Id. ¶ 1. Plaintiffs allege that Starbucks falsely represented that its "Lattes contained '12 fl. oz.' for a Tall, '16 fl. oz' for a Grande, and '20 fl. oz.' for a Venti." Id. ¶ 40.

11

> **When:** Plaintiffs allege they purchased underfilled Grande-sized Starbucks Lattes within the relevant class period. Id. ¶¶ 5, 6, 42, 52, 56, 63, 72, 79, 87, 92; see also Strumlauf Aff. ¶ 3. They further allege that they relied on Starbucks' false representations in purchasing the product. Compl. ¶¶ 5, 6, 42, 52, 56, 63, 72, 79, 87, 92.
>
> **Where:** Plaintiffs allege that they are California citizens and purchased Grande-sized Starbucks Lattes at retail locations in San Francisco and Carlsbad, California. Id. ¶¶ 5, 6; Strumlauf Aff. ¶ 3.
>
> **How:** The Complaint alleges that Starbuck's conduct was false and misleading because "Starbucks Lattes are underfilled. A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, and a Venti does not contain 20 fluid ounces." Compl. ¶ 41. The Complaint also alleges that Plaintiffs were induced to pay substantially more for Starbucks Lattes based on these false representations. Id. ¶¶ 5, 6, 42, 52, 56, 63, 72, 79, 87, 92.

Opp'n at 13. These allegations are sufficient to give Defendant ample notice of the particular circumstances underlying Plaintiffs' claims against it. *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010) ("[P]laintiffs have identified the particular statements they allege are misleading, the basis for that contention, where those statements appear . . . , and the relevant time period in which the statements were used. As such, they have satisfied the requisite who, what, when, where, and how of the misconduct charged.") (internal quotation marks omitted).

For these reasons, the Court finds that Plaintiffs have alleged plausible facts that a reasonable consumer would be misled by Defendant's representations, and Plaintiffs have alleged those facts with the requisite specificity. Accordingly, Defendant's motion to dismiss Counts 4, 5, and 6 is DENIED.

E. <u>Plaintiffs' Negligent Misrepresentation claim is barred by the economic loss doctrine.</u>

Count 7 of the Complaint alleges a claim for Negligent Misrepresentation. Compl. ¶¶ 80-87. The economic loss doctrine provides that a plaintiff's tort recovery of economic damages is barred unless such damages are accompanied by some form of harm to person

or property, or the action falls under an exception. *See N. Am. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 777 (1997). Thus, in actions for negligence, liability is limited to damages for physical injuries and recovery of economic loss is not allowed. *Aas v. Super. Ct.*, 24 Cal. 4th 627, 636 (2000) (citing *Seely v. White Motor Co.*, 63 Cal. 2d 9, 28 (1965)).

In its motion to dismiss, Defendant argues that the economic loss doctrine bars Plaintiffs' negligent misrepresentation claim because Plaintiffs allege only monetary damages. Mot. at 16. In opposition, Plaintiffs do not argue that this case falls under an exception to the economic loss doctrine. Instead, Plaintiffs argue that because California law classifies negligent misrepresentation as a type of fraud claim (and economic loss is recoverable for fraud), the economic loss doctrine does not act as a bar. Opp'n at 17 (citing *Zakaria v. Gerber Prods. Co.*, 25-CV-0200-JAK, 2015 WL 3827654 (C.D. Cal. June 18, 2015)).

However, courts rarely allow only monetary damages in tort claims. "If every negligent breach of a contract gives rise to tort damages, the [economic loss doctrine] would be meaningless, as would the statutory distinction between tort and contract remedies." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). In *Robinson*, the California Supreme Court distinguished between two acts by the defendant, finding that one act was a breach of contract, and the other was fraudulent conduct – independent of the breach – that put the plaintiff's physical safety at risk. *Id.* at 991. While *Robinson* held that the economic loss doctrine did not bar the independent fraud claims, the court summarized its holding as "narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Id.* at 993.

Here, there was no threat of physical harm as a result of Defendant's actions, and no other special situations apply that would warrant finding an exception to the economic loss doctrine. Therefore, this Court follows the majority of courts in finding that the economic loss doctrine bars Plaintiffs' claim for negligent misrepresentation. *E.g. Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014). Defendant's motion to dismiss Count 7 is

GRANTED. Furthermore, because Plaintiffs did not suffer any non-monetary damage, the dismissal of Count 7 is with prejudice.

### F. Plaintiffs sufficiently allege Common Law Fraud.

Count 8 of the Complaint alleges a claim of Fraud. Compl. ¶¶ 88-92. Defendant moves to dismiss Count 8 on the same bases as the fraud-based statutory claims in Counts 4, 5, and 6 – namely, that because a reasonable consumer could not be misled by Defendant's statements such that the statements could be reasonably relied upon, the statements cannot form the basis of a fraud claim. Mot. at 16-17. For the same reasons discussed with regard to Counts 4, 5, and 6, the Court finds that at the pleading stage, it is plausible that a reasonable consumer could be misled by Defendant's statements. *See, supra*, Section II.D. Accordingly, Defendant's motion to dismiss Count 8 is DENIED.

**CONCLUSION**

For the reasons discussed above, Defendant's motions to dismiss are GRANTED IN PART and DENIED IN PART. Defendant's motion under Federal Rule of Civil Procedure 12(b)(1) is GRANTED with prejudice as to Plaintiffs' claim for injunctive relief; the motion is DENIED as to damages. Defendant's motion under Federal Rule of Civil Procedure 12(b)(6) is GRANTED with prejudice as to Count 2, Count 3, and Count 7; the motion is DENIED in all other respects.

**IT IS SO ORDERED.**

Dated: 06/17/16                           _____
                                                              THELTON E. HENDERSON
                                                              United States District Judge

14