**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

**MILITARY JUSTICE ATTORNEYS, PLLC**
Gerald Healy (admitted *pro hac vice*)
219 Scott Street, PMB 315
Beaufort, SC  29902
Telephone: (844) 334-5459
Facsimile:  (843) 645-6530
E-Mail: gerry@militaryjusticeattorneys.com

**MILITARY JUSTICE ATTORNEYS, PLLC**
John Hafemann (State Bar No. 238758)
21 W. Park Avenue
Savannah, GA  31401
Telephone: (844) 334-5459
Facsimile:  (843) 645-6530
E-Mail: john@militaryjusticeattorneys.com

*Attorneys for Plaintiffs*
*(Additional Counsel Listed on Signature Page)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERA STRUMLAUF, BENJAMIN ROBLES, and BRITTANY CRITTENDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant. | Case No. 16-CV-01306-TEH<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Siera Strumlauf, Benjamin Robles, and Brittany Crittenden (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Starbucks Corporation ("Starbucks" or "Defendant").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

**NATURE OF ACTION**

1.      This is a class action lawsuit on behalf of purchasers of Starbucks Caffè Lattes, Flavored Lattes, Pumpkin Spice Lattes, Egg Nog Lattes, Skinny Lattes, Skinny Flavored Lattes, Vanilla Lattes, Skinny Vanilla Lattes, Chai Tea Lattes, Green Tea Lattes, Earl Grey Tea Lattes, Vanilla Rooibos Tea Lattes, Black Tea Lattes, Caffè Mochas, Skinny Caffè Mochas, White Chocolate Mochas, Peppermint Mochas, and Salted Caramel Mochas (collectively, "Lattes").  At its retail locations, Starbucks represents on its menu that its Lattes contain "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, and "20 fl. oz." for a Venti:[1]



---

[1] Technically, the menu represents that Venti beverages are "20/24 fl. oz."  This means that hot beverages (like Starbucks Lattes) are purportedly "20 fl. oz.," while cold beverages are purportedly "24 fl. oz."  For ease of reference, this complaint will only refer to the relevant representation as being "20 fl. oz." in the context of Lattes.

However, Starbucks Lattes are uniformly underfilled pursuant to a standardized recipe.  Tall Lattes are not 12 fluid ounces, Grande Lattes are not 16 fluid ounces, and Venti Lattes are not 20 fluid ounces.  Starbucks cheats purchasers by providing less fluid ounces in their Lattes than represented.  In fact, Starbucks Lattes are approximately 25% underfilled.

2.      Starbucks Lattes are made from a standardized recipe, which Starbucks instituted in 2009 to save on the cost of milk – one of its most expensive ingredients.  To create a Latte, the standardized recipe requires Starbucks baristas to fill a pitcher with steamed milk up to an etched "fill to" line that corresponds to the size of the customer's order, pour shots of espresso into a separate serving cup, pour the steamed milk from the pitcher into the serving cup, and top with ¼" of milk foam, leaving ¼" of free space in the cup.  However, Starbucks' standardized recipes for Lattes result in beverages that are plainly underfilled.  Stated otherwise, the etched "fill to" lines in the pitchers are too low, by several ounces.

3.      Moreover, the serving cups used by Starbucks for its Lattes are simply too small to accommodate the fluid ounces listed on Starbucks' menu.  For example, the serving cup used for Grande beverages holds exactly 16 fluid ounces, when completely full.  However, Starbucks' standardized recipe for its Grande Latte calls to fill the serving cup up to "1/4 inch below cup rim." Thus, when used in conjunction with its standardized recipes, Starbucks' serving cups do not permit 12 ounce, 16 ounce, and 20 ounce Lattes.

4.      By underfilling its lattes, thereby shortchanging its customers, Starbucks has saved countless millions of dollars in the cost of goods sold and was unjustly enriched by taking payment for more product than it delivers.  Plaintiffs assert claims on behalf of themselves and a nationwide class of purchasers of Starbucks Lattes for breach of express warranty, violation of California's Consumers Legal Remedies Act ("CLRA"), violation of California's Unfair Competition Law ("UCL"), violation of California's False Advertising Law ("FAL"), violation of New York's General Business Law § 349, violation of New York's General Business Law § 350, violation of Florida's Deceptive and Unfair Trade Practices Act, and fraud.

