1 | **BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Joseph I. Marchese (admitted *pro hac vice*)
Neal J. Deckant (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com
jmarchese@bursor.com
ndeckant@bursor.com

**MILITARY JUSTICE ATTORNEYS, PLLC**
Gerald Healy (admitted *pro hac vice*)
219 Scott Street, PMB 315
Beaufort, SC 29902
Telephone: (844) 334-5459
Facsimile: (843) 645-6530
E-Mail: gerry@militaryjusticeattorneys.com

**IMBESI LAW, PC**
Brittany Weiner (admitted *pro hac vice*)
450 Seventh Avenue, Suite 1408
New York, NY 10123
Telephone: (646) 380-9555
Facsimile: (212) 658-9177

*Attorneys for Plaintiffs*
*[additional counsel listed on signature page]*

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Robert J. Guite (State Bar No. 244590)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
E-Mail: rguite@sheppardmullin.com

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Fred R. Puglisi (State Bar No. 121822)
Sascha Henry (State Bar No. 191914)
Robin A. Achen (State Bar No. 287033)
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Telephone: (213) 620-1780
Facsimile: (213) 620-1398
E-Mail: fpuglisi@sheppardmullin.com
shenry@sheppardmullin.com
rachen@sheppardmullin.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERA STRUMLAUF, BENJAMIN ROBLES, and BRITTANY CRITTENDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant. | Case No. 16-CV-01306-TEH<br><br>**SECOND UPDATED JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date: March 6, 2017<br>Time: 1:30 p.m.<br>Courtroom 12 – 19th Floor<br><br>The Honorable Thelton E. Henderson |

Siera Strumlauf, Benjamin Robles, and Brittany Crittenden (collectively, "Plaintiffs") and Starbucks Corporation ("Defendant" or "Starbucks"), the parties to the above-titled action (collectively, the "Parties"), submit this Second Updated Joint Case Management Conference Statement pursuant to the Court's December 9, 2016 Minute Order (Dkt. No. 69).

The Parties have already submitted an initial Joint Case Management Conference Statement on July 5, 2016 (Dkt. No. 36) and an Updated Joint Case Management Conference Statement on September 19, 2016 (Dkt. No. 50). Accordingly, the present Second Updated Joint Case Management Conference Statement will endeavor to discuss new developments that have occurred since September 2016.

**1.     Jurisdiction & Service**

The Parties agree that personal jurisdiction and venue are proper and Starbucks does not dispute the service of process.

**2.     Facts**

   **A.     Plaintiffs' Statement**

On March 16, 2016, Plaintiffs filed a class action complaint alleging that Starbucks Lattes are uniformly underfilled pursuant to a standardized recipe. Compl. ¶ 1. That is, Starbucks cheats purchasers by providing less fluid ounces in their Lattes than represented. Id. In fact, Starbucks Lattes are approximately 25% underfilled. *Id*. Several categories of evidence support these allegations.

First, Plaintiffs' counsel purchased and measured Starbucks Lattes at different stores, in different states, in different sizes, and in different flavors. *Id*. ¶ 21. The results were the same – each Latte was underfilled by approximately 25%. *Id.*

Second, Plaintiffs' counsel acquired several standardized pitchers designed by Starbucks and currently in use by Starbucks baristas to make Lattes. *Id*. ¶ 22. The etched "fill to" lines used to measure the steamed milk are plainly set too low. *Id*. By way of example, for a Grande beverage, the "fill to" line comprises less than 12 fluid ounces of milk. *Id.* After adding 2 shots of

espresso (2 fluid ounces), the resulting beverage measures less than 14 fluid ounces at most. *Id.* That falls well short of Starbucks' "16 fl. oz." representation. *Id*.

