SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ROBERT J. GUITE, Cal. Bar No. 244590
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:     415.434.3947

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
FRED R. PUGLISI, Cal. Bar No. 121822
SASCHA HENRY, Cal. Bar No. 191914
ABBY MEYER, Cal. Bar No. 294947
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:    213.620.1780
Facsimile:     213.620.1398
fpuglisi@sheppardmullin.com
shenry@sheppardmullin.com
ameyer@sheppardmullin.com

Attorneys for Defendant
Starbucks Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| SIERA STRUMLAUF, BENJAMIN ROBLES, BRITTANY CRITTENDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant. | Case No. 4:16-cv-1306-YGR<br><br>**DECLARATION OF WENDY LUBAHN** |

## DECLARATION OF WENDY LUBAHN

I, Wendy Lubahn, declare as follows:

1. I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

2. I have been employed by Starbucks Corporation ("Starbucks") since 2013. My title is senior manager, quality assurance and food safety for packaging. I have worked in the field of quality assurance for more than 40 years. One of my job responsibilities at Starbucks is to oversee the procurement of cups used for hot beverages, including lattes and mochas, in stores owned by Starbucks in the United States ("Hot Cups"). The only other positions I have held since beginning my employment at Starbucks was that I previously worked as a packaging and quality assurance manager and as manager of quality assurance and food safety packaging with responsibility for Hot Cups.

3. Attached hereto as Exhibits A and B are true and correct copies of documents which are called "toolkits" for the Hot Cups that have been used during the period of March 2012 to the present. The toolkits contain the performance requirements which suppliers must meet in order to supply Hot Cups to Starbucks. My job responsibilities include verifying, by audits and spot testing, that the Hot Cups suppliers meet the performance requirements.

4. Among the performance requirements in the Hot Cups toolkits are the sizes of the cups and the volume of the cups. Each of the cups has a capacity greater than 12, 16 or 20 fluid ounces. The capacity to the rim for a tall cup is 13.49 fluid ounces, a grande is 17.41 fluid ounces and a venti is 21.67 fluid ounces. Those specifications are set forth in a table in the toolkits contained on page 2 of Exhibit A and page 2 of Exhibit B. The performance requirements include an allowable tolerance of .10 fluid ounces for the cups.

5. I was involved with creating a methodology to measure the capacity of the Hot Cups. In addition, prior to March 2016, I personally measured the capacity of the tall, venti and grande Hot Cups. I have measured the capacity of the Hot Cups on numerous occasions, typically when a new supplier begins providing Hot Cups to Starbucks or an existing supplier places a new

1  machine in use, to confirm that the new machine produces cups that comply with the performance
2  requirements set forth in the toolkits.

3      6.  I have visited each of the seven facilities in the United States where all Hot Cups
4  used for Starbucks beverages are currently manufactured at least once since I began working at
5  Starbucks in 2013. At these visits, I review the machinery and the suppliers' compliance with
6  Starbucks performance requirements as set forth in the toolkits.

7      7.  Starbucks considers its Hot Cup toolkits, which contain product performance
8  requirements, tolerances and sourcing information, and its internal quality assurance protocols, to
9  be proprietary commercial information. Starbucks limits access to sourcing information, like the
10 toolkits, so that only management-level employees with a demonstrable business need can access
11 the information. Starbucks keeps its individual product sourcing information and its internal
12 quality assurance protocols confidential. Each page of the toolkit document identifies the
13 document as a "controlled document," meaning that they are only distributed as permitted by
14 Starbucks document control requirements. If this information were disclosed publicly, Starbucks
15 competitors could gain valuable insights into Starbucks procurement and sourcing practices. This
16 would allow competitors to gain an unfair advantage over Starbucks by, for example, adopting
17 Starbucks business methods without having incurred the cost of developing those methods.

18     I declare under penalty of perjury under the laws of the state of California that the
19 foregoing is true and correct.

20     Executed on this 3rd day of October, 2017, at Seattle, Washington.

_____
WENDY LUBAHN