# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SIERA STRUMLAUF, ET AL.,**<br><br>Plaintiffs**,**<br><br>vs.<br><br>**STARBUCKS CORPORATION,**<br><br>Defendant**.** | CASE NO. 16-cv-01306-YGR<br><br>**ORDER RE: SCOPE OF FIRST AMENDED COMPLAINT; GRANTING DEFENDANT LEAVE TO FILE SUR-REPLY; VACATING CLASS CERTIFICATION BRIEFING DEADLINES; GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUESTS FOR DISCOVERY**<br><br>Re: Dkt. Nos. 107, 115, 118 |

Now before the Court are the parties' supplemental briefs regarding the scope of plaintiffs' operative complaint. Also before the Court is the parties' joint discovery brief. The Court addresses each.

## I.  SUPPLEMENTAL BRIEFING

On November 7, 2017, the parties appeared before this Court to present their respective positions on the process for ruling on defendant's ripe motion for summary judgment in light of plaintiffs' filing of its motion for class certification which submitted evidence, effectively in opposition to the summary judgment motion. (Dkt. Nos. 112, 113.) During the hearing defendant argued that plaintiffs' evidence advanced two new theories which were not alleged in the First Amended Complaint ("FAC"), (Dkt. No. 52), namely that the sum of the (i) cold milk or (ii) hot milk and espresso plus other ingredients which make up a "Latte" is less than the promised volume of that beverage. Plaintiffs disagreed that the theories were not within the purview of the FAC. Supplemental briefing followed. (Dkt. Nos. 115, 118.)

Having carefully considered the pleadings, the hearing held on November 7, 2017, the supplemental briefs, and for the reasons set forth below, the Court finds as follows:

The scope of the FAC encompasses three theories: First, the cups used by Starbucks to

serve Lattes ("Hot Cups") hold "exactly" the promised beverage volume. (FAC ¶¶ 3, 27.) Second, "milk foam added to the top of Starbucks Lattes does not count toward the volume of its beverages." (*Id*. ¶ 29.) Third, "Starbucks Lattes are uniformly underfilled pursuant to a standardized recipe." (*Id*. ¶¶ 1, 2, 16–19.) The Court addresses each theory below.

### A. First Theory: Hot Cup Capacity

Plaintiffs effectively concede that they have insufficient evidence to support this theory by seeking to withdraw it. (Dkt. No. 115 at 2.) Accordingly, the Court is inclined to grant defendant's motion for summary judgment as to the Hot Cup capacity theory. Starbucks offers the declaration of Wendy Lubahn, a senior manager of quality assurance and food safety for packaging, who indicates that Starbucks requires its suppliers to manufacture Hot Cups with volume capacities which are at least 8–12% greater than the promised volume depending on the size of beverage ordered. (Dkt. No. 92-7, declaration of Wendy Lubahn ("Lubahn Decl.") ¶ 4, Exs. A, B.) Defendant also provides Starbucks' "Sourcing Toolkit" which specifies the "Mandatory Minimum Standard Requirements" for Hot Cups including "Size, Dimensions, and Weight" and "Capacity to Brim." The Sourcing Toolkit corroborates Lubahn's testimony that the capacity of a Hot Cup is greater than the promised beverage volume.[1] (*Id*.)

Plaintiffs' own expert corroborates Lubahn's declaration and contradicts plaintiffs' allegation that Hot Cups hold "exactly" the promised volume. (*See* FAC ¶¶ 3, 27.) More specifically, plaintiffs offer the expert opinion of Carol T. Hockert, a former Division Chief at the National Institute of Standards and Technology, Office of Weights and Measures. (Dkt. No. 106-

---

[1] Plaintiffs argue that Ms. Lubahn's declaration and supporting documents are (i) inadmissible hearsay under Fed. R. Evid. 801(c)(2), (ii) irrelevant under Fed. R. Evid. 401, and (iii) not based on personal knowledge pursuant to Fed. R. Evid. 602.

Plaintiffs do not persuade. First, the Sourcing Toolkit falls within the business record exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Second, the declaration and supporting documents are relevant to rebut plaintiff's allegation that the capacity of Hot Cups is exactly the promised volume. Third, Ms. Lubahn has personal knowledge of the Sourcing Toolkit and Hot Cup capacities through her work as senior manager of quality assurance and food safety for packaging. Specifically, Ms. Lubahn's responsibilities include overseeing procurement of cups used for hot beverages. (Lubahn Decl. ¶ 2.)

Plaintiffs also attempt to undermine Ms. Lubahn's declaration and supporting documents on the ground that the Sourcing Toolkit does not purport to measure "any actual hot serving cups," but merely conveys "manufacturing specifications" for suppliers. (Dkt No. 99 at 7-8.) However, plaintiffs offer no evidence that any actual Hot Cups fail to comply with the Mandatory Minimum Standard Requirements set forth in defendant's Sourcing Toolkit.

