United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SIERA STRUMLAUF, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**STARBUCKS CORPORATION,**<br><br>Defendant**.** | CASE NO. 16-cv-01306-YGR<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 92, 100, 105, 106 |

Plaintiffs Siera Strumlauf, Benjamin Robles, and Brittany Crittenden bring this putative class action against defendant Starbucks Corporation ("Starbucks") alleging that defendant uniformly underfills its lattes[1] and mochas[2] (collectively "Lattes"). Plaintiffs allege eight causes of action, namely (i) breach of express warranty (all plaintiffs); (ii) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*., (iii) Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code §§ 17200, *et seq*., and (iv) False Advertising Law ("FAL"), Cal. Bus. Prof. Code §§ 17500, *et seq*.; (v) New York's General Business Law ("GBL") § 349 and (vi) § 350; (vii) Florida's Deceptive And Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.203(7), *et seq*.; and (viii) common law fraud. Strumlauf and Robles assert all California claims (Counts 2, 3, and 4) and Crittenden asserts the New York and Florida claims (Counts 5, 6, and 7).

---

[1] Lattes are hot beverages created by mixing steamed milk with espresso which are then topped with a layer of milk foam. (Dkt. No. 98, Undisputed Material Fact ("UMF") No. 1.)

[2] Mochas are prepared similarly to Lattes but additionally contain a semi-sweet chocolate-flavored "mocha sauce."

Now before the Court is defendant's motion for summary judgment as to all claims.[3] (Dkt. No. 92.) Also before the Court is plaintiffs' motion to strike paragraphs 13–15 of the declaration of Debra Antonio, (Dkt. No. 92-6, Declaration of Debra Antonio ("Antonio Decl.")), and paragraphs 4–5 of the declaration of Wendy Lubahn, (Dkt. No. 92-7, declaration of Wendy Lubahn ("Lubahn Decl.")), pursuant to Fed. R. Civ. Pro. 56(c)(4) and Fed. R. Evid. 602, 702 and 801. (Dkt. No. 100).[4] Having carefully considered the pleadings and fully-briefed motions, the hearings held on November 7, 2017, and December 19, 2017, and for the reasons set forth below, the Court **DENIES** plaintiffs' motion to strike and **GRANTS** defendant's motion for summary judgment.[5]

---

[3] Defendant has filed an administrative motion to seal certain portions of two documents which contain trade secrets and proprietary sourcing and performance requirements. (Dkt. No. 91.) Plaintiffs have also filed sealing motions which are significantly broader. (Dkt. Nos. 98, 114, 121.) The Court addresses each in a separate order.

[4] On November 7, 2017, the parties appeared before this Court to present their respective positions on the process for ruling on defendant's ripe motion for summary judgment in light of plaintiffs' filing of their then-new motion for class certification which submitted evidence, effectively in opposition to the summary judgment motion. (Dkt. Nos. 112, 113.) During the hearing defendant argued that plaintiffs' evidence advanced two new theories which were not alleged in the First Amended Complaint ("FAC"), (Dkt. No. 52), namely that the sum of the (i) cold milk or (ii) hot milk and espresso plus other ingredients which make up a "Latte" is less than the promised volume of that beverage. Plaintiffs disagreed that the theories were not within the purview of the FAC. Supplemental briefing followed. (Dkt. Nos. 115, 118.)

On November 28, 2017, the Court held that the scope of the FAC encompasses three theories. (Dkt. No. 119.) First, the cups used by Starbucks to serve Lattes ("Hot Cups") hold "exactly" the promised beverage volume. (FAC ¶¶ 3, 27.) Second, "milk foam added to the top of Starbucks Lattes does not count toward the volume of its beverages." (*Id*. ¶ 29.) Third, "Starbucks Lattes are uniformly underfilled pursuant to a standardized recipe." (*Id*. ¶¶ 1, 2, 16–19.) The Court further held that "to the extent that plaintiffs attempt to define a Latte as anything other than a coffee drink made with espresso and *steamed* milk, the attempt is deemed outside the scope of the FAC. (Dkt. No. 119.)