**PARTIES**

1

2          5.       Plaintiff Siera Strumlauf is a citizen of California who resides in San Francisco,

3    California.  Prior to the filing of this complaint, Plaintiff Strumlauf visited her local Starbucks in

4    San Francisco approximately one to two times per week, where she would purchase Grande-sized

5    (16 fl. oz.) plain and vanilla-flavored Starbucks Lattes, which cost approximately $3.95.  Plaintiff

6    Strumlauf saw the representation on Starbucks' menu that her Grande-sized Starbucks Lattes

7    would be "16 fl. oz." prior to and at the time of purchase, and understood this to be a representation

8    and warranty that her Lattes would, in fact, contain 16 fluid ounces.  Plaintiff Strumlauf relied on

9    this representation and warranty in deciding to purchase her Starbucks Lattes, and this

10   representation and warranty was part of the basis of the bargain, in that she would not have

11   purchased Grande-sized Starbucks Lattes on the same terms if she had known that they were not, in

12   fact, 16 fluid ounces.

13         6.       Plaintiff Benjamin Robles is a citizen of California and has his permanent residence

14   in Carlsbad, California.  In January 2015, Plaintiff Robles visited a Starbucks retail store in

15   Carlsbad, California, where he purchased a Grande-sized (16 fl. oz.) plain Starbucks Latte, which

16   cost approximately $3.95.  Plaintiff Robles saw the representation on Starbucks' menu that his

17   Grande-sized Starbucks Lattes would be "16 fl. oz." prior to and at the time of purchase, and

18   understood this to be a representation and warranty that his Lattes would, in fact, contain 16 fluid

19   ounces.  Plaintiff Robles relied on this representation and warranty in deciding to purchase his

20   Starbucks Lattes, and this representation and warranty was part of the basis of the bargain, in that

21   he would not have purchased Grande-sized Starbucks Lattes on the same terms if he had known

22   that they were not, in fact, 16 fluid ounces.

23         7.       Plaintiff Brittany Crittenden is a citizen of New York.  Within the past 3 years,

24   while in New York, New York, and in Miami, Florida, Plaintiff Crittenden purchased Tall, Grande,

25   and Venti-sized Chai Tea Lattes, White Chocolate Mochas, Salted Caramel Mochas, and

26   Peppermint Mochas.  For example, on March 30, 2016, Plaintiff Crittenden visited a Starbucks

27   retail store located at 593 Ninth Avenue, New York, New York, where she purchased a Tall-sized

28   (12 fl. oz.) Chai Tea Latte for $3.45.  Plaintiff Crittenden saw the representation on Starbucks'

menu that her Tall-sized Starbucks Lattes would be "12 fl. oz.," her Grande-sized Starbucks Lattes would be "16 fl. oz.," and her Venti-sized Starbucks Lattes would be "20 fl. oz." prior to and at the time of her purchases, and understood this to be a representation and warranty that her Lattes would, in fact, contain 12, 16, and 20 fluid ounces, respectively.  Plaintiff Crittenden relied on this representation and warranty in deciding to purchase her Starbucks Lattes, and this representation and warranty was part of the basis of the bargain, in that she would not have purchased Tall, Grande, and Venti-sized Starbucks Lattes on the same terms if she had known that they were not, in fact, 12, 16, and 20 fluid ounces, respectively.

8.     Defendant Starbucks Corporation is a Washington corporation with its principal place of business in Seattle, Washington.  Starbucks is a leading American coffee company and coffeehouse chain.  Since its founding in 1971, Starbucks now operates 23,450 retail locations worldwide, including 12,937 locations in the United States alone, which serve hot and cold drinks, whole-bean coffee, espressos, teas, fresh juices, pastries, snacks, merchandise, and Starbucks Lattes.  In 2015, Starbucks realized approximately $19.2 billion in revenue, and employed 191,000 workers.

9.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of Starbucks, that allegation shall mean that Starbucks did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiffs, together with most members of the proposed class, are citizens of states different from Defendant.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

11.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Plaintiff Strumlauf is a citizen of California, resides in this District, and purchased a

Starbucks Latte from Defendant in this District.  Additionally, Starbucks distributed, advertised, and sold its Lattes, which are the subject of the present complaint, in this District.

<b><u>FACTS COMMON TO ALL CAUSES OF ACTION</u></b>

**A Brief Background On Lattes**

12.     A latte is a coffee drink made with espresso and steamed milk.  The term as used in English is a shortened form of the Italian *caffè latte*, *caffelatte*, or *caffellatte*, which means "milk coffee."  The word is also sometimes spelled "latté" or "lattè" in English.

13.     Traditionally, a latte is created by mixing steamed milk and espresso, which is then topped with a thin layer of milk foam.