Third, the serving cups used by Starbucks simply do not accommodate the promised beverage sizes in fluid ounces, per the standardized recipe for Lattes. *Id*. ¶ 23. When filled to the brink, the serving cup used for Grande beverages holds exactly 16 fluid ounces (the same is true for the Tall cup, which holds exactly 12 fluid ounces, and the Venti cup, which holds exactly 20 fluid ounces). *Id*. However, Starbucks' recipe for its Grande Latte calls to fill the serving cup up to "1/4 inch below cup rim." *Id*. Thus, ¼" of empty cup space exists above ¼" of milk foam, which sits atop the fluid Latte. Accordingly, per the recipe, the Grande serving cup is just too small to hold a 16 fluid ounce latte. *Id.*

Moreover, the milk foam added to the top of Starbucks Lattes does not count toward the volume of its beverages. *Id*. ¶ 25. In the food science community, as well as in the weights and measures community, foam is not measured on a volumetric basis. *Id*. Rather, it is measured by mass. *Id*. When food scientists – and weights and measures inspectors – measure a liquid with foam, the industry-standard procedure is to let the foam dissipate or eliminate the foam, then measure the resulting liquid. *Id*. Under this analysis, milk foam cannot compensate for an otherwise underfilled Latte. *Id.*

This uniform underfilling is not an accident. In January 2008, Howard Schultz resumed his position as CEO of Starbucks after the company faced financial turmoil. *Id*. ¶ 26. Mr. Schultz led an effort to increase profitability by reducing costs. *Id.* A key component of this cost-cutting effort was to reduce the amount of milk used by baristas in Starbucks beverages. *Id*. ¶ 27. Accordingly, Starbucks implemented a system of placing standardized, etched lines into the pitchers. *Id.* In doing so, Starbucks eliminated barista discretion, and standardized the amount of milk in each latte. *Id*. Unfortunately for consumers, Starbucks cut too much milk. *Id.* ¶ 30. Stated otherwise, when a standard recipe is used to create a drink that is purportedly 16 fluid ounces, the resulting beverage should in fact be 16 fluid ounces. *Id*. In connection with these cost-saving measures, Starbucks knew that the etched "fill to" lines in its steaming pitchers resulted in under

1  filled beverages. *Id.* Yet Starbucks continued to advertise its Tall beverages as "12 fl. oz.," its
2  Grande beverages as "16 fl. oz.," and its Venti beverages as "20 fl. oz." *Id.*
3       Plaintiffs Strumlauf and Robles are both citizens of California and have their permanent
4  residences in California. *Id.* ¶¶ 5-6. Both Plaintiffs visited a Starbucks retail store in California,
5  where they purchased a Grande-sized (16 fl. oz.) Starbucks Latte, which cost approximately $3.95.
6  *Id.* Both Plaintiffs saw the representation on Starbucks' menu that its Grande-sized Starbucks
7  Lattes would be "16 fl. oz." prior to and at the time of purchase, and understood this to be a
8  representation and warranty that Starbucks Lattes would, in fact, contain 16 fluid ounces. Both
9  Plaintiffs relied on this representation and warranty in deciding to purchase their Starbucks Lattes,
10 and this representation and warranty was part of the basis of their bargain, in that they would not
11 have purchased Grande-sized Starbucks Lattes on the same terms if they had known that they were
12 not, in fact, 16 fluid ounces.
13      Lastly, Defendant circulated its portion of § 2, below, for the first time at 12:38 p.m. Pacific
14 on the day of filing. Thus, Plaintiffs will respond at the appropriate time (*e.g.*, in the context of a
15 motion for summary judgment).

### B. Starbucks Statement

Since the last conference, Starbucks has produced substantial documentation to the Plaintiffs (*see infra* section 8.B), obtained some documents from Plaintiffs, and deposed two of the three Plaintiffs. Based on the results thus far, Starbucks proposes that it complete the deposition of the third plaintiff and then file a motion for summary judgment for an early resolution of this case.

In their operative complaint, Plaintiffs claim that Starbucks underfills its lattes because Starbucks recipe calls for the lattes to be filled up to "¼ inch below cup rim" while the Tall cups hold "*exactly* 12 fluid ounces," the Grande cups hold "*exactly* 16 fluid ounces", and the Venti cups hold "*exactly* 20 fluid ounces." (First Amended Class Action Complaint ("FACAC"), ¶ 27.)