2

2, Declaration and Expert Report of Carol T. Hockert ("Hockert Rpt.").) Hockert opines that "given Plaintiff Robles' testimony that his Grande was underfilled to 1.125 inches below the rim, my measurements would indicate an underfilling of approximately 21.25%" relative to the promised volume. (*Id.* at III.D.) Hockert offers a similar opinion also based on portions of Crittenden's testimony. (*Id.*) However, Hockert's own analysis indicates that the *capacity* of Hot Cups is 14.5 fl. oz. for a Tall, 18.5 for a Grande, and 22.8 for a Venti beverage. (*Id.*) According to Hocker's findings, the capacity of Hot Cups is actually 14–20.8% greater than the promised volume depending on the size of beverage ordered.

Thus, summary judgment would be appropriate as to this theory. *See* Fed. R. Civ. Pro. 41(a)(1)(A)(i) ("plaintiff may dismiss an action without a court order by filing: (i) notice of dismissal *before* the opposing party serves . . . a motion for summary judgment (emphasis supplied)); *Pedrina v. Chun* 987 F.2d 608, 609 (9th Cir. 1993); *Hamilton v. Firestone Tire & Rubber Co., Inc.* 679 F.2d 143, 145 (9th Cir. 1982) (whether to allow dismissal rests in the district court's "sound discretion"); *see also Winterland Concessions Co. v. Smith*, 706 F.2d 793, 795 (7th Cir. 1983) (describing defendant's filing of a summary judgment motion as "the point of no return" after which plaintiffs may not unilaterally dismiss absent a court order);12 Charles Allan Wright, Arthur R. Miller, *et al.* § 2363 *Fed. Prac. & Proc. Civ.* § 3001 (3d ed. 2017) (explaining that a plaintiff may dismiss "only if the notice is filed before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs")

### B. Second Theory: Consumer Expectations Regarding Milk Foam

In support of their second theory which excludes milk foam from volumetric measurements, plaintiffs offer the declaration and expert report of Dr. J. Michael Dennis, Senior Vice President of the National Opinion Research Center at the University of Chicago. (Dkt. No 106-3, Declaration and Expert Report of J. Michael Dennis, Ph. D. ("Dennis Rpt.").) Based on an online survey which Dr. Dennis designed and conducted, Dr. Dennis opines that 70-80% of consumers expect that foam "is in addition to" the promised volume of a Latte. (*Id*. at ¶ 20.)

Dr. Dennis' report was filed in connection with plaintiffs' class certification motion one week after briefing on summary judgment was complete. Thus, defendant has had no opportunity

to respond to Dr. Dennis' survey. Accordingly, the Court **GRANTS** Starbucks leave to file a sur-reply which addresses Dr. Dennis' report by no later than **December 12, 2017**.

### C. Third Theory: Underfilling Pursuant to Standardized Recipe

Regarding plaintiffs' third theory, the FAC specifically defines a "Latte" as a "coffee drink made with espresso and *steamed* milk" and states that Lattes are "created by mixing *steamed milk* and espresso, which is then topped with a thin layer of milk foam." (*Id*. ¶¶ 12, 13 (emphasis supplied).) The FAC further alleges that Lattes "are created with 4 simple steps," the first of which is to "steam milk." (*Id*. ¶¶ 16-19.) To the extent that plaintiffs attempt to define a Latte as anything other than a coffee drink made with espresso and *steamed* milk, the attempt is deemed outside the scope of the FAC. Plaintiffs opposing a motion for summary judgment are not entitled to raise new grounds or theories for which they failed to provide the defendant fair notice. *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905, 908 (9th Cir. 2011) (prohibiting assertion of new factual theory). To the extent plaintiffs have offered evidence effectively in opposition to the motion for summary judgment on a theory of underfilling, with *steamed* milk, the Court **GRANTS** Starbucks leave to file a sur-reply by no later than **December 12, 2017**.

### D. Conclusion

For the reasons discussed above, the Court orders as follows:

1. Defendant may file a sur-reply by no later than **December 12, 2017**.
2. A hearing will be held on defendant's motion for summary judgment on **December 19, 2017,** in Courtroom 1 of the United States Courthouse located at 1301 Clay Street in Oakland, California.
3. All briefing deadlines and hearing dates with regard to plaintiffs' motion for class certification are **VACATED**.

## II. ADDITIONAL DISCOVERY

On November 3, 2017, the parties filed a joint discovery letter brief wherein plaintiffs raised "several deficiencies in Defendant's search for and production of responsive documents and information" with regard to Starbucks' 30(b)(6) designees, namely Wendy Lubahn, Lilia Tuero-Fricke, and Debbie Antonio. Having carefully considered the discovery letter brief, the arguments

4

of the parties, and the depositions of Starbucks' 30(b)(6) designees, the Court orders as follows:

1. Lubahn, Tuero-Fricke, and Antonio are **ORDERED** to search their filing cabinets for responsive documents. Starbucks is ordered to produce responsive documents to plaintiffs by **December 12, 2017**.
2. Starbucks is **ORDERED** to produce documents related to methodologies used by suppliers to measure Hot Cup capacity, to the extent that such documents exist and are in Starbucks' possession, by **December 12, 2017**.
3. Plaintiffs' requests to conduct additional depositions and reopen concluded depositions are **DENIED**.
4. Plaintiffs' request for production of "other possible recipe cards" for Lattes is **DENIED**.
5. Plaintiffs' request for production of documents related to "testing of the capacity of hot lattes" is **DENIED.**

This terminates Dkt. No. 107.

**IT IS SO ORDERED.**

Dated: November 28, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**