[5] Plaintiffs argue that the Court should defer considering Starbucks' motion for summary judgment to allow plaintiffs to continue taking fact and expert discovery. Under Rule 56(d), courts may "defer considering [a] motion [for summary judgment]" or "allow time to obtain affidavits or declarations or to take discovery" where the nonmoving party submits "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Emplrs. Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1129-30 (9th Cir. 2004). Here, plaintiffs fail to identify specifically such relevant information. Further, plaintiffs' reference to forthcoming

## I. BACKGROUND

Starbucks is a Washington corporation with its principal place of business in Seattle. (FAC ¶ 8.) Starbucks operates over 23,000 retail locations worldwide, more than half of which are located in the United States. (*Id.*) Plaintiffs are consumers who purchased Lattes at various Starbucks retail locations in the United States. (*Id.* ¶¶ 5-7.)

Lattes are hot beverages created by mixing steamed milk with espresso which are then topped with a thin layer of milk foam. (UMF No. 1.) Starbucks gives customers the option of specifying the type of milk (*e.g.*, skim, 2%, whole, almond, soy) and how much foam they want in their Latte. (Antonio Decl. ¶ 4.)

Starbucks' retail locations display menu boards which represent that hot beverages contain "'12 fl. oz.'[6] for a Tall, '16 fl. oz.' for a Grande, and '20 fl. oz.' for a Venti," respectively (the "Promised Beverage Volume"). (FAC ¶ 1.) Plaintiffs allege that Starbucks uniformly underfills its Lattes to "save on the cost of milk." (*Id.* ¶¶ 1, 2, 25.) According to plaintiffs, Starbucks made a conscious decision to underfill Lattes when faced with financial difficulties and high milk prices at the end of 2007. (*Id.* ¶¶ 30-31.) Plaintiffs further allege that when "Lattes are created pursuant to the company's standard recipe, the resulting beverages are underfilled" because (i) the maximum capacity of cups used to serve Lattes ("Hot Cups") is "exactly" the Promised Beverage Volume; (ii) Starbucks does not fill its Hot Cups to capacity in order to accommodate milk foam which does not count toward the volume of its Lattes; and (iii) "the standard pitcher currently used by Starbucks baristas to make Lattes" contains a "Fill-To" line which results in beverages which contain less than the Promised Beverage Volume.

Defendant moves for summary judgment on the grounds that plaintiff cannot prove a false statement or representation based on the undisputed facts. Specifically, the evidence shows that (i)

---

expert reports does not persuade in light of the fact that plaintiffs have now filed their export reports and the Court has taken these reports into consideration in ruling on defendant's summary judgment motion.

[6] The parties agree that "fl. oz." refers to "fluid ounces" which is a unit of volumetric measurement.

3

the capacity of Hot Cups is greater than the Promised Beverage Volume; (ii) milk foam is a component of a Latte and thus counts toward volume; and (iii) Fill-To lines serve as a guide for baristas when pouring *cold milk* which expands in volume as the milk is aerated and heated to serving temperature.

## II. LEGAL FRAMEWORK

### A. Common Law Claims for Breach of Express Warranty and Fraud

In California, New York, and Florida, a claim for breach of express warranty requires plaintiff to show that defendant made a false or misleading statement. *Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877, 893-95 (C.D. Cal. 2013) (California); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F.Supp.3d 467, 482 (S.D.N.Y. 2014) (New York); *Moss v. Walgreen Co.*, 765 F.Supp.2d 1363, 1368 (S.D. Fla. 2011) (Florida). Similarly, to make out a claim for fraud in any of these three states a plaintiff must establish (i) an intentional false statement, (ii) reliance, and (iii) damages. *Manderville v. PCG & S Group, Inc.,* 146 Cal.App.4th 1486, 1498 (2007) (California); *Bertolotti v. A&L Int'l Motor Corp.*, 2016 U.S. Dist. LEXIS 159464 (S.D. Fla. 2016) (Florida); *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F.Supp.2d 474, 480 (S.D.N.Y. 2010) (New York).

### B. California Claims Under the UCL, FAL, and CLRA

To prevail under the UCL or FAL, a plaintiff must show that "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by defendant's conduct or representation. *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003). The same is required of plaintiffs alleging claims under the CLRA. *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351, 1360 (2003) (applying the *Lavie* court's "reasonable consumer" standard to plaintiff's CLRA claim). Thus, each claim requires misleading conduct or a misleading representation.