14.     In America, lattes rose to popularity in the 1980s and 1990s, beginning in affluent urban markets such as Seattle and New York City.  Specialty coffee products are now a booming industry, which is driven by lattes.  For example, a 2013 article from Forbes reports that "about 83% of U.S. adults drink coffee in one form or another."  Of these consumers, "about a third of them drink a 'gourmet' coffee each day," of which "lattes and cappuccinos seem to be the kind ordered most frequently."  That said, "[i]t's neck-and-neck [whether lattes or cappuccinos] gets the top spot, but lattes currently seem to have the slight edge."[2]

15.     While Starbucks does not release precise sales data on each of its products, there are indications that its lattes constitute a substantial portion of its sales.  For example, Starbucks reported that it sold over 200 million pumpkin spice lattes (a limited seasonal offering) from 2003 to 2013, generating revenues of at least $100 million per year in recent seasons, according to Forbes.

**How Starbucks Lattes Are Created, Per The Company's Standardized Recipe**

16.     Starbucks Lattes are created according to a standardized recipe.  As discussed in the company's Beverage Resource Manual, Starbucks Lattes are created with 4 simple steps, as shown in the following diagram:

---

[2] *See* http://www.forbes.com/sites/robertpassikoff/2013/09/16/u-s-consumers-drinking-a-latte-more-coffee/

|  | SHORT | TALL | GRANDE | VENTI | QUALITY NOTES |
|---|---|---|---|---|---|
| **1** steam milk | 2% milk is the default. | | | | Measure to appropriate line on pitcher. Aerate milk 3–5 seconds. |
| **2** queue shots | Espresso | 1 shot | 1 shot | 2 shots | 2 shots | Pull shots directly into cup. |
| **3** add syrup | Starbucks® syrup (from espresso bar if requested) | 2 pumps | 3 pumps | 4 pumps | 5 pumps | Full pumps |
| **4** finish and connect | Fill with steamed milk. Top with ¼ inch of foam. | | | | ¼ inch below cup rim |

17.   The same Beverage Resource Manual has substantially similar procedures for making mocha-style beverages:

|  | SHORT | TALL | GRANDE | VENTI | QUALITY NOTES |
|---|---|---|---|---|---|
| **1** steam milk | 2% milk is the default. Steam milk to high end of range: 150°F (66°C)–170°F (77°C). | | | | Measure to appropriate line on pitcher. Aerate milk 3–5 seconds. |
| **2** queue shots | Espresso | 1 shot | 1 shot | 2 shots | 2 shots | Pull shots directly into cup. |
| **3** add syrup | Mocha sauce | 2 pumps | 3 pumps | 4 pumps | 5 pumps | Full pumps |
| **4** finish and connect | Swirl espresso and Mocha sauce. Fill with steamed milk. Top with whipped cream. | | | | ¼ inch below cup rim |

18.     The same Beverage Resource Manual has substantially similar procedures for making chai tea lattes:

|  | SHORT | TALL | GRANDE | VENTI | QUALITY NOTES |
|---|---|---|---|---|---|
| **1** steam milk | 2% milk is the default. | | | | Measure to appropriate line on pitcher. Aerate milk 3–5 seconds. |
| **2** queue shots | Skip this step. | | | | |
| **3** add syrup | Tazo® Chai Concentrate | 2 pumps | 3 pumps | 4 pumps | 5 pumps | Full pumps |
| **4** finish and connect | Fill cup half full with hot water. Fill the rest with steamed milk. Top with ¼ inch of foam. | | | | ¼ inch below cup rim |

19.     The Starbucks Lattes are substantially similar products.  They are all hot beverages sold with the same representations as to the fluid ounces, and are made pursuant to substantially similar recipes.

20.     First, pursuant to the standardized recipe, the barista fills a standardized pitcher with steamed milk up to an etched "fill to" line.  Each pitcher has at least 3 lines:  one each for Tall, Grande, and Venti beverages.  By having these "fill to" lines, the barista has no discretion to individually determine how much milk to use in each Latte, nor is there any room for deviation.

21.     Second, pursuant to the standardized recipe, the barista adds shots of espresso to a separate serving cup.  One shot is used for Tall Lattes, while two shots are used for Grande and

Venti Lattes.  Again, the barista has no discretion to individually determine how much espresso to use.  A calibrated machine dispenses each shot.

22.   Third, pursuant to the standardized recipe, the barista adds flavoring syrup, if requested, according to the diagram above.  Yet again, the barista has no discretion to individually determine how much flavoring syrup to use.  Calibrated pumps dispense the syrup in measured amounts.

23.   Fourth, pursuant to the standardized recipe, the barista pours the steamed milk from the pitcher into the serving cup with the espresso.  The barista then tops the beverage with ¼" of milk foam, leaving at least ¼" of space below the rim of the serving cup.