Starbucks has produced documentation showing that Plaintiffs' assertion as to the capacity of the cups is inaccurate. The cups are designed to allow for space at the top of the cups so that the baristas may safely prepare and serve the beverages. For example, a Tall cup does not hold "*exactly* 12 fluid ounces" as Plaintiffs allege; rather it holds 13.49 fluid ounces when filled to the brim. An image from a portion of that document is shown here:

**Size, Dimensions and Weight:**

| Cup Size | Cup Height | | Brim Height | | Outer Cup Diameter (Top) | | Capacity to Brim | | Capacity to Brim Tolerance (+/-) | |
|---|---|---|---|---|---|---|---|---|---|---|
| | inch | mm | inch | mm | inch | mm | fl. oz | ml | fl. oz | ml |
| Tasting: 4 oz (119 ml) | 2.39 | 60.8 | 0.10 | 2.41 | 2.46 | 62.6 | 3.93 | 116 | 0.05 | 1.5 |
| Short: 8 oz (237 ml) | 3.70 | 94.0 | 0.11 | 2.92 | 3.15 | 80.0 | 9.28 | 274 | 0.10 | 3.0 |
| Tall: 12 oz (355 ml) | 4.54 | 115.4 | 0.13 | 3.43 | 3.34 | 85.0 | 13.49 | 399 | 0.10 | 3.0 |
| Tall 12 oz (355ml) (squat) | 4.38 | 111.3 | 0.13 | 3.43 | 3.54 | 90.0 | 14.3 | 421 | 0.10 | 3.0 |
| Grande: 16 oz (473 ml) | 5.33 | 135.4 | 0.13 | 3.43 | 3.54 | 90.0 | 17.41 | 515 | 0.10 | 3.0 |
| Venti: 20 oz (590 ml) | 6.42 | 163.1 | 0.13 | 3.43 | 3.54 | 90.0 | 21.67 | 641 | 0.10 | 3.0 |

Plaintiffs also contend that Starbucks recipe calls for ¼ inch of milk foam and that the "milk foam added to the top of Starbucks Lattes does not count toward the volume of its beverages," according to the food science and weights and measures communities. (FACAC, ¶¶ 16 and 29.) Two plaintiffs have now been deposed and admitted two important facts. First, they conceded that they are not members of the food science or weights and measures communities, thus demonstrating that they were not relying on those standards. Second, they readily admitted that a latte consists of three elements: espresso, steamed milk *and milk foam.* The latter admission is fatal. As in *Forouzesh v. Starbucks Corp.* and *Galanis v. Starbucks Corp.,* where a reasonable consumer is not deceived by ordering iced tea when a portion of the beverage contains ice that comprises the stated fluid ounces, neither is a consumer deceived when ordering a latte which admittedly contains foam that comprises the stated fluid ounces. *See, e.g.*, *Forouzesh v. Starbucks*

*Corp.*, 2016 U.S. Dist. LEXIS 111701 (C.D. Cal. Aug. 19, 2016) ("the Court has no difficulty concluding that a reasonable consumer would not be deceived into thinking that when they order an iced tea, that the drink they receive will include both ice and tea and that for a given size cup, some portion of the drink will be ice rather than whatever liquid beverage the consumer ordered"); *Galanis v. Starbucks Corp.*, 2016 U.S. Dist. LEXIS 142380 (N.D. Ill. Oct. 14, 2016) ("a reasonable consumer ordering an *iced* tea would expect to receive the advertised amount of the beverage, which is, as its name plainly states, comprised of both ice and tea.").

Discovery has also revealed that all Plaintiffs rely on National Institute of Standards and Technology Handbook 133 (2016) to support their claims. Assuming for argument's sake only that the handbook applies to made-to-order, hot beverages in Starbucks cafés, the handbook permits for substantial variation that would allow for foam, safety space and some amount of human error. (PLFS_0000305.) For example, the handbook allows a variation of .5 fluid ounces and .63 fluid ounces for the beverages sizes alleged in the operative complaint. (PLFS_0000441.)