### C. New York Claims Under the GBL

"To establish a prima facie case under GBL Section 349, 'a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *In re Scotts EZ Seed Litig.*, 304

United States District Court
Northern District of California

F.R.D. 397, 409 (S.D.N.Y. 2015) (quoting *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000)). GBL Section 350 similarly requires a plaintiff to show that defendant's conduct was "misleading in a material respect" and that "plaintiff was injured as a result." *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866 at *8 (quoting GBL § 350); *see also Medisim Ltd. v. BestMed LLC*, 2012 WL 5954757, at *6 (S.D.N.Y. 2012).

### D. Florida Claims Under the FDUTPA

Florida's FDUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). "The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Id.* (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla. 2003)). "This standard requires a showing of 'probable, not possible, deception'" which is likely to cause harm to "a reasonable relying consumer." *Id.* (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.,* 761 So.2d 1256, 1263 (Fla. Dist. Ct. App. 2000)).

### E. Summary Judgment

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact as to the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party has the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed. R. Civ. P. 56(c), (e). The opposing party's evidence must be more than "merely colorable" and must be "significantly probative." *Anderson*, 477 U.S. at 249–50. Further, the opposing party may not rest upon mere

5

allegations or denials of the adverse party's evidence, but instead must produce admissible evidence showing a genuine dispute of material fact exists. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Nevertheless, when deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). A district court may only base a ruling on a motion for summary judgment upon facts that would be admissible in evidence at trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c).

## III. DISCUSSION

### A. Motion to Strike

As a threshold matter, plaintiffs move to strike under Rule 56(c)(4) two declarations filed in support of the summary judgment motion. (Dkt. No. 100.) Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

The Court finds that plaintiffs' motion to strike is not proper under Rule 56(c)(4) for two reasons. First, Rule 56 does not provide a means for striking declarations. Rather, plaintiffs' objections are more accurately characterized as evidentiary. Pursuant to Local Rule 7-3(a) evidentiary objections "must be contained within the [objecting party's] brief or memorandum." Here, plaintiffs make their evidentiary objections in a separate motion rather than within their opposition brief as required by Local Rule 7-3(a) which is procedurally improper and an independent basis to deny the motion.

Second, and in any event, the objections are without merit because Antonio and Lubhan are "competent to testify on the matters stated" in their respective declarations. Civ. L.R. 7-5(b). Antonio has worked for Starbucks since 2004. (Antonio Decl. ¶¶ 1-2.) She currently serves as a

6

manager in Starbucks' product research and development unit and is thus competent to testify regarding Starbucks' milk steaming process, the different types of milk made available to customers, and the fact that cold milk expands as it is aerated, foamed, and heated to serving temperature. (*Id*. ¶¶ 13–15.) Lubahn has 40 years of experience in the field of quality assurance and has worked as a "senior manager, quality assurance and food safety for packaging" at Starbucks since 2013. (Lubahn Decl. ¶¶ 1-2.) Accordingly, Lubahn too is competent to testify regarding the volume capacity specifications for Starbucks cups used to serve hot beverages. (*Id*. ¶¶ 4–5.) Therefore, the motion to strike is **DENIED**.

### B. Motion for Summary Judgment

Defendant asserts that Starbucks is entitled to summary judgment because all eight of plaintiffs' claims require a false or misleading representation and plaintiffs cannot satisfy this requirement. *See supra,* pp. 3-5. Plaintiffs agree that each alleged claim has that common element. Plaintiffs seek to satisfy the element based on three theories: (i) capacity of Hot Cups is exactly the Promised Beverage Volume, (ii) milk foam added to Lattes does not count towards Promised Beverage Volume, and (iii) the total volume of the ingredients used to make Lattes do not add up to the Promised Beverage Volume. The Court addresses each of plaintiffs' theories.[7]

#### 1. First Theory: Hot Cup Capacity

Plaintiffs allege that when "filled to the brink" Hot Cups hold "*exactly*" the Promised Beverage Volumes. (FAC ¶ 27 (emphasis in original).) In response, Starbucks offers the declaration of Wendy Lubahn, a senior manager of quality assurance and food safety for packaging, who testifies that Starbucks requires its suppliers to manufacture Hot Cups with volume capacities which are at least 8–12% greater than the Promised Beverage Volume depending on the size of beverage ordered. (*See* Lubahn Decl. ¶ 4, Exhs. A, B.) Defendant also provides the Starbucks "Sourcing Toolkit" which specifies the "Mandatory Minimum Standard Requirements" for Hot Cups including "Size, Dimensions, and Weight" and "Capacity to Brim."[8]

---

[7] Further, defendant argues that plaintiffs lack standing to pursue their claims for various reasons. In light of the Court's holding, the Court need not reach this issue.