**Starbucks Lattes Are Underfilled**

24.   When Starbucks Lattes are created pursuant to the company's standardized recipe, the resulting beverages are underfilled. Several categories of evidence support these allegations.

25.   First, Plaintiffs' counsel purchased and measured Starbucks Lattes at different stores, in different states, in different sizes, and in different flavors.  However, each Latte was underfilled by approximately 25%.  Additionally, no Starbucks Latte was actually filled to the fluid ounces promised on Starbucks' menu (e.g., Starbucks represents that a Tall should be "12 fl. oz.," Grande should be "16 fl. oz.," and Venti should be "20 fl. oz.").

26.   Second, Plaintiffs' counsel acquired several copies of the standardized pitcher currently in use by Starbucks baristas to make Lattes.  However, the etched "fill to" lines used to measure the steamed milk are plainly set too low.  For a Grande beverage, the "fill to" line comprises less than 12 fluid ounces of milk.  After adding 2 shots of espresso (2 fluid ounces), the resulting beverage measures less than 14 fluid ounces at most.  This falls far short of Starbucks' "16 fl. oz." representation.

27.   Third, the serving cups used by Starbucks simply do not accommodate the promised beverage sizes in fluid ounces, per the standardized recipe for Lattes.  For example, when filled to the brink, the serving cup used for Grande beverages holds exactly 16 fluid ounces (the same is true for the Tall cup, which holds exactly 12 fluid ounces, and the Venti cup, which holds exactly 20 fluid ounces).  However, Starbucks' recipe for its Grande Latte calls to fill the serving cup up to

"1/4 inch below cup rim." Thus, ¼" of empty cup space exists above ¼" of milk foam, which sits atop the fluid Latte. Accordingly, per the recipe, the Grande serving cup is just too small to hold a 16 fluid ounce latte.

28.     Moreover, Starbucks refuses to fill any hot beverage up to the brim of the cup. Thus, under no circumstances will Starbucks ever serve a Grande Latte that actually meets the fluid ounces represented on the menu.

29.     The milk foam added to the top of Starbucks Lattes does not count toward the volume of its beverages. In the food science community, as well as in the weights and measures community, foam is not measured on a volumetric basis. Rather, it is measured by mass. When food scientists – and weights and measures inspectors – measure a liquid with foam, the industry-standard procedure is to let the foam dissipate or eliminate the foam, then measure the resulting liquid. Under this analysis, milk foam cannot compensate for an otherwise underfilled Latte.

**Starbucks Made A Conscious Decision To Underfill Its Lattes To Save Money On Milk**

30.     Starbucks faced financial difficulty at the end of 2007. Its stock was down 42%, and many of its stores were failing. In January 2008, Howard Schultz, Chairman of the board, resumed his position as CEO (which he had left in 2000), and lead an effort to return the company to profitability. As part of these efforts, Mr. Schultz made over $500 million of permanent cuts in costs by laying off 4,000 employees, closing 800 retail locations in the United States, and reducing the cost of goods sold.

31.     A key component to this cost-cutting effort was to reduce the amount of milk used by baristas and in Starbucks beverages. As reported by Bloomberg in 2009, Starbucks accomplished this objective by putting standardized, etched lines in its steaming pitchers. These etched lines on the pitchers were made specifically for Starbucks, and are used by all Starbucks retail locations. In doing so, barista discretion was eliminated, and the amount of milk in each latte was standardized:

> [T]he baristas were [previously] pouring millions of dollars of leftover milk down the drain. As store managers for the first time

began thinking about how to operate more efficiently, an idea emerged.  It was simple, obvious, and made everyone wonder why no one had thought of it before:  <u>They could put etched lines in the steaming pitchers so that the baristas would know exactly how much milk to use for each size drink.</u>  Before, they just guessed.  "The celebration of that line in the halls of Starbucks has become a metaphor," says Schultz.  "How many other lines can we find?  We've found a lot because no one was ever looking.  The people who have found those lines have become part of the folklore."

*See* http://www.bloomberg.com/news/articles/2009-08-06/starbucks-howard-schultz-vs-dot-howard-schultz (emphasis added).

32.     Simply put, milk is an expensive ingredient.  As reported by ABC News in a piece entitled "Record Milk Price Squeezing Starbucks," "CEO Howard Schultz told reporters earlier this week, following the company's annual meeting in Seattle:  'I am concerned about dairy [prices], both domestically and around the world, and we are working feverishly with our suppliers.'"