Lastly, the depositions of two of the Plaintiffs have also uncovered that neither one has viable claims subject to class treatment. Neither plaintiff photographed their lattes or kept any physical evidence of any type that he or she received an underfilled latte. Plaintiff Strumlauf never opened the lid on any latte she purchased from Starbucks, and thus, cannot testify that she observed receiving an underfilled latte. Plaintiff Robles testified that he did remove the lid once and observed his latte to be underfilled by 1 1/8 inches. At best, Plaintiff Robles experienced an unfortunate human error on that purchase, but did not experience so-called uniform underfilling by ½ inch (¼ inch for safety and ¼ inch for foam called for in the recipe).

### 3. **Legal Issues**

#### A. **Plaintiffs' Statement**

Plaintiffs assert claims on behalf of themselves and a nationwide class of purchasers of Starbucks Lattes, for breach of express warranty, violation of the California Consumer Legal

SECOND UPDATED JOINT CASE MANAGEMENT STATEMENT 5
CASE NO. 16-CV-01306-TEH

Remedies Act ("CLRA"), violation of the California Unfair Competition Law ("UCL"), violation of the California False Advertising Law ("FAL"), and fraud.[1]

**B.    Starbucks Statement**

Starbucks contends that Plaintiffs cannot prevail on their claims because the individual, hand-crafted beverages served at Starbucks cafés meet the reasonable expectations of consumers. Customers receive what they order, including lattes that contain, espresso, steamed milk and milk foam (or they can specific what they wish to receive if that differs from the customary preparation of their beverages) in the correctly-sized cups. Customers know they can "make it yours" by, among other things, specifying the flavors, milk, and how it is prepared and that Starbucks will "make it right" if they are not satisfied with any beverage. Starbucks contends that Plaintiffs have no evidence that they were deceived or that they received an underfilled latte in the manner alleged in the operative complaint. Accordingly, Plaintiffs lack standing and cannot present any evidence of harm; nor can they adequately represent a putative class given that what they experienced is not typical of the allegations in the operative complaint.

**4.    Motions**

**A.    Plaintiffs' Statement**

Plaintiffs anticipate filing a motion for class certification, and may also file a motion for summary judgment.

On October 13, 2016, at Plaintiffs' request, the Court convened a Telephonic Discovery Hearing to discuss three issues: (i) the entry of a protective order, (ii) setting deadlines in connection with Starbucks' production of documents, and (iii) the date range for which Starbucks would produce sales data for the lattes at issue. During the Hearing, the Court ordered that the Parties shall enter into a two-tiered protective order, and that Starbucks shall begin its first rolling production of documents by November 10, 2016. The Parties were also able to reach a compromise regarding the date range for the production of Starbucks' sales data. *See* Dkt. No. 64.

---

[1] Plaintiffs' proposed amended complaint with Ms. Crittenden also asserts claims for: (i) violations of New York's General Business Law § 349; (ii) violations of New York's General Business Law § 350; and (iii) violations of Florida's Deceptive and Unfair Trade Practices Act.

On February 1, 2017, at the request of Plaintiffs, the Parties convened a second Telephonic Discovery Hearing with the Court to discuss the entry of a protocol for the production of Electronically Stored Information ("ESI"), which involved a discussion of Starbucks' refusal to run keyword searches of the e-mail accounts of its employees for responsive ESI. In its subsequent Order, the Court denied Plaintiffs' request to compel Starbucks to enter into an ESI protocol, but instructed the parties to "meet and confer regarding e-mail search terms and production." The Court also noted that "[a] formal discovery motion may be filed in the event an agreement is not reached." *Id.* The Parties' efforts to negotiate an e-mail search is discussed below. *See infra* § 8 (Discovery).

### B. Starbucks Statement

Starbucks intends to file motions for summary judgment and would oppose any motion for class certification. Starbucks is also considering a motion for leave to file an amended answer regarding claims subject to arbitration. If its conferral efforts with Plaintiffs' counsel prove unsuccessful, Starbucks may seek to compel responses to discovery requests and/or move for a protective order.

## 5. Amendment of Pleadings

### A. Plaintiffs' Statement

Upon the request of Plaintiff Crittenden, and without objection from Starbucks, the matter of *Crittenden v. Starbucks Corp.*, No. 16-cv-03496 (S.D.N.Y.) was transferred to this District on August 26, 2016 and subsequently related to this case by an Order entered on September 14, 2016. On September 16, 2016, Plaintiffs submitted a joint Stipulation and Proposed Order seeking leave for Plaintiffs to file an amended complaint including Ms. Crittenden's claims, pursuant to Rule 15(a)(2), which the Court granted on September 20, 2016 (Dkt. No. 51).