[8] Plaintiffs argue that Ms. Lubahn's declaration and supporting documents are (i)

7

(*Id.*)

Plaintiffs challenge Ms. Lubahn's declaration and supporting documents on the ground that the Sourcing Toolkit does not purport to measure "any actual hot serving cups," but merely conveys "manufacturing specifications" for suppliers. (Dkt No. 99 at 7-8.) However, plaintiffs offer no evidence that any actual Hot Cups fail to comply with the Mandatory Minimum Standard Requirements set forth in defendant's Sourcing Toolkit.

Plaintiffs also offer the expert opinion of Carol T. Hockert, a former Division Chief at the National Institute of Standards and Technology, Office of Weights and Measures. (Dkt. No. 106-2, Declaration and Expert Report of Carol T. Hockert ("Hockert Rpt.").) Hockert opines that "given Plaintiff Robles' testimony that his Grande was underfilled to 1.125 inches below the rim, my measurements would indicate an underfilling of approximately 21.25%" relative to the Promised Beverage Volume. (*Id.* at III.D.) Hockert offers a similar opinion also based on portions of Crittenden's testimony (14% underfilling). (*Id.*) However, plaintiffs gloss over the fact that Hockert's own analysis indicates that the capacity of Hot Cups is 14.5 fl. oz. for a Tall, 18.5 for a Grande, and 22.8 for a Venti beverage. (*Id.*) According to Hocker's findings, the capacity of Hot Cups is actually 14.1–20.8% greater than the Promised Beverage Volume depending on the size of beverage ordered. In other words, plaintiffs' own expert corroborates Lubahn's testimony and contradicts plaintiffs' allegation that Hot Cups hold "exactly" the Promised Beverage Volume. (FAC ¶¶ 3, 27.)

In any event, plaintiffs effectively concede that they have insufficient evidence to support this theory by seeking to withdraw it. (*See* Dkt. No. 115 at 2.) Therefore, the Court **GRANTS** defendant's motion for summary judgment on plaintiffs' First Theory.

---

inadmissible hearsay under Fed. R. Evid. 801(c)(2), (ii) irrelevant under Fed. R. Evid. 401, and (iii) not based on personal knowledge pursuant to Fed. R. Evid. 602. Plaintiffs do not persuade. First, the Sourcing Toolkit falls within the business record exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Second, the declaration and supporting documents are relevant to rebut plaintiffs' allegation that the capacity of Hot Cups is exactly the Promise Beverage Volume. Third, Ms. Lubahn has personal knowledge of the Sourcing Toolkit and Hot Cup capacities through her work as senior manager of quality assurance and food safety for packaging. Specifically, Ms. Lubahn's responsibilities include overseeing procurement of cups used for hot beverages. (Lubhan Decl. ¶ 2.)

2. Second Theory: Milk Foam

According to plaintiffs, the "foam added to the top of Starbucks Lattes does not count toward the volume of its beverages" because "foam is not measured on a volumetric basis." (FAC ¶ 29.) Plaintiffs' argument fails in light of plaintiffs' own allegation that milk foam is a component of a Latte. (FAC ¶ 29.) *Forouzesh v. Starbucks Corp.,* 2016 U.S. Dist. LEXIS 111701 (C.D. Cal. 2016), is instructive. There, plaintiff brought a punitive class action alleging that Starbucks defrauded its customers by advertising its cold drinks as containing more liquid than the drinks actually contained. *Id*. at *1–2. According to the complaint, Starbucks underfilled its cold drinks by adding ice to make the cups appear full. *Id*. at *2. In dismissing the complaint with prejudice, the court highlighted that a reasonable consumer would not be deceived into believing that Starbucks' cold drinks contained the Promised Beverage Volume excluding ice because when "a reasonable consumer walks into a Starbucks and orders a[n] iced tea, that consumer knows the size of the cup that drink will be served in and that a portion of the drink will consist of ice." *Id*. at * 7–8; *see also Galanis v. Starbucks Corp.,* 2016 U.S. Dist. LEXIS 142380 (N.D. Ill. 2016). Further, the court noted that a consumer "can increase the amount of beverage they receive[] if they order 'no ice.'"[9] *Id*. at * 7.