33.     Accordingly, by etching "fill to" lines on its steaming pitchers and removing employee discretion, Starbucks was able to reduce its daily costs, and the company eventually made a soaring comeback.  Its stock went from a low of 3.92 on November 21, 2008 to 62.61 on October 23, 2015.

34.     In the process, however, Starbucks cut too much milk.  Stated otherwise, when a standard recipe is used to create a drink that is purportedly 16 fluid ounces, the resulting beverage should in fact be 16 fluid ounces.  In connection with these cost-saving measures, Starbucks knew that the etched "fill to" lines in its steaming pitchers resulted in underfilled beverages.  Yet Starbucks continued to advertise its Tall beverages as "12 fl. oz.," its Grande beverages as "16 fl. oz.," and its Venti beverages as "20 fl. oz."

## <u>CLASS REPRESENTATION ALLEGATIONS</u>

35.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased a Starbucks Latte (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

36.     Plaintiffs Strumlauf and Robles also seek to represent a subclass of all Class members who purchased a Starbucks Latte in California (the "California Subclass").

37.     Plaintiff Crittenden also seeks to represent a subclass of all Class members who purchased a Starbucks Latte in New York (the "New York Subclass").

38.     Plaintiff Crittenden also seeks to represent a subclass of all Class members who purchased a Starbucks Latte in Florida (the "Florida Subclass").

39.     Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclasses number in the millions.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third party retailers and vendors.

40.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:  whether Starbucks Lattes are underfilled; whether Defendant warranted that Starbucks Lattes contained a specific "fl. oz." measurement for each size; whether Defendant breached these warranties; and whether Defendant committed statutory and common law fraud by doing so.

41.     The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs purchased Starbucks Lattes in reliance on the representations and warranties described above and suffered a loss as a result of that purchase.

42.     Plaintiffs are adequate representatives of the Class and Subclasses because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

43.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class and members of the Subclasses.  Each individual Class

member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Breach Of Express Warranty

44.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

45.     Plaintiffs bring this claim individually and on behalf of the proposed Class and Subclasses against Defendant.

46.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that Starbucks Lattes contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, and "20 fl. oz." for a Venti.

47.     In fact, Starbucks Lattes are not fit for such purposes because each of these express warranties are false.  Starbucks Lattes are underfilled.  A Tall does not contain 12 fluid ounces, a Grande does not contain 16 fluid ounces, and a Venti does not contain 20 fluid ounces.

48.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and Class members have been injured and harmed because:  (a) they would not have purchased Starbucks Lattes on the same terms if the true facts were known concerning the Lattes' quantity; (b) they paid a price premium for Starbucks Lattes due to Defendant's promises that its Lattes contained "12 fl. oz.," "16 fl. oz.," and "20 fl. oz.," respectively; and (c) Starbucks Lattes did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## COUNT II

**Violation Of California's Consumers Legal Remedies Act,**

**California Civil Code §§ 1750, *et seq.***

49.     Plaintiffs Strumlauf and Robles hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

50.     Plaintiffs Strumlauf and Robles bring this claim individually and on behalf of the proposed California Subclass against Defendant.

51.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

52.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

53.     Defendant violated this provision by misrepresenting that Starbucks Lattes contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, and "20 fl. oz." for a Venti.

54.     Plaintiffs and the California Subclass suffered injuries caused by Defendant because:  (a) they would not have purchased Starbucks Lattes on the same terms if the true facts were known concerning the Lattes' quantity; (b) they paid a price premium for Starbucks Lattes due to Defendant's promises that its Lattes contained "12 fl. oz.," "16 fl. oz.," and "20 fl. oz.," respectively; and (c) Starbucks Lattes did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

55.     On or about January 29, 2016, prior to filing this action, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a).  Plaintiff Robles sent Starbucks a letter via certified mail, return receipt requested, advising Starbucks that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff Robles' letter is attached hereto as Exhibit A.

56.     Wherefore, Plaintiffs Strumlauf and Robles seek damages and restitution for this violation of the CLRA.

## COUNT III

### Violation Of California's Unfair Competition Law,

### California Business & Professions Code §§ 17200, *et seq.*

57.     Plaintiffs Strumlauf and Robles hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

58.     Plaintiffs Strumlauf and Robles bring this claim individually and on behalf of the proposed California Subclass against Defendant.

59.     Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

60.     Defendant's misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA as described herein; the FAL as described herein; and Cal. Com. Code § 2607.

61.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

62.     Defendant violated the "fraudulent" prong of the UCL by making misrepresentations about Starbucks Lattes, as described herein.