Plaintiffs' First Amended Class Action Complaint was filed on September 21, 2016 (Dkt. No. 52). Defendant filed its Answer to First Amended Class Action Complaint on October 4, 2016 (Dkt. No. 61).

**B. Starbucks Statement**

Starbucks is currently considering whether it will seek a stipulation or move for leave to file an amended answer given that it has discovered that some of the claims alleged in the operative complaint are subject to mandatory arbitration.

**6. Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f). The Parties have agreed to take responsible and necessary steps to preserve evidence relevant to the issues reasonably evidence in this action.

**7. Disclosures**

The Parties provided their initial disclosures on July 5, 2016.

**8. Discovery**

**A. Plaintiffs' Statement**

On June 20, 2016, Plaintiffs served an initial set of interrogatories and requests for production of documents on Starbucks by U.S. Mail and by e-mail.

Plaintiffs anticipate taking discovery on, *inter alia*, the following topics:

- The number and sale price of Starbucks Lattes sold during the class period;
- The number and identity of Starbucks' customers who purchased Starbucks Lattes during the class period;
- Starbucks' advertising and marketing of Starbucks Lattes, especially relating to the different sizes and characteristics of each variety of Starbucks Lattes.
- The equipment used by Starbucks employees to produce Starbucks Lattes prior to and during the class period;
- The standardized recipes used by Starbucks to produce Starbucks Lattes prior to and during the class period;
- Any analysis or study performed by Starbucks prior to the adoption of new equipment and/or procedures for producing Starbucks Lattes prior to and during the class period;

- Starbucks' practice of uniformly underfilling its Lattes;
- Starbucks' costs and expenses associated with producing each standardized variant of Starbucks Lattes; and
- Starbucks' revenue derived from sales of Starbucks Lattes prior to and during the class period.

On August 8, 2016, Starbucks responded to Plaintiffs' initial set of discovery requests by asserting a number of objections for each of Plaintiffs' requests. Since that time, counsel for the parties have been meeting and conferring in an attempt to conduct discovery efficiently and streamline the production of documents. To that end, Plaintiffs have agreed to revise a number of their requests and Starbucks has agreed to produce categories of documents. These conferral discussions are now largely complete, as of December 2, 2016.[2]

Defendant produced documents on November 10, 2016, December 2, 2016, and February 16, 2017. Plaintiffs anticipate receiving at least two further rounds of production from Defendant: (i) cost data regarding the lattes at issue (*i.e.*, the cost of goods sold), and (ii) resulting ESI from the search of the e-mail accounts of Starbucks' key employees, as discussed during the Parties' February 1, 2017 Telephonic Discovery Hearing. *See supra* § 4 (Motions).

In connection with the above-referenced ESI search of Starbucks' e-mail accounts, the Parties convened a meet-and-confer conference call on February 9, 2017 to discuss (i) which e-mail accounts of Starbucks' employees shall be searched, and (ii) the scope and purpose of these searches. Subsequently, on February 21, 2017, Plaintiffs circulated a proposed list of seven targeted ESI search terms. Plaintiffs are currently awaiting Defendant's response to their proposal, but are mindful of the Court's instruction that "[a] formal discovery motion may be filed in the event an agreement is not reached."

Starbucks served requests for production on October 5, 2016, December 20, 2016, and February 15, 2017. In connection with these requests, Plaintiffs produced 520 pages of documents on November 21, 2016. Additionally, Starbucks took the deposition of Plaintiff Benjamin Robles

---

[2] Plaintiffs also served two additional requests for production on February 15, 2017. Starbucks' responses to those requests are due on March 17, 2017

on January 26, 2017, and the deposition of Plaintiff Siera Strumlauf on February 13, 2017. Plaintiffs intend to notice depositions of Starbucks' employees shortly after the receipt of Starbucks' production of ESI from the search of its e-mail accounts. *See supra*.