Just as a reasonable consumer would not be deceived into believing that cold drinks contain the Promised Beverage Volume excluding ice, no reasonable consumer would be deceived into believing that Lattes which are made up of espresso, steamed milk, and *milk foam* contain the Promised Beverage Volume *excluding milk foam*. As in *Forouzesh*, "neither the menu nor signage

---

[9] Plaintiffs argue that *Forouzesh* and *Galanis* do not help Starbucks because these cases involved cold rather than hot beverages. In support of this assertion, plaintiffs rely on the decision of the U.S. Judicial Panel on Multidistrict Litigation ("MDL Panel") not to consolidate *Forouzesh* and *Galanis* with the present case on the grounds that the factual dissimilarities between the cases "likely will result in discovery, pretrial motions, and class certification issues that are not shared across the beverage categories." (Dkt. No. 99 at 12.) Plaintiffs' argument is without merit, as mere factual dissimilarities between cases do not necessarily render those cases inapposite. The Court notes that although some differences between cold and hot beverages exist, those differences were not material to the *Forouzesh* court's holding which focused on a reasonable consumer's expectation when ordering a beverage made up of discrete ingredients. In *Forouzesh*, those ingredients were ice and tea. Here, the relevant ingredients are steamed milk, espresso, and milk foam.

Plaintiff has reproduced and incorporated into [the First Amended] Complaint explicitly state that the [Lattes] consist of the identified ounces of liquid." *Id*. at *8. Further, when a reasonable consumer walks into a Starbucks and orders a Latte, "that consumer knows the *size of the cup that drink will be served in* and that a portion of the drink will consist of [milk foam]." *Id*. at * 7–8 (emphasis supplied). Accordingly, "the Court has no difficulty concluding that a reasonable consumer would not be deceived into thinking that when they order [a Latte], that the drink they receive will include" espresso, steamed milk, and milk foam, and "some portion of that drink" will be milk foam "rather than whatever liquid beverage the consumer ordered." *Id*. In any event, plaintiffs "can increase the amount of [liquid] beverage they receive[] if they order" a Latte with light or no foam. *Id*. at *7. The Court thus finds that plaintiffs' argument regarding milk foam fails because a reasonable consumer would not be misled into believing that foam does not count toward some portion of the volume of their Latte. *See id*.

Plaintiffs argue that Starbucks has failed to introduce any evidence regarding consumer perceptions, whereas plaintiffs offer the declaration and expert report of Dr. J. Michael Dennis, Senior Vice President of the National Opinion Research Center at the University of Chicago. (Dkt. No 106-3, Declaration and Expert Report of J. Michael Dennis, Ph. D. ("Dennis Rpt.").) Based on two online surveys which Dr. Dennis designed and conducted, Dr. Dennis opines that 70-80% of consumers expect that foam "is in addition to" the Promised Beverage Volume of a Latte. (*Id*. at ¶ 20, Attachment B.)

The first survey (the "menu board survey") showed respondents images from a hypothetical menu board which identified "small 12 fl. oz.," "medium 16 fl. oz.," and "large 20 fl. oz.," and then asked "how many fluid ounces of the beverage do you expect to receive." (Dkt. No. 120, Declaration of Sacha Henry, Ex. A, Deposition of J. Michael Dennis ("Dennis Dep.") at 75:20-22.) The Court notes that Dr. Dennis did not use the Starbucks vernacular of "Tall", "Grande," or "Venti" as alleged in the FAC. Further, Dr. Dennis testified that he "did not measure consumers' understanding of what they mean or how they interpret what fluid ounce means." (*Id*. at 28:2-4.) Dr. Dennis also stated that his menu board survey did not measure customer "exposure to or awareness of or use of [Starbucks] menu boards." (*Id*. at 22:13-15.)

The second survey (the "foam survey") presented respondents with two images of a cup with a perforated line identified as "16 fluid ounces" where the perforated line in one image appears *above* the portion of the contents labeled "fluid" and "foam" and, in the other, the line appears *between* the contents of the cup labeled "fluid" and "foam." Respondents were asked to "please select which medium 16 fl. oz. beverage you would expect to receive." (Dkt. No. 106-3.) Dr. Dennis stated during his deposition that he decided not to include the language Starbucks customarily uses to identify its beverage sizes (*i.e.*, Tall, Grande and Venti) due to the "close association to the Starbucks brand." (Dennis Dep. at 72:18-73:5.)