63.     Plaintiffs Strumlauf and Robles and the California Subclass lost money or property as a result of Defendant's UCL violations because:  (a) they would not have purchased Starbucks Lattes on the same terms if the true facts were known concerning the Lattes' quantity; (b) they paid a price premium for Starbucks Lattes due to Defendant's promises that its Lattes contained "12 fl. oz.," "16 fl. oz.," and "20 fl. oz.," respectively; and (c) Starbucks Lattes did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

**COUNT IV**

**Violation Of California's False Advertising Law,**

**California Business & Professions Code §§ 17500,** *et seq.*

64.     Plaintiffs Strumlauf and Robles hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

65.     Plaintiffs Strumlauf and Robles bring this claim individually and on behalf of the proposed California Subclass against Defendant.

66.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

67.     Defendant committed acts of false advertising, as defined by § 17500, by misrepresenting that Starbucks Lattes contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, and "20 fl. oz." for a Venti.

68.     Defendant knew or should have known, through the exercise of reasonable care that its representations about Starbucks Lattes were untrue and misleading.

69.     Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

70.     Plaintiffs Strumlauf and Robles and the California Subclass lost money or property as a result of Defendant's FAL violations because:  (a) they would not have purchased Starbucks Lattes on the same terms if the true facts were known concerning the Lattes' quantity; (b) they paid a price premium for Starbucks Lattes due to Defendant's promises that its Lattes contained "12 fl. oz.," "16 fl. oz.," and "20 fl. oz.," respectively; and (c) Starbucks Lattes did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## COUNT V

### Violation Of New York General Business Law § 349

71.     Plaintiff Crittenden hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

72.     Plaintiff Crittenden brings this claim individually and on behalf of the proposed New York Class against Defendant.

73.     New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

74.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York General Business Law § 349.

75.     Plaintiff Crittenden and members of the New York Subclass are consumers who purchased products from Defendant for their personal use.

76.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that Starbucks Lattes contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, and "20 fl. oz." for a Venti.

77.     The foregoing deceptive acts and practices were directed at consumers.

78.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quantity of Starbucks Lattes to induce consumers to purchase same.

79.     By reason of this conduct, Defendant has engaged and continues to engage in deceptive conduct in violation of the New York General Business Law.

80.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Crittenden and members of the New York Subclass have sustained from having paid for and consumed Defendant's products.

81.     As a result of Defendant's violations, Plaintiff Crittenden and members of the New York Subclass have suffered damages because: (a) they would not have purchased Starbucks Lattes on the same terms if the true facts were known concerning the Lattes' quantity; (b) they paid a

1  price premium for Starbucks Lattes due to Defendant's promises that its Lattes contained "12 fl.

2  oz.," "16 fl. oz.," and "20 fl. oz.," respectively; and (c) Starbucks Lattes did not have the

3  characteristics, ingredients, uses, benefits, or quantities as promised.

4       82.     On behalf of herself and other members of the New York Subclass, Plaintiff

5  Crittenden seeks to recover her actual damages or fifty dollars, whichever is greater, three times

6  actual damages, and reasonable attorneys' fees.

7  **COUNT VI**

8  **Violation Of New York General Business Law § 350**

9       83.     Plaintiff Crittenden hereby incorporates by reference the allegations contained in all

10  preceding paragraphs of this complaint.

11       84.     Plaintiff Crittenden brings this claim individually and on behalf of the proposed

12  New York Class against Defendant.

13       85.     New York General Business Law § 350 prohibits false advertising in the conduct of

14  any business, trade, or commerce.

15       86.     Pursuant to said statute, false advertising is defined as "advertising, including

16  labeling, of a commodity … if such advertising is misleading in a material respect."

17       87.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that

18  is deceptive or misleading in a material way which constitutes false advertising in violation of

19  Section 350 of the New York General Business Law.

20       88.     Defendant's false, misleading, and deceptive statements and representations of fact

21  were and are directed to consumers.

22       89.     Defendant's false, misleading, and deceptive statements and representations of fact

23  were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

24       90.     Defendant's false, misleading, and deceptive statements and representations of fact

25  have resulted in consumer injury or harm to the public interest.

26       91.     As a result of Defendant's false, misleading, and deceptive statements and

27  representations of fact, Plaintiff Crittenden and the New York Subclass have suffered and continue

28  to suffer economic injury.