**B.     Starbucks Statement**

As Plaintiffs noted, they produced 520 pages of documents in response to Starbucks requests for production. In addition, Starbucks inspected the pitchers referenced in the operative complaint that Plaintiffs' counsel purchased through eBay and from a Starbucks barista.

Starbucks deposed Plaintiff Benjamin Robles on January 26, 2017 and Plaintiff Siera Strumlauf on February 13, 2017. Starbucks did not complete the deposition of Plaintiff Strumlauf as it became aware during her deposition that some or all of her claims may be subject to mandatory arbitration. Starbucks counsel requested that Plaintiffs' counsel agree not to assert that the completion of her deposition evidenced a waiver of Starbucks ability to compel arbitration. Plaintiffs' counsel declined to agree and, accordingly, Starbucks suspended the deposition.

Starbucks has produced thousands of pages of documents and electronic information, including sales information for all hot lattes and mochas during the class period, menu boards, advertisements, beverage resource manuals, recipe cards, and technical specifications for pertinent supplies and machines.

Starbucks anticipates conducting the following additional discovery:

• Conduct the deposition of Brittany Crittenden about her allegations and other related information.

• Conduct written discovery regarding how Plaintiffs' counsel acquired property from Starbucks.

• Conduct written discovery regarding the grounds for class certification.

• Conduct written discovery to address the allegations in the operative complaint.

• Conduct the depositions of any experts whose declarations Plaintiffs offer to support their motion for class certification.

1    • Conduct the depositions of any experts whose declarations or reports Plaintiffs offer to
2    support their claims or to rebut Starbucks experts.

Starbucks has requested available dates for the deposition of Plaintiff Crittenden several times but available dates have not yet been provided. On February 24, Plaintiffs' counsel indicated that they were having difficulty contacting Ms. Crittenden. Starbucks will continue to work with Plaintiffs' counsel and hope that counsel will be able to provide a deposition date. Starbucks counsel has agreed to travel to the district where Ms. Crittenden resides in Florida for the deposition. If Ms. Crittenden is not available such that her deposition can be timely completed, Starbucks may seek to bring separate motions for summary judgment so that resolution of the case is not delayed.

Finally, Starbucks continues to meet and confer with Plaintiffs' counsel regarding responses to its interrogatories and requests for production. If satisfactory responses are not provided it may file a motion to compel. Similarly, if conferral efforts are unsuccessful regarding the search terms for electronically stored information, Starbucks may move for the entry of a protective order.

**9.    Class Actions**

   **A.    Plaintiffs' Statement**

Plaintiffs propose the following schedule for the class certification motion: (1) Plaintiffs file their motion for class certification by August 3, 2017 and make experts and declarants available for deposition within two weeks thereafter; (2) Starbucks files its opposition to class certification by September 7, 2017; and (3) Plaintiffs file their reply in support of class certification by October 5, 2017. If depositions of experts and declarants are not completed within three weeks after Plaintiffs file the motion, then Starbucks would receive an extension of time to submit its opposition such that there are two weeks between the conclusion of the declarant and/or expert depositions and the deadline for filing the opposition.

   **B.    Starbucks Statement**

Starbucks intends to bring a motion for summary judgment and does not agree that a briefing schedule for a motion for class certification should be set at this time.

**10. Related Cases**

    **A. Plaintiffs' Statement**

*Crittenden v. Starbucks Corp.*, Case No. 3:16-cv-05049 (N.D. Cal.) brings similar allegations to Plaintiffs' Complaint.