Plaintiffs do not persuade. First, as an initial matter, expert testimony is not necessary to establish whether reasonable consumers believe that milk foam counts towards the volume of a Latte when it is undisputed that milk foam is a component of the same. *See Forouzesh,* 2016 U.S. Dist. LEXIS 111701, at * 7–8; *see also Galanis,* 2016 U.S. Dist. LEXIS 142380. Plaintiffs allege that a Latte is comprised of three ingredients: expresso, steamed milk, and milk foam. (FAC ¶¶ 12, 13.) The Court finds that a reasonable consumer who purchases a Latte would not expect to receive a beverage which contains the Promised Beverage Volume exclusive of one of those components, namely milk foam.

Second, when survey questions are leading and suggestive, this "weaken[s] the relevance and credibility of the survey evidence to the point that it sheds no light on the critical question in [the] case." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 269 (4th Cir. 2002) (citing *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)). Here, with regard to the foam survey, Dr. Dennis presented respondents with caricatured images of beverages containing "Fluid" and "Foam" demarcated with a perforated line which indicated "16 fluid ounces."[10] Respondents were then asked to select which of the two images depicted below they expect to receive when ordering a 16 fluid ounce beverage.

---

[10] Further, the surveys fail to explain that a fluid ounce, somewhat counter-intuitively, is a volumetric measurement as opposed to a measurement of weight.

11



Based on the menu board, please select which medium 16 fl oz beverage you would expect to receive. Click here to see the menu board again.

○ Don't Know

The Court finds this question leading and lacking in reliability because, as phrased, it presumes an answer: in short, the survey asked whether the "Fluid" in a "16 fl. oz." beverage should be "16." *See Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F.Supp.2d 1245, 1257 (S.D. Cal. 2013). "When a survey question begs its answer it is not a true indicator of the likelihood of consumer confusion." *Sunbeam Corp. v. Equity Indus. Corp.*, 635 F.Supp.625, 634 (E.D. Va. 1986), *aff'd,* 811 F.2d 1505 (4th Cir. 1987). By using the term "16 fluid ounces" in both the question and the answer choice which supports plaintiffs' theory, the "question begs its answer [and] it is not a true indicator of the likelihood of consumer confusion." *Id.*; *see also Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F. 2d 112, 118 (2d Cir. 1984) (excluding survey where "leading question . . . suggested its own answer.") Further, by identifying the non-foam portion of a Latte as "Fluid" rather than "Steamed Milk and Expresso," the survey predisposes respondents to equate "fluid ounce" with "Fluid."[11] This question elicits responses which are suggested by the question itself and ultimately tests reading comprehension and common sense rather than the likelihood of consumer confusion. *See Brighton Collectibles*, 923 F.Supp.2d at 1257; *Universal City Studios*, 746 F. 2d at 118 (excluding survey where "leading question . . . suggested its own answer). Therefore, the responses to this survey question are entitled to little weight.

In summary, Dr. Dennis' surveys fail to establish a triable issue as to whether reasonable

---

[11] In addition, these imagines are likely misleading because Dr. Dennis' images appear to show the capacity of a Grande Hot Cup as only slightly greater than 16 fl. oz. despite the fact that plaintiffs' own expert found the capacity of a Grande Hot Cup to be 18.5 fl. oz. (*i.e.*, more than 15% greater than the Promised Beverage Volume).
Finally, due to the placement of the perforated line, the image to the left appears to contain more fluid *and* more milk foam than the image to the right.

consumers believe that milk foam counts towards the volume of a Latte because (i) it is undisputed that milk foam is a component of the same, and, in any event, the survey questions are (ii) leading and suggestive.[12] Therefore, the Court **GRANTS** defendant's motion for summary judgment on plaintiffs' Second Theory.[13]

### 3. Third Theory: Fill-To Lines and Beverage Recipe Cards

Finally, plaintiffs argue that the Fill-To lines on steaming pitchers used by defendant to make Lattes are too low for the finished product to contain the Promised Beverage Volume. Essentially, plaintiffs claim is that the quantity of ingredients used in Starbucks' standard recipes to make Lattes do not add up to the Promised Beverage Volume. According to plaintiffs, Starbucks' "Beverage Recipe Cards" instruct baristas to use quantities of ingredients which do not add up to the Promised Beverage Volume. (Dkt. No. 98, Declaration of L. Timothy Fisher ("Fisher Decl."), Ex. M.) For example, the instructions for crafting a Grande Latte (represented as 16 fl. oz.) provide for 11 fl. oz. of *cold milk* and two fl. oz. of espresso, topped with one quarter-inch of milk foam and one quarter-inch of extra space. (*Id.*) Plaintiffs thus argue that the liquid contents of a Grande Latte are three ounces short of the Promised Beverage Volume.