92.     As a result of Defendant's violations, Plaintiff Crittenden and members of the New York Subclass have suffered damages due to said violation because:  (a) they would not have purchased Starbucks Lattes on the same terms if the true facts were known concerning the Lattes' quantity; (b) they paid a price premium for Starbucks Lattes due to Defendant's promises that its Lattes contained "12 fl. oz.," "16 fl. oz.," and "20 fl. oz.," respectively; and (c) Starbucks Lattes did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

93.     On behalf of herself and other members of the New York Subclass, Plaintiff Crittenden seeks to recover her actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

<u>**COUNT VII**</u>

**Violation Of Florida's Deceptive And Unfair Trade Practices Act**

94.     Plaintiff Crittenden hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

95.     Plaintiff Crittenden brings this claim individually and on behalf of the proposed Florida Subclass against Defendant.

96.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* (the "Act").  The express purpose of the Act is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §§ 501.202(2).

97.     Plaintiff Crittenden and members of the Florida Subclass are "consumers" within the meaning of Fla. Stat. §§ 501.203(7).

98.     Defendant was engaged in "trade or commerce" as defined by Fla. Stat. §§ 501.203(8).

99.     The sale of Starbucks Lattes constituted "consumer transactions" within the scope of Fla. Stat. §§ 501.201 to 501.213.

100.    Fla. Stat. §§ 501.204(1) declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

101.    Defendant has violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.  Specifically, Defendant misrepresented that Starbucks Lattes contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, and "20 fl. oz." for a Venti.

102.    Defendant's unfair and deceptive practices are likely to mislead – and have misled – Plaintiff Crittenden and Florida Subclass members acting reasonably under the circumstances, and violates Fla. Stat. §§ 501.204.

103.    Defendant's misrepresentations and material omissions impact the public interest because Plaintiff Crittenden and the Florida Subclass were injured in exactly the same way as thousands of others purchasing Starbucks Lattes as a result of Defendants' generalized course of deception.

104.    Plaintiff Crittenden and the Florida Subclass have suffered damages because:  (a) they would not have purchased Starbucks Lattes on the same terms if the true facts were known concerning the Lattes' quantity; (b) they paid a price premium for Starbucks Lattes due to Defendant's promises that its Lattes contained "12 fl. oz.," "16 fl. oz.," and "20 fl. oz.," respectively; and (c) Starbucks Lattes did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

105.    The damages suffered by Plaintiff Crittenden and the Florida Subclass were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant, as more fully described herein.

106.    Pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff Crittenden and the Florida Subclass seek to recover their actual damages, reasonable attorneys' fees, and costs.

## COUNT VIII

### Fraud

107.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

108.    Plaintiffs bring this claim individually and on behalf of the proposed Class and Subclasses against Defendant.

109.    As discussed above, Defendant provided Plaintiffs and Class members with false or misleading material information and failed to disclose material facts about Starbucks Lattes, including but not limited to the fact that they contained "12 fl. oz." for a Tall, "16 fl. oz." for a Grande, and "20 fl. oz." for a Venti.

110.    The misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase Starbucks Lattes.

111.    The fraudulent actions of Defendant caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.    For an order certifying the nationwide Class and the Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel to represent members of the Class and Subclasses;

b.    For an order declaring the Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclasses on all counts asserted herein;

d.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

1    e.    For prejudgment interest on all amounts awarded;

2    f.    For an order of restitution and all other forms of equitable monetary relief; and

3    g.    For an order awarding Plaintiffs, the Class, and the Subclasses their reasonable

4    attorneys' fees and expenses and costs of suit.

5    **<u>DEMAND FOR TRIAL BY JURY</u>**

6    Plaintiffs demand a trial by jury of all issues so triable.

7

8    Dated: September 16, 2016                Respectfully submitted,

9                                            **BURSOR & FISHER, P.A.**

10                                           By:    /s/ *L. Timothy Fisher*
11                                                  L. Timothy Fisher

12                                           L. Timothy Fisher (State Bar No. 191626)
                                             1990 North California Boulevard, Suite 940
13                                           Walnut Creek, CA  94596
                                             Telephone: (925) 300-4455
14                                           Facsimile:  (925) 407-2700
                                             E-Mail: ltfisher@bursor.com

15                                           **BURSOR & FISHER, P.A.**
16                                           Scott A. Bursor (State Bar No. 276006)
                                             888 Seventh Avenue
17                                           New York, NY  10019
                                             Telephone: (212) 989-9113
18                                           Facsimile:  (212) 989-9163
                                             E-Mail: scott@bursor.com
19
                                             **MILITARY JUSTICE ATTORNEYS, PLLC**
20                                           Gerald Healy (admitted *pro hac vice*)
                                             219 Scott Street, PMB 315
21                                           Beaufort, SC  29902
                                             Telephone: (844) 334-5459
22                                           Facsimile:  (843) 645-6530
                                             E-Mail: gerry@militaryjusticeattorneys.com
23
                                             **MILITARY JUSTICE ATTORNEYS, PLLC**
24                                           John Hafemann (State Bar No. 238758)
                                             21 W. Park Avenue
25                                           Savannah, GA  31401
                                             Telephone: (844) 334-5459
26                                           Facsimile:  (843) 645-6530
                                             E-Mail: john@militaryjusticeattorneys.com
27
                                             **IMBESI LAW P.C.**
28                                           Brittany Weiner (*pro hac vice* motion forthcoming)