For the same reasons discussed at § 8.A of the September 19, 2016 First Updated Joint Case Management Conference Statement, Plaintiffs believe that the *Pincus* / *Galanis* and *Forouzesh* matters are dissimilar and not related to the *Strumlauf* or *Crittenden* matters. That is, the *Pincus* / *Galanis* and *Forouzesh* matters concern different beverages (*i.e.*, iced drinks), and have different theories of liability (*i.e.*, the drinks are allegedly underfilled because they contain ice). Indeed, the U.S. Judicial Panel on Multidistrict Litigation ("JPML") declined to consolidate these cases with the *Strumlauf* and *Crittenden* matters.[3]

    **B. Starbucks Statement**

Two additional putative class actions alleging that Starbucks beverages are underfilled have been dismissed. *Forouzesh v. Starbucks Corp.*, 2016 U.S. Dist. LEXIS 111701 (C.D. Cal. Aug. 19, 2016); *Galanis v. Starbucks Corp.*, 2016 U.S. Dist. LEXIS 142380 (N.D. Ill. Oct. 14, 2016). Plaintiff Forouzesh filed a Notice of Appeal on September 16, 2016. *See Forouzesh v. Starbucks Corporation*, Case No. 16-56355 (9th Cir.). Plaintiff Galanis did not file a Notice of Appeal and the time to do so has now passed.

---

[3] *See* Order Denying Transfer, *In re: Starbucks Corporation Marketing & Sales Practices Litigation*, MDL No. 2725 (J.P.M.L. Aug 5, 2016) ("Although the actions commonly allege that Starbucks misrepresents the quantity of fluid ounces in made-to-order beverages sold in Starbucks stores, the actions concern two distinct categories of Starbucks beverages – beverages made with steamed milk (latte and mocha beverages) and beverages made with ice – which involve different factual theories of liability. Two actions allege that latte and mocha beverages are underfilled based on recipes and equipment unique to beverages made with steamed milk, and two actions allege that cold drinks are underfilled based on practices unique to beverages made with ice. These factual dissimilarities likely will result in discovery, pretrial motions, and class certification issues that are not shared across the beverage categories.").

11. **Relief**

Plaintiffs seek damages, restitution, disgorgement, attorneys' fees, and/or monetary relief in excess of $5,000,000. Specifically, Plaintiffs seek statutory remedies, if available, for violation of the CLRA, UCL, and FAL.[4]

Starbucks denies any liability and denies that any relief is appropriate.

12. **Settlement and ADR**

    A. **Plaintiffs' Statement**

Having reviewed Defendant's document production, and now that 2 of the 3 named Plaintiffs have been deposed, Plaintiffs believe that there is information to make a reasonable analysis concerning resolution of the case. Accordingly, Plaintiffs would like to begin settlement negotiations at this juncture, and have informed Defendant's lawyers of this intention on February 24, 2017. Specifically, Plaintiffs proposed that a private mediation may be fruitful. Defendant's lawyers represented that they would confer with their client regarding early resolution.

The Parties do not believe that this case is suitable for reference to binding arbitration or a special master.

    B. **Starbucks Statement**

On February 24, Plaintiffs' counsel first reported that he believed settlement discussions in the form of a private mediation may be productive at this time. Starbucks is presently considering the proposal.

13. **Consent to Magistrate Judge for All Purposes**

The parties did not consent to proceed before a Magistrate Judge for all purposes.

14. **Other References**

The Parties do not believe that this case is suitable for reference to binding arbitration or a special master.

---

[4] Plaintiffs' proposed Amended Complaint also seeks damages, including statutory damages, for the claims for relief under New York's General Business Law §§ 349, 350.

**15. <u>Narrowing of Issues</u>**

The Parties are presently unaware of any stipulations or agreements that could narrow the issues at this time.

**16. <u>Expedited Trial Procedure</u>**

The Parties do not believe that this case is suitable for the Expedited Trial Procedure of General Order 64, Attachment A.

**17. <u>Scheduling</u>**

**A. Plaintiffs' Statement**

Plaintiffs believe it is too premature to set a trial date at this time. Plaintiffs propose the following:

- Briefing on Plaintiffs' anticipated motion for class certification is detailed in Section 5 above, *see supra*.
- Substantial completion of document production by March 31, 2017.
- Completion of fact discovery on June 29, 2017.
- Parties to exchange Rule 26 affirmative expert disclosures and reports within 60 days after a ruling on class certification.
- Parties to exchange responding expert reports within 60 days after the Parties serve affirmative expert disclosures.
- Completion of expert discovery within 30 days after the Parties serve responding expert reports.
- Deadline to file dispositive motions TBD.