Plaintiffs' theory fails. As an initial matter, as noted, milk foam must be included when

---

[12] Plaintiffs have also filed objections to defendant's citation to certain portions of the deposition testimonies of Dr. Dennis and Carole Hockert on the ground that these deposition excerpts "are taken out of context" and occurred "subsequent to Plaintiffs' deadline to oppose Starbucks's [sic] motion for summary judgment." (Dkt. No. 121-5.) Plaintiffs do not persuade. First, plaintiffs fail to show how defendant's citation to the deposition testimony of Dr. Dennis or Carole Hockert is taken out of context. Second, plaintiffs ignore the plain fact that these depositions necessarily had to take place after plaintiffs' deadline to oppose Starbucks' motion for summary judgment because the Dennis and Hockert expert reports were not even filed by plaintiffs until after Starbucks' filed its reply brief in support of summary judgment. Third, the Court finds that plaintiffs' objections are more accurately characterized as an unauthorized sur-sur-reply, as plaintiffs devote most of the motion to argument that summary judgment should be denied. Accordingly, plaintiffs' objections are **OVERRULED.**

Plaintiffs further argue that Starbucks raises new arguments in its sur-reply regarding reliance and materially of the challenged representations. However, a review of Starbucks' initial motion for summary judgment indicates that such arguments were raised previously on October 3, 2017. (Dkt. No. 92 at 10–14.)

[13] Defendant argues in its sur-reply that Dr. Dennis' report should be excluded because it lacks reliability. (Dkt. No. 120.) In light of the Court's order granting defendant's motion for summary judgment the Court need not reach this issue.

13

measuring the volume of a Latte. Second, the FAC specifically defines a "Latte" as a "coffee drink made with espresso and *steamed* milk" and states that Lattes are "created by mixing *steamed milk* and espresso, which is then topped with a thin layer of milk foam." (*Id*. ¶¶ 12, 13 (emphasis supplied).) The FAC further alleges that Lattes "are created with 4 simple steps," the first of which is to "steam milk." (*Id*. ¶¶ 16-19.) To the extent that plaintiffs attempt to define a Latte as anything other than a coffee drink made with espresso and *steamed* milk the attempt is outside the scope of the FAC. *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905, 908 (9th Cir. 2011) (plaintiffs opposing a motion for summary judgment are not entitled to raise new grounds or theories for which they failed to provide the defendant fair notice). Accordingly, the cold milk measurements indicated on Starbucks' steaming pitchers and Beverage Recipe Cards fail to raise a triable issue as to underfilling because plaintiffs make no showing that the sum of espresso, *steamed* milk, and milk foam results in Lattes which are less than the Promised Beverage Volume.[14] Finally, plaintiffs fail to show that leaving one quarter-inch of extra space when filling Hot Cups which have maximum capacities between 1.41–1.67 fl. oz. greater than the Promised Beverage Volume results in Lattes with less than then Promised Beverage Volume.[15] (*See* Lubahn Decl. ¶ 4, Exhs. A, B.)

Plaintiffs offer no evidence that after heating and aeration, the sum volume of steamed milk, espresso, and milk foam add up to less than the Promised Beverage Volume. Instead, plaintiffs attack the Antonio declaration on the grounds that she fails to measure the degree to which milk expands as it is heated and how the amount of steamed milk and foam varies depending on the type of milk used. However, plaintiffs do not articulate how Antonio's failure to quantify the volumetric effect of steaming and aeration raises a genuine issue of material fact. Starbucks has introduced evidence which indicates that summing the volume of ingredients listed

---

[14] Notably, Starbucks offers evidence that "as milk is aerated and steamed, it expands, taking up more room in the steaming pitcher." (Antonio Decl. ¶ 13.)

[15] Plaintiffs also argue for the first time in their opposition brief that Beverage Recipe Cards do not instruct baristas to leave one quarter-inch of extra space. (Dkt. No. 19.) The Court notes that this position is contrary to the allegation in the FAC. (FAC ¶¶ 16-18, 27.)