450 Seventh Avenue, Suite 1408
New York, New York 10123
Telephone: (646) 380-9555
Facsimile: (212) 658-9177
E-Mail: brittany@lawicm.com

*Attorneys for Plaintiffs*

I, Siera Strumlauf, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendant conducts a substantial amount of business in this District.

3.      While living in San Francisco, California, I purchased one or more Grande Starbucks Lattes for my household and my personal use.  I purchased a Grande Starbucks Latte after I read the representation that a Grande is "16 fl. oz." This representation was a substantial factor influencing my decision to purchase a Grande Starbucks Latte.  I would not have purchased a Grande Starbucks Latte if I had known that it was underfilled.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on February *29*, 2016 at San Francisco, California.

_____
SIERA STRUMLAUF

**EXHIBIT A**

# BURSOR & FISHER

P.A.

**1990 NORTH CALIFORNIA BLVD.**
**SUITE 940**
**WALNUT CREEK, CA 94596-7351**
**www.bursor.com**

**L. TIMOTHY FISHER**
Tel: **925.300.4455**
Fax: **925.407.2700**
**ltfisher@bursor.com**

January 29, 2016

***Via Certified Mail – Return Receipt Requested***

Starbucks Corporation
Attn: Legal Department
2401 Utah Avenue South
Seattle, WA 98134

*Re:*     *Demand Letter Pursuant to California Civil Code § 1782 and*
           *Violation of U.C.C. §§ 2-313, 2-314*

To Whom It May Concern:

          This letter serves as a preliminary notice and demand for corrective action by Starbucks Corporation ("Starbucks") pursuant to California's Consumers Legal Remedies Act, California Civil Code § 1782, on behalf of our client, Benjamin Robles, and a class of all similarly situated purchasers (the "Class") of Starbucks Caffè Latte, Flavored Latte, Skinny Latte, Skinny Flavored Latte, Vanilla Latte, and Skinny Vanilla Latte beverages (collectively, "Starbucks Lattes"). This letter also serves as notice pursuant to U.C.C. § 2-607(3)(A) concerning the breaches of express and implied warranties described herein.

          Starbucks Lattes are sold to consumers in the following sizes: Short (8 fl. oz.), Tall (12 fl. oz.), Grande (16 fl. oz.), and Venti (20 fl. oz.). However, instead of receiving a latte with these represented fluid ounces, Starbucks systematically underfills its lattes. In short, Starbucks is cheating purchasers by providing less fluid ounces in their lattes than they are paying for. *See* U.C.C. §§ 2-313, 2-314.

          By systematically underfilling Starbucks Lattes, Starbucks has violated and continues to violate numerous provisions of California law, including but not limited to subsections (a)(5) and (a)(9) of the Consumers Legal Remedies Act, Civil Code § 1770, which prohibits representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have, and advertising goods or services with intent not to sell them as advertised.

          In 2015, Mr. Robles purchased Starbucks Grande Caffè Lattes in San Diego and Carlsbad, California. On behalf of our client and the putative class, we hereby demand that Starbucks immediately (a) cease and desist from continuing to underfill Starbucks Lattes, and (b) make full restitution to all purchasers of its mislabeled lattes of all purchase money obtained from the sales thereof.

It is further demanded that Starbucks preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning recipes for Starbucks Lattes;

2.      All documents concerning the advertisement, marketing, or sale of Starbucks Lattes; and

3.      All communications with customers concerning complaints or comments concerning the practices described herein related to Starbucks Lattes.

This letter also serves as a thirty (30) day notice and demand requirement under California Civil Code § 1782 for damages.  Accordingly, should Starbucks fail to rectify the situation on a class-wide basis within 30 days of receipt of this letter, we will seek actual damages, plus punitive damages, interest, attorneys' fees and costs.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

L. Timothy Fisher

Gerald R. Healy
Gerald R. Healy (Jan 29, 2016)

Mr. Gerald R. Healy
Owner/Managing Partner
Military Justice Attorneys, PLLC
gerry@militaryjusticeattorneys.com