**B. Starbucks Statement**

Starbucks intends to file a motion for summary judgment. In light of the anticipated dispositive motion, Starbucks believes that it is premature to set deadlines and suggests that a further Case Management Conference be held within 30 days of a ruling on the motion for summary judgment if any claims remain.

**18. Trial**

The Parties request a jury trial. Though it is difficult to estimate the length of the trial at this stage, Plaintiffs preliminarily anticipate that the trial will last between 2-3 weeks. Starbucks anticipates that a trial, if any, will last between 5 and 7 court days.

Starbucks also demands a jury trial on all appropriate issues.

**19. Disclosure of Non-Party Interested Entities or Persons**

Starbucks filed its Certificate of Interested Entities on March 25, 2016. Starbucks states that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

1. Siera Strumlauf, Plaintiff
2. Benjamin Robles, Plaintiff
3. Brittany Crittenden, Plaintiff
4. Starbucks Corporation, Defendant

Plaintiffs filed their Certificate of Interested Entities on June 24, 2016. Plaintiffs state that "other than the named parties and members of the proposed class, there is no such interest to report."

**20. Professional Conduct**

The Parties and their counsel have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. Other**

None at this time.

| | | |
|---|---|---|
| 1 | Dated: February 27, 2017 | Respectfully submitted, |
| 2 | | **BURSOR & FISHER, P.A.** |
| 3 | | |
| 4 | | By: _s/L. Timothy Fisher_<br>　　L. Timothy Fisher |
| 5 | | L. Timothy Fisher (State Bar No. 191626)<br>1990 North California Boulevard, Suite 940 |
| 6 | | Walnut Creek, CA  94596<br>Telephone:  (925) 300-4455 |
| 7 | | Facsimile:   (925) 407-2700<br>E-Mail:  ltfisher@bursor.com |
| 8 | | |
| 9 | | **BURSOR & FISHER, P.A.**<br>Scott A. Bursor (State Bar No. 276006) |
| 10 | | 888 Seventh Avenue<br>New York, NY  10019 |
| 11 | | Telephone:  (212) 989-9113<br>Facsimile:   (212) 989-9163<br>E-Mail:  scott@bursor.com |
| 12 | | |
| 13 | | **MILITARY JUSTICE ATTORNEYS, PLLC**<br>Gerald Healy (*pro hac vice*) |
| 14 | | 219 Scott Street, PMB 315<br>Beaufort, SC  29902 |
| 15 | | Telephone: (844) 334-5459<br>Facsimile:  (843) 645-6530<br>E-Mail: gerry@mja.law |
| 16 | | |
| 17 | | **MILITARY JUSTICE ATTORNEYS, PLLC**<br>John Hafemann (State Bar No. 238758) |
| 18 | | 21 W. Park Avenue<br>Savannah, GA  31401 |
| 19 | | Telephone: (844) 334-5459<br>Facsimile:  (843) 645-6530<br>E-Mail: john@mja.law |
| 20 | | |
| 21 | | **IMBESI LAW, PC**<br>Brittany Weiner (admitted *pro hac vice*) |
| 22 | | 450 Seventh Avenue, Suite 1408<br>New York, NY  10123 |
| 23 | | Telephone: (646) 380-9555<br>Facsimile: (212) 658-9177 |
| 24 | | *Attorneys for Plaintiffs* |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

| | | |
|---|---|---|
| Dated: February 27, 2017 | | **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP** |

By: _____*s/ Robert J. Guite*_____
       Robert J. Guite

Robert J. Guite (State Bar No. 244590)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
E-Mail: rguite@sheppardmullin.com

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Fred R. Puglisi (State Bar No. 121822)
Sascha Henry (State Bar No. 191914)
Robin A. Achen (State Bar No. 287033)
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Telephone: (213) 620-1780
Facsimile: (213) 620-1398
E-Mail: fpuglisi@sheppardmullin.com
       shenry@sheppardmullin.com
       rachen@sheppardmullin.com

*Attorneys for Defendant*

## ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I hereby attest that all signatories listed above, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: February 27, 2017

                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                          By:    *s/Robert J. Guite*
                                  Robert J. Guite
                                  Attorneys for Defendant