14

in Beverage Recipe Cards does not provide an accurate measure of hot beverage volume because the largest ingredient of a Latte by volume, namely milk, expands as it is heated and aerated. Plaintiffs do not dispute the fact that milk expands when it is heated and aerated. Accordingly, plaintiffs' criticism fails because plaintiffs offer no evidence that after heating and aeration the total volume of the expresso, *steamed* milk, and milk foam do not add up to the Promised Beverage Volume.[16]

Finally, plaintiffs rely on the declaration of Hockert who opines that the sum of the ingredients listed in Starbucks' Beverage Recipe Cards is less than the Promised Beverage Volume even after accounting for "fluid expansion of milk . . . in the steaming pitcher as it is being heated." (Hockert Rpt. at V.D.) However, Hockert failed to account for the fluid expansion of milk as it steamed, frothed, and aerated, because she never steamed the milk. (Henry Decl., Ex B, Deposition of Carol T. Hockert at 15:22-16:1, 198:12-114.) Further, Hockert testified that she did not even *heat* the milk but relied on an uncited study which she found by searching the internet to impute an expansion rate for milk as it is heated. (*Id*. at 15:9-19; 198:4-11.) During her deposition Hockert could not identify the study on which she relied. Accordingly, Hocker's testimony regarding cold, un-steamed milk is insufficient to establish a triable issue with regard to plaintiffs' Third Theory. Therefore, the Court **GRANTS** defendant's motion for summary judgment on plaintiffs' Third Theory.[17]

//

//

---

[16] The anecdotal evidence of alleged underfilling offered by Robles is similarly insufficient. Robles did not observe the volume of his Latte when he received the hot beverage. (Dkt. No. 92, Declaration of Sascha Henry ("Henry Decl."), Ex. A ("Robles Dep.") at 56:21-22, 57:2-4. 58:2-4. 60:20-22.) Rather, Robles testified that he inspected his Latte after driving several miles and parking his car. This time-lapse likely caused the Latte to cool and settle, thus decreasing in volume. (*Id*. at 60:1-62:6.)

[17] Defendant argues in its sur-reply that Dr. Dennis' and Hockert's reports should be excluded because plaintiffs failed to exercise diligence in conducting discovery. In light of the Court's order granting defendant's motion for summary judgment the Court need not reach this issue.

**IV. CONCLUSION**

As discussed above, each of plaintiffs' causes of action requires, at minimum, a false statement or misrepresentation. Plaintiffs' failure to establish such a statement or representation is fatal to each of their eight claims.[18] For the reasons discussed above, the Court thus finds that plaintiffs have failed to raise a triable issue of fact as to whether defendant made a false statement or misrepresentation pursuant to any of plaintiffs' three theories, namely that (i) the capacity of Hot Cups is exactly the Promised Beverage Volume, (ii) milk foam does not count toward the volume of a Latte, and (iii) Starbucks' steaming pitchers and Beverage Recipe Cards specify quantities of ingredients which result in Lattes which contain less than the Promised Beverage Volume. Accordingly, plaintiffs fail to show that Lattes contain less than the Promised Beverage Volume represented on Starbucks' menu boards.

Therefore, the Court **GRANTS** Starbucks' motion for summary judgment and **DENIES** plaintiffs' motion to strike. Plaintiffs' motion for class certification is **DENIED AS MOOT**. (Dkt. Nos. 105, 106.)

This terminates Dkt. Nos. 92, 100, 105, 106.

Defendant shall file a form of judgment approved as to form within five business days of the date of this order.

**IT IS SO ORDERED.**

Dated: January 5, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[18] The Court notes that Strumlauf's claim under the CLRA fails for the additional reason that Strumlauf did not provide Starbucks with notice of the alleged violation at least 30 days before filing her complaint as required by Cal. Civ. Code § 1782(a). Plaintiffs argue that Strumlauf should be relieved of this obligation because Robles sent a letter on behalf of a class of all purchasers, and Starbucks failed to raise Strumlauf's failure to comply with Section 1782(a) in its motion to dismiss. Plaintiffs do not persuade in light of their failure to cite any authority in support of these arguments.

Further, plaintiffs' claims for equitable relief, (FAC ¶¶ 56 (seeking restitution for CLRA violation), 111 (seeking equitable relief with regard to fraud claim)), fail as a matter of law because plaintiff fails to show that "there is no adequate remedy at law available." *Munning v. Gap, Inc.,* 238 F. Supp.3d 1195, 1203 (N.D. Cal. 